FILED
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF TX

2023 JUN 13  AM 11: 23

CLERK, U.S. BANKRUPTCY
COURT

BY_____DEPUTY

**IN THE UNITED STATES BANKRPTCY COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION**

IN RE:                          :        CHAPTER 7
                                :        CASE: 23-90112
                                ;
CHARLES MUSZYNSKI               ;
XXX-XX-1273                     :        DEBTOR'S RESPONSE AND OPPOSITIION
855 FORRESTER STREET            :        TO APPLICANT'S REQUEST FOR RELIEF
SILSBEE, TX 77656               :        FROM AUTOMATIC STAY AND FOR
                                :        INJUNCTIVE RELIEF 11 USC, 105(A);
                                :
DEBTOR                          :        DEBTOR'S MOTION FOR 1) SANCTIONS FOR
                                :        AUTOMATIC STAY VIOLATIONS;
                                :        2) PROTECTIVE ORDER and, 3) DISMISSAL
_____:        WITH PREJUDICE FOR AUTOMATIC STAY.


**TO THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE**

**BACKGROUND**

    *Charles Muszynski, sole debtor, pro se, moves this Court to deny the sham motion by 'pro*

*se' filer and litigant, Kerry S. Culpepper, made in EDF #17 dated 31 May 2023. Debtor requests*

*this court find that Culpepper's 'pro se' appearance lacks standing, as Muszynski owes no debt to*

*Culpepper, that Culpepper's appearance is a per se violation of ethics rules and Federal Rules of*

*Civil Procedure, that Muszynski was never properly served with the lawsuit in his country (now the*

*subject of litigation in Nevis), that Culpepper's "clients" have not filed a proof of claim pursuant*

*to Rule 4, that Culpepper never argues "fraud" as a basis to overturn the Automatic Stay (as a*

*matter of law), and that Culepper's "clients" hold only an unsecured, wild default judgment*

*without an assignment of interest.*

    *Culpepper, an attorney from Hawaii, has a pending application for admittance pro hac*

*vice to which Muszynski objected based on the former's history of harassment, prevarications, bar*

*complaints, FBI criminal complaint, and <u>over twenty documented, knowing and willful violations</u>*

*of the automatic stay in the instant matter, yet to be considered by this Court. Culpepper's pro se*

*filing is an attempt to interfere with Muszynski's statutory right to seek bankruptcy redress from*

*the Court due to Culpepper's underlying copyright troll litigation on behalf of his "client",*

*Millennium Funding, Inc. (and its VP, Jonathan Yunger). His filing is a per se ethical violation and*

*subject of a second complaint to Hawaii's Bar.*

*The pro se litigant is asking this Court to grant the extraordinary remedy from the*

*automatic stay and injunctive relief. As "evidence" Culpepper submits his affidavit full of opinion,*

*misdirection, and outright falsehoods. For this reason, Debtor has addressed each of Culpepper's*

*knowingly false claims herein. The problem with being a liar is one must remember what*

*storieswere told, when, and to whom; Mr. Culpepper is no exception.*

*Please note his statement from Case 1:21-cv-20862-BB, FL S. Dist., EDF#467, filed 26*

*April 2023, page 8's footnote:*

**"At this time, Plaintiffs are not seeking to hold Muszynski in contempt for using funds**

**in violation of the US Worldwide Asset Restraint because it appears at this time that his**

**withdrawals complied with at least the spirit of the variances granted by the Nevis Court for**

**the Nevis Worldwide Asset Restraint."**

*Unless evidence newly presents that Muszynski has suddenly begin to deplete bankruptcy*

*estate assets (it has not and he has not), Mr. Culpepper's own filing admits Muszynski is complying*

*with the conditions that have been in place for months. The lengthy remainder of this document is*

*necessitated and requires the Court's time solely because Mr. Culpepper's proven history of*

*fabricating "facts" and submitting falsehoods in his affidavits to dupe courts into orders on his*

*false predicates and "sworn" affidavits. Mr. Muszynski will continue to correct every such*

2

*condition that appears in order to hold Culpepper accountable to shed light on what Culpepper is truly doing.*

*Mr. Culpepper (Millennium Funding, Inc.) is recognized as one of the most vexatious copyright trolls in the U.S., is the sole shareholder of CulpepperIP, LLLC and 42 Ventures, LLC. Both corporate entities are listed as creditors for statutory damages in the default judgment against Muszynski for approximately $15,000,000.00. Culpepper also expects the court, besides admitting his pro se motion, to allow him to self-represent CulpepperIP, LLLC and 42 Ventures, LLC if admitted pro hac vice. His companies require independent counsel.*

*The penalty, "debt" from which Mr. Muszynski seeks relief originates from Mr. Culpepper's copyright trolling scheme and 42 Ventures, LLC's claimed trade name violations. Culpepper incorporated 42 Ventures, LLC to hijack trademark rights for the name "Popcorn Time" (among others) to extend his troll business. Hijacking the trademark from an organization with the name already in use for years provides Culpepper another license to monetize his law license in addition to copyright trolling profits.*

*Mr. Culpepper's history in Federal Courts evidences pervasive use of lawfare and vexatious applications of USC and the FRCP. Lawfare tactics are employed by trolls with substantially similar business models as recognized in a filing by attorney J. Curtis Edmondson, in Christopher Lynch's declaration in re: Case 2:17-cv-01731-TSZ Document 23 Filed 03/09/18 ee and a letter publicly available from attorney Rob Cashman to Courts dealing with trolls (EXHIBIT 1 and 1-A); in this case, absolute fraud on the court was documented by Culpepper's same German "evidence" firm – Maverickeye, and its employee Mr. Daniel Arheidt. In the District Case underlying Muszynski' s bankruptcy filing, Culpepper, like trolls Malibu Media, Prenda Law, Strike 3, and others, relies on U.S. copyright courts to shake down victims.*

*For example, Strike 3 has been described as a "copyright troll." Strike 3 Holdings, 351 F.*

*Supp. 3d at 161. A copyright troll's success derives "not from the Copyright Act, but from the law*

*of large numbers." Id. at 162. Nationwide, during the thirteen months from October 2017 through*

*November 2018, Strike 3 filed 1,849 cases. See id. In 2015, copyright trolls accounted for 58% of*

*the federal copyright docket. Id. The copyright troll's playbook outlines the following strategy:*

*"file a deluge of complaints; ask the court to compel disclosure of the account holders; settle as*

*many claims as possible; abandon the rest." See id. (Citing Matthew Sag & Jake Haskell, Defense*

*Against the Dark Arts of Copyright Trolling, 103 IOWA L. REV. 571, 575-80 (2018)). It teaches*

*that cases should be dropped "at the first sign of resistance" to stay "one step ahead of any*

*coordinated defense" or, metaphorically speaking, that when "a Billy Goat Gruff moves to*

*confront a copyright troll in court, the troll [should] cut[] and run[] back under its bridge." See*

*id.*

    *Trolls' business model leverages Courts' resources as an indispensable part of their*

*scheme, therefore, in addition to "settlement" monies extracted from victims, tax payers foot the*

*bill and underwrite trolls' claims. Trolls like Culpepper base claims on "evidence" vacuumed by*

*unlicensed (in the U.S.) surveillance companies in Germany using technology illegal for use in the*

*U.S. Maverickeye UG and its employee Mr. Arheidt is Culpepper's choice for illegal surveillance*

*work. Armed with illegally-obtained, unprovable "evidence", he alleges infringement, and German*

*employees that are nearly impossible to depose are the source; as is the underlying technology's*

*source code also impossible to verify. The troll then selects demographics (don't sue wealthy ZIP*

*codes, they'll defend it, don't sue poor ZIP codes, they don't have credit cards) to target.*

*Culpepper's District Court case featured a new twist, targeting ISPs and VPNs to source and*

*target subscribers rather than vacuuming information solely from Germans.*

    *Muszynski' s co-defendants in the underlying litigation were released and/or settled for*

*nuisance fees. With the collapse of LiquidVPN's business (due to Cox and Culpepper), a defense*

for Muszynski was never a financial possibility. Culpepper and LiquidVPN's prior owner, David

Cox, destroyed LiquidVPN before the company could finish its rebranding and launch; Cox gave

all of Liquid's technical and customer information he had illegally retained post-sale to

Culpepper, in addition to extorting 1701 Management, LLC for nearly $65,000.00 (the written

extortion demands were reported to the Livonia, MI police and the FBI, see EXHIBIT 2, Livonia,

MI Police report and EXHIBIT 3, FBI report.

The public is highly aware of trolls' racketeering. Thousands of YouTube videos, blogs,

defense attorney sites, and technical articles discuss it. Some sites are dedicated solely to Kerry

Culpepper.

Culpepper continues to use Millennium Funding, Inc.'s media connections to libel

Muszynski by claiming his imminent arrest "for failure to pay $15M copyright fine", among other

salacious tripe. Muszynski does not have the resources to pull back the covers and expose

Culpepper's scheme as has occurred in other similar cases like Strike Three Holdings (EXHIBIT

4) or in Christopher Lynch's declaration (EXHIBIT 1), in which some of Culpepper's same

"clients" appear along with Maverickeye's and Mr. Culpepper's German national, Mr. Arheidt.

Lynch's statement details outright frauds on the court perpetuated by Mr. Arheidt, Maverickeye,

and the "movie companies". Nor had Muszynski ever intended to have dealings with these

parasite's litigation as the company he led was purchased with plans to re-brand it, both

technically, culturally, and graphically for use in South and Central American markets. When

Muszynski negotiated the purchase of LiquidVPN for 1701 Management, LLC, the value of the

transaction resided in LiquidVPN's existing IT backbone and the time savings it would provide

versus a new, ground-up design. It permitted 1701 Management, LLC to skip custom development

time and focused attention on re-branding, new messaging, and a new sales/payment system to

serve privacy and anonymity to communications consumers in Central and South America in need

*of safe options outside of their oppressive governments' firewalls and invasive monitoring.*

*LiquidVPN's founder, David Cox, was Culpepper's original target, Muszynski was not. Culpepper sued Cox who then violated his sales agreement with 1701 Management, LLC and violated the sales agreement by providing all of LiquidVPN's proprietary information to Culpepper. With coaching from Cox and Muszynski's ex-wife, Culpepper then sued 1701 Management, LLC and Muszynski. In addition to abusive litigation practices, Culpepper harassed Muszynski in attempts to repeatedly extort a settlement through publicity – he never intended to go to court, having made multiple overtures to "settle". It's common for trolls to avoid court, lest discovery reveal their naked fraud; see particularly Christopher Lynch's declaration in EXHIBIT 1 featuring Culpepper's same cast of characters and their "sworn affidavits", an excellent primer for ground-up fraud on the court.*

*Culpepper's disregard for facts about Muszynski's citizenship and lack of ownership over 1701 Management, LLC are evidenced throughout this filing (and others). Culpepper's collection attempts have continued despite the automatic stay. Culpepper's pro se appearance in this Court is further evidence of unethical (and frequently illegal) behaviors; a per se ethical violation and UPL.*

*The following text reverts to Culpepper's original filing. His statements appear in regular "<u>font</u>" and where required, Muszynski follows with his comments in an "<u>italic</u>" font. Because Culpepper filed prevarications and slander instead of clean legal arguments, and because Muszynski is well aware of Culpepper's proven maliciousness and libel propensities, the latter is compelled to respond and necessarily occupy the Court's time to answer Culpepper's tripe lest it result in another default circumstance.*

*From Culpepper's filing:*

Creditor Kerry S. Culpepper[1], *pro se*, moves this Court for entry of an order (a) modifying the automatic stay to allow the continuance of certain post-judgment enforcement efforts against the Debtor in the civil action in the Southern District of Florida entitled *Millennium Funding, Inc. et al v. 1701 Management, LLC. et al*, 21-cv-20862-BB (D. S.D. Fla.) (the "District Court Action") and in the Federation of Saint Christopher & Nevis High Court of Justice Nevis Circuit action entitled *Millennium Funding, Inc. et al v. AUH2O LLC and Charles Muszynski a/k/a/ Frederick Douglas*, NEVHCV2022/0183(the "Nevis Action"), and/or (b) enjoining the Debtor, Charles Muszynski ("Muszynski"), his co-defendants, 1701 Management LLC ("1701"), and AUH20 LLC ("AUH20") and the entities Muszynski controls including but not limited to Waste Resources LLC (New Mexico); F.A Hayek Irrev. Settlement Trust; The Dusko Popov Irrev. Trust (Nevis); and Antilles Management LLC, from depleting estate assets or moving estate assets outside of the jurisdiction of the United States pursuant to this Court's equitable powers under 11 U.S.C. § 105(a).

*Mr. Culpepper has no pro se claim against Muszynski. Muszynski owes no debt to Culpepper. Culpepper has no standing to request anything from this court pro se. Mr. Culpepper cries "...Muszynski controls..." entities but all available facts fail to substantiate his allegations. Culpepper offers no basis for claims that Muszynski' s bankruptcy estate has or is being depleted or is or has been "...moving estate assets outside of the jurisdiction of the United States...". Muszynski has not managed a business in the U.S. for years and any company in the U.S. previously associated with him was sold, failed to maintain registration, and/or abandoned.*

*Culpepper presents knowingly false statements and opinions as "facts" when he states: "...and the entities Muszynski controls including but not limited to Waste Resources LLC (New Mexico); F.A Hayek Irrev. Settlement Trust; The Dusko Popov Irrev. Trust (Nevis); and Antilles Management LLC, ... ", this is without substantiation. His claims continue his harassment and libel*

*Muszynski, given the latter's repeated statements under oath and submissions evidencing otherwise;*

*either Muszynski has perjured himself or Culpepper is lying. As Culpepper points out, after three*

*years of litigation and over 500 filings (most after case closure) Culpepper has never exhibited*

*Muszynski's ownership of any active entity; because none exists.*

This Motion is being made pursuant to BR 4001 and LBR 4001(b) and is based upon the

factual allegations and legal arguments set forth herein, the pleadings, papers and other records

contained in the Court's file in the above-captioned case, as well as the District Court and Nevis

Actions, judicial notice of which is hereby requested, the Declaration of Kerry Culpepper, Esq.,

and the arguments to be presented at the hearing on the Motion.

---

[1] Kerry S. Culpepper has pending pro hac vice application. *See* Doc. #10/ Upon approval, Kerry S. Culpepper will file a statement of joinder in this motion as counsel of creditors Millennium Funding, Inc., Voltage Holdings, LLC, AMBI Distribution Corp., After Productions, LLC, After II Movie, LLC, Morgan Creek Productions, Inc., Bedeviled LLC, Millennium Media, Inc., Colossal Movie Productions, LLC, YAR Productions, Inc., FSMQ Film, LLC, FW Productions, LLC, Millennium IP, Inc., I Am Wrath Production, Inc., Killing Link Distribution, LLC, Badhouse Studios, LLC, LF2 Productions, Inc., LHF Productions, Inc., Venice PI, LLC, Rambo V Productions, Inc., Rupture CAL, Inc., MON, LLC, SF Film, LLC, Speed Kills Productions, Inc., Nikola Productions, Inc., Wonder One, LLC, Bodyguard Productions, Inc., Outpost Productions, Inc., Glacier Films 1, LLC, Definition Delaware LLC, Hannibal Classics Inc., Justice Everywhere Productions LLC, State of the Union Distribution and Collections, LLC, Paradox Studios, LLC, Dallas Buyers Club, LLC, Screen Media Ventures, LLC, 42 Ventures, LLC and Culpepper IP, LLLC.

---

*Muszynski objects to judicial notice of the Nevis action as it is set for trial and none of the*

*rulings are final. It is improper for such a request to be made without standing to appear, as yet,*

*not to mention permitting pleadings, papers, and other records contained in Culpepper's pro se*

*submission being entered without authentication are hearsay (and UPL). Muszynski's reports of*

*Culpepper's criminal activities to the FBI and Bar grievances of instances outlining Mr.*

*Culpepper's frauds on the court (by omission, willful misdirection, outright falsehoods, and*

*conspiring with co-counsel Rothman to entrap Muszynski in fraudulent charges of contempt), and*

*multiple interstate felonies to illegally obtain Muszynski's federal tax returns without consent or*

*a court order are pending. Culpepper's per se ethics violation, appearing pro se in the instant matter, will be reported to the Hawaii Bar.*

*Convinced Muszynski is a walking pot of gold, Culpepper anticipates an adversarial proceeding will find default copyright judgments are "non-dischargeable"; Muszynski disagrees. Culpepper's billing records show years of research into Muszynski's affairs, including days of interviews with Muszynski's ex-wife (who works at Fox-Rothschild, a firm that invited its troll attorneys in to leave lest its reputation continue to be damaged, see EXHIBIT 5). Culpepper has sued and continued to harass Muszynski's associates by issuing knowingly flawed writs of garnishment, waiting out their reply windows, then obtaining default judgments and/or refusing to release those with writs of garnishment despite his knowing lack of evidence and affidavits stating none of Muszynski's assets are held by the third party. Unless incapable of simple math, Culpepper KNOWS Muszynski has no capacity to pay for representation, much less a $15 million dollar default judgment obtained through fraud and based on penalties. In hopes of finally ridding himself of the parasite, Muszynski now prays a U.S. Court of equity will remove Culpepper's immoral cudgel.*

*Culpepper continues:*

## I. **INTRODUCTION**

It is axiomatic that the substantial protections and relief afforded by the Bankruptcy Code are solely intended for the benefit of the honest but unfortunate debtor. Such is not the case here. Instead, the Debtor's bankruptcy case is an unfortunate example of an individual seeking to abuse and exploit the provisions of the Bankruptcy Code for his own benefit to the detriment of the bankruptcy estate and its creditors.

*Mr. Culpepper's indignation is ironic and dripping with hypocrisy. Muszynski's bankruptcy is solely attributable to Culpepper's abuse of copyright law, shot-gun pleadings, evidentiary fraud, and unethical applications of FRCP, USC, and court procedures (while shielding himself behind a Bar license). Culpepper's racketeering, based on champerty-like agreements from "movie companies", relies on taxpayer-funded courts to extort victims - pay up lest we sue you in federal court with knowingly fraudulent "evidence of infringement" designed and served by unlicensed, unverifiable communications interceptions carried out in Germany (it's illegal the U.S.). Mr. Culpepper, contracted by Jonathan Yunger of Millennium Funding, Inc., have chosen the (unlicensed in the U.S.) communications interception company Maverickeye UG, see EXHIBIT 6.*

The Debtor's bad faith is immediately evident from his facially implausible bankruptcy filings which on the one hand portray the Debtor as being of modest means while on the other, betraying that he is a sophisticated businessman with substantial assets to make whole his creditors. Most glaringly, the Debtor discloses assets of approximately $12,000.00 and income of roughly $3,000.00 per month against liabilities exceeding $16,000,000.00. These figures simply do not add up.

*Mr. Culpepper's math doesn't add up. His statement presumes Muszynski defaulted on an actual debt, having retained some of its value. Culpepper's default judgment is a piece of paper with statutory penalties (not legally recognized in Muszynski's country). Culpepper's position is that one must have assets that correlate to "his" damage award; a silly presumption. There is no evidence Muszynski has "substantial assets" (other than Culpepper's screeching claims), much less enough to "make whole his creditors." Culpepper's narrative lacks evidence, facts, and basis for any such conclusions. He claims Muszynski is wealthy despite sworn testimony and factual*

10

*evidence showing the opposite. After three years of researching Muszynski' s affairs, Culpepper*

*can't find a cent yet continues his cries.*

The Debtor's obvious omissions and misrepresentations in his bankruptcy filings are but the latest instance of his efforts to evade the substantial debts he owes to Movants, as well as, to a lesser monetary extent, his ex-wife. Most notably, the Debtor is liable to Movants for statutory damages for willful copyright and trademark infringement – a non-dischargeable debt under 11 U.S.C. § 523(a)(6) – in an amount exceeding $15,000,000.00 pursuant to a final and unappealable judgment of the United States District Court, Southern District of Florida (the "District Court"). Since the issuance of that judgment, the Debtor has nonetheless defied the District Court by failing to make accurate disclosures regarding his financial affairs, malfeasance which has resulted in a finding of contempt which remains unpurged. Of particular note, the Debtor's assets – *i.e.*, the estate's assets are also subject to a universal asset freeze pursuant to decrees of the District Court and the High Court of Justice, Nevis Circuit (the "Nevis Court").

*Culpepper's opinion that the default judgment is 'nondischargeable" because of Muszynski' s "willful copyright and trademark infringement" is in error. Bankruptcy's definitions and qualification of "willful" and "malicious" determine non-dischargeability, which requires an extraordinary finding, and holds the creditor responsible to prove via preponderance of evidence while a debtor has the widest consideration for denial of dischargeability. In any event, a claim must be brought by the creditor and carefully considered, it's not automatic. Culpepper himself wrote the default judgment but chose to omit reference of any kind that Muszynski' s actions were "willful", much less "willful and malicious".*

*Muszynski could not litigate the case due to lack of funds and failure of service (the latter now subject to Culpepper's pending Nevis claim). Since Muszynski could not afford representation willing to*

*appear given Culpepper's proven vexatious tactics (it was estimated costs would exceed $100,000.00*

*USD) already evidenced in the District case, a default judgment resulted. Nowhere in the underlying*

*complaint or amended complaints has Culpepper described Muszynski personally acting "willfully and*

*maliciously". Nowhere in the default judgment is Muszynski found to have personally acted willful, much*

*less willfully and maliciously.*

*Evidence will show Muszynski was acting in his capacity as Manager of 1701 Management, LLC,*

*that the company was in the midst of converting LiquidVPN into TrustHubVPN.com, that a business plan*

*to take the company in a new direction from its historic management was under way, and that its prior*

*ownership (David Cox and his SMR Hosting, LLC) had been terminated. By early 2020, shortly after 1701*

*Management, LLC acquired LiquidVPN's assets, the business plan was well under way to a new website,*

*new branding for Central and South American business and retail subscribers, and new technology. It's*

*common knowledge some Latin American countries suffer totalitarian governments, repress human dignity,*

*and target political opponents. TrustHubVPN was to provide Latin Americans a private, secure way*

*communicate with family members across the globe without fear of suppressive retributions from*

*governments. Given surveillance state capabilities, VPNs are a necessary fact of life in tyrannical*

*jurisdictions. As the business Manager, Muszynski's intent was to oversee LiquidVPN's adaptation to a*

*communications hub using encryption from Orchid Labs. Muszynski was involved with marketing,*

*branding, and sales, not technical attributes behind the scenes. Ironically, it was David Cox, LiquidVPN's*

*former owner that was supposed to oversee the conversion of systems from Liquid to the new ownership*

*and his purchase agreement detailed the earn-out. Michael Gamache participated as a favor to Muszynski*

*personally since neither trusted Dave Cox. At no time was it contemplated that the updated business model*

*intended to infringe copyrights, much less illegally rent movie rentals, and certainly not engage in*

*conversion to steal entire movies.*

*Culpepper is correct in one respect, 11 U.S.C. § 523(a)(6) does provide consideration for non-*

dischargeability of debts, but only those arising from "willful and malicious injury by the debtor to another entity or to the property of another entity." The underlying District case has to do with lost rental income, _not_ conversion of entire copyrighted works, stolen forever.

Courts can disagree about the level of culpability required under section 523(a)(6). In Kawaauhau v. Geiger, the Supreme Court put some of their disagreements to rest. 523 U.S. 57, 64, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The Court held that injuries resulting from negligent or reckless conduct are insufficient to satisfy the requirements of section 523(a)(6). _A finding that the debtor engaged in intentional acts that resulted in injury is similarly insufficient._ The circuits employ different standards in determining whether a debtor's conduct amounts to a "willful and malicious injury . . . to another entity or _to the property_ of another entity." In order for conduct to qualify as willful _and_ malicious under Fifth Circuit precedent, a debtor must act with "either an objective substantial certainty of harm or a subjective motive to cause harm." Williams v. IBEW Local 520 (In re Williams), 337 F.3d 504, 509 (5th Cir. 2003) (quoting In re Miller, 156 F.3d 598, 606 (5th Cir. 1998)).

Creditors have the burden of proof in an action to determine the dischargeability of a debt. Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). "Intertwined with this burden is the basic principle of bankruptcy that _exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start._" Hudson v. Raggio & Raggio, Inc. (In re Hudson), 107 F.3d 355, 356 (5th Cir. 1997). Accordingly, _a creditor must establish each and every element of a statutory exception to discharge_ under 11 U.S.C. § 523 et seq. _by a preponderance of the evidence._

Putting the foregoing together, the Court will determine that in order to sustain an action under 11 U.S.C. § 523(a)(6), a creditor must demonstrate the following:

1. That the debtor's actions caused an "injury" to the person or property interest of the creditor.

2. That the debtor's actions which caused the injury were the result of "willful" conduct by the

*debtor by which the debtor intended to effect an injury to the person or property interest of the creditor.*

*3. That the debtor's "willful" acts were undertaken in a "malicious" manner.*

*As outlined above, the Geiger standard is extremely strict for creditors to meet. That is as it should be. Exceptions to discharge are supposed to hook "bad actors", not those who merely act poorly. When we troll the murky depths of dischargeability from our place on the shore immediately above the dam, our goal is to snare the lampreys in the stream, not the carp and the catfish. Moreover, in the context of 11 U.S.C. §523(a)(6), as is true with any exception to discharge, the creditor must prove each element of the dischargeability action by a preponderance of the evidence-Grogan v. Garner, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991); In re Bero, 110 F.3d 462, 465 (7th Cir.1997), and "exceptions to discharge are to be construed strictly against a creditor and in favor of the debtor." In re Scarlata, 979 F.2d 521, 524 (7th Cir.1992), reh. en banc den. 1993; In re Zarzynski, 771 F.2d 304, 306 (7th Cir.1985).*

*The Fifth Circuit employs a two-part test to determine willful and malicious injury. Williams, 337 F.3d 504 (5th Cir. 2003). An injury is willful and malicious if the plaintiff proves "either an objective substantial certainty of harm or a subjective motive to cause harm." Id. at 509 (citing In re Miller, 156 F.3d 598, 603 (5th Cir. 1998)). In Berry v. Vollbracht (In re Vollbracht), the Fifth Circuit restated the test for willful and malicious injury as involving an inquiry "of whether there exists `either an objective substantial certainty of harm or a subjective motive to cause harm' on the part of the debtor." 276 F. App'x. 360, 361-62 (5th Cir. 2007). For an injury to be "willful and malicious," it must satisfy the two-part test.*

*The Kawaauhua Court discussed the "willful" and "malicious" prong being two separate things a creditor seeking to enforce their judgement must prove to prevail and prevent the debt from being discharged. "The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described*

14

instead *"willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury."*

*Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself." See Restatement (Second) of Torts § 8A." The Court further noted: "Subsequent decisions of this Court are in accord with our construction. In McIntyre v. Kavanaugh, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916), a broker "deprive[d] another of his property forever by deliberately disposing of it without semblance of authority." Id., at 141, 37 S.Ct., at 39. The Court held that this act constituted an intentional injury to property of another, bringing it within the discharge exception. But in Davis v. Aetna Acceptance Co., 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), the Court explained that not every tort judgment for conversion is exempt from discharge. Negligent or reckless acts, the Court held, do not suffice to establish that a resulting injury is "willful and malicious. In this bankruptcy matter, actual damages relate to the loss of profit (not revenue) that would have been suffered in each alleged "illegal" move rental, not the conversion in its entirety of the rights to the copyright material.*

*A landmark 9th circuit case involving willful copyright infringement and a debtor ultimately filing a chapter 7 bankruptcy seeking to discharge the debt is In re Barboza, 545 F.3d 702, 706 (9th Cir. 2008). In this Case the Court noted a "willful" injury is a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." See Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (emphasis in original). "A 'malicious' injury involves:*

*(1) a wrongful act,*

*(2) done intentionally,*

*(3) which necessarily causes injury, and*

*(4) is done without just cause or excuse.*

*In the in Re Barboza case: "Even though recklessness is sufficient for a finding of willful copyright infringement, the Supreme Court has clearly held that injuries resulting from recklessness are not sufficient to be considered willful injuries under § 523(a)(6) of the Bankruptcy Code and are therefore insufficient to merit an exemption to dischargeability. Geiger, 523 U.S. at 60–61, 118 S.Ct. 974. In Geiger, the Supreme Court specifically limited "willful" injuries under § 523(a)(6) to "deliberate or intentional" injuries. Id. at 61, 118 S.Ct. 974. Therefore, if a finding of "willful" copyright infringement is based merely on reckless behavior, the resulting statutory award would not fit within the § 523(a)(6) exemption.*

*It would be impossible for Muszynski to have acted willfully and maliciously while administering 1701 Management, LLC's investment in the purchase of LiquidVPN, when the company's goal and, therefore, Muszynski' s was to convert the infrastructure of LiquidVPN into a newly branded VPN service for Latin Americans in need of private communications with their family members living outside jurisdictions with surveillance governments such as service that would have been provided by TrustHubVPN; Culpepper knows this too, as he has third-party productions evidencing registration of the TrustHubVPN site being prepared but has chosen to exhibit it.*

*Culpepper claims Muszynski' s SOFA has "omissions and misrepresentations" but does not detail them. Culpepper's baseless claims evidence his lawfare and harassing of Muszynski, making knowingly false claims that he (Muszynski) is "...failing to make accurate disclosures regarding his financial affairs, malfeasance which has resulted in a finding of contempt which remains unpurged." Culpepper presents his knowingly willful falsehood to color the court's perception. Muszynski' s Bar grievances against Culpepper and Rothman show how they conspired to frame Muszynski for "contempt" despite his having complied with the Court's Orders, see District Court EDF #483, EXHIBIT 7. The District Court accepted Muszynski' s responses and subsequently ordered him to respond to Rothman's and Culpepper's interrogatories, Muszynski did. However, hopeful of again entrapping Muszynski with a fake contempt claim, Culpepper, proceeded with another show cause hearing despite having provably received and*

*acknowledged Muszynski' s responses. At the hearing on 1 June 2023, Culpepper lied to the court, stating*

*Muszynski failed to respond. Culpepper continued the hearing without mentioning or caring about the*

*automatic stay. Culpepper's email exchange with Muszynski evidencing the latter's full, timely response*

*shows this, see emails, EXHIBIT 8 and 8-A; particularly note Culpepper's outrageous interrogatories in*

*EXHIBIT 8-A). Culpepper had the response on 25 May 2023, more than a day before the deadline and*

*replied to the email, thereby acknowledging receipt. He never contacted Muszynski to discuss the*

*submission. At the hearing on 1 June 2023, the Magistrate suspended proceedings and did not hold*

*Muszynski in contempt (see Culpepper email exchanges in EXHIBIT 9) despite Culpepper's claims*

*Muszynski was "contemptuous". But now, Culpepper states:*

"Debtor's obvious omissions and misrepresentations in his bankruptcy filings are but the latest instance of

his efforts to evade the substantial debts he owes to Movants, as well as, to a lesser monetary extent, his ex-

wife."

*How can anyone possibly believe him?*

     *Who is Culpepper representing? Himself? His law firm, CulpepperIP, LLLC? His trademark*

*"company" 42 Ventures, LLC? Muszynski' s ex-wife? His movie company "clients"? If he's appearing pro*

*se, who are the "MovantS" which he represents? Why was he permitted to file electronically if he's not*

*admitted? He provides no evidence of "omissions and misrepresentations" by Muszynski but ample*

*evidence shows Culpepper's culpable omissions, misrepresentations, and lengthy history of falsehoods and*

*gamesmanship in the District case.*

     *Culpepper has been in communication with his Nevis lawyers since April of 2021, spent days*

*interviewing Muszynski' s ex-wife who knows Muszynski holds St. Kitts & Nevis citizenship, and moved*

*ahead on a claim in Nevis knowing foreign judgments for statutory damages and penalties are not*

*enforceable.*

Based on the foregoing extraordinary circumstances, Movants submit that there is ample cause to modify the automatic stay to allow Movants – for the general benefit of the Debtor's estate and its creditors – to take those actions necessary to enforce the universal injunctions issued by the District Court and the Nevis Court.

*When did "ample cause" rise to the level of "extraordinary circumstance"? Culpepper provides no evidence or justification, only unsubstantiated opinions, in asking for modification of the automatic stay; much less "extraordinary circumstances".*

The Debtor's bankruptcy is essentially a two-party dispute. Absent the relief requested, the Debtor's past misconduct plainly shows that its malfeasance will simply continue post-petition and beyond. In making this request, Movants do not seek to prejudice the estate's other scheduled creditor – the Debtor's ex-wife – but instead simply seek to preserve the prepetition *status quo*. Movants also understand that any funds recovered under the District Court or Nevis Court injunctions are property of the Debtor's bankruptcy estate to be distributed pursuant to the Bankruptcy Code's priority scheme.

*Culpepper's first statement gives himself away: "The Debtor's bankruptcy is essentially a two-party dispute." There are 41 separate "movie companies" plus Culpepper's "42 Ventures, LLC" (note his company exists hand in glove as "#42" tacked onto the proceeding 41 plaintiffs, all organized as one scheme), J.P.Morgan Chase Bank, Culpepper's law firm, and Muszynski' s ex-wife. Interesting then that Culpepper identifies 42 movants, all those "movie companies" as*

half of a "two party dispute". He views them all as "him", and one entity. What normal person considers nearly 50 creditors a "two-parry dispute"; unless, of course, they familiarly considered the entire lot "their" claim. Also, what evidence of "past misconduct" behavior has Culpepper provided for consideration of an "extraordinary" remedy? Besides Culpepper's default judgment, and the underlying failure of LiquidVPN, Muszynski has been challenged with poor health from his heart attack, struggles to maintain health coverage (cancellation is again being threatened by Culpepper's refusal to permit the Nevis TRO to provide it), difficulties from a prior injury affecting balance and vision, and restricted diet intake due to the majority of his account being diverted to pay for a personal attorney in Nevis to defend himself. The _statutory damages_ for which a judgment exists have nothing to do with Muszynski having borrowed money and absconded, or owing someone for value he unfairly kept, nor damages with willful intent and malice, and are exponentially out of proportion (criminally) relative to actual damages. They're also the product of a thinly-veiled racketeering system designed to extort victims with lawfare – even federal court judges have recognized these statements as facts and videos are easily found oun YouTube (another forum struggling with copyright trolls). Were one to consider real business damages IF movies were actually downloaded illegally, the lost profits (damages are calculated on lost profits, not revenue), if any existed, would be in the low single dollar amounts. The same "B" movies are easily located for free or a few Dollars to rent. Multiply a few dollars by the alleged hundred infringements and one could barely afford an average attorney's hourly rate of $250.00. Consider too, the copyright holders still hold their property – it has not been converted and permanently lost.

Muszynski has not engaged in and Culpepper provides no evidence of "past misconduct". Movants (again, Culpepper appears pro se, so to what Movants is he referring?) are, of course a distant secondary to any alimony claim of an ex-spouse therefore, ironically, continuation of

Plaintiff's harassment further saps what funds Muszynski might be available to one due to Culpepper's vexatiousness; how's that "protecting the bankruptcy estate"? Without any evidence of past misconduct or showing of extraordinary circumstances for harm, on what basis does Culpepper claim "a pattern of misconduct that will simply continue post-petition and beyond." And "beyond"?

Muszynski complied with the District Court's orders and was found to have fulfilled them after he appeared pro se. Within 24 hours of the Miami court accepting Muszynski's responses at the 12 April 2021 hearing, Culpepper filed two more motions, one for show cause/contempt and one for a standing order in the District Court; see EXHIBIT 10, EDF #486, and EXHIBIT 11, EDF #487. Muszynski completed his responses and emailed them to Culpepper more than a day before the deadline. Culpepper acknowledge receipt of the email containing Muszynski's response by stating "The Judge set the hearing." Which, in context to Muszynski's emailed documents and email question meant Culpepper was not going to cancel the hearing even having received the response before the deadline. Culpepper did not respond to Muszynski's filing information or meet and confer to save the court's time. At the hearing on 2 June 2023 at noon, Culpepper lied to the court, by knowingly, willfully, and falsely claiming Muszynski had not complied with the Court's Order. As Muszynski's filing had yet to appear on the docket (Muszynski is denied a fair playing field to file electronically and uses international mail to file) Culpepper led with his falsehood. After Culpepper's statements, the Judge admonished Muszynski for having not complied then allowed Muszynski to speak. Muszynski stated he objected to appearing due to the automatic stay in place then recounted the three emails exchanged with Culpepper evidencing that, not only had he timely complied with the Court's Order but that Culpepper's returned email verified he was again lying to the court, forced a needless hearing, and (as an officer of the Court) had just lied to the Court; see EXHIBIT 9, Culpepper email string.

Additionally, Movants request that the Court enter an order, pursuant to 11 U.S.C. § 105(d), adopting the District Court and Nevis Court injunctions and/or issuing an injunction barring the Debtor from transferring or otherwise dissipating any estate assets, within the meaning of 11 U.S.C. § 541(a), within or without the jurisdiction of the United States. In any event, the Debtor must not be allowed to flout the law and evade his responsibilities under the Bankruptcy Code.

*Culpepper's own words from filing District Court filing, EDF#467 (see EXHIBIT 12), show there is no evidence of Muszynski "...flouting the law and evading his responsibilities..."; Yet here he claims the opposite; accusations easily proven false by his own words. The Nevis order is temporary and awaiting trial. The bankruptcy trustee and Culpepper have Muszynski' s bank statements to verify the only money being dissipated is that Muszynski is living on, about $461.25 per week. In regard to Nevis, the District Court gave Culpepper two opportunities to schedule Muszynski for deposition, one at his hearing in February and the last at the hearing in May. The deadline for deposition has lapsed and it appears Culpepper never attempted to complete it.*

*Finally, there is no reason for an injunction to protect the bankruptcy estate, ONE ALREADY EXISTS*

## II. **JURISDICTION AND VENUE**

This Court has jurisdiction over this matter under sections 157(a), (b)(1) and 1334(b) of title 28 of the United States Code. 28 U.S.C. §§ 157(a), (b)(1), and 1334(b). Consideration of this Motion is a core proceeding under section 157(b)(2)(A), (E), (G) and (O), of title 28 of the United States Code. 28 U.S.C. §§ 157(b)(2)(A), (E), (G) and (O).

Venue of this case in this district is proper under section 1408 of title 28 of the United

States Code. 28 U.S.C. § 1408.

The statutory provisions governing the relief requested in this Motion are sections 105(a),

and 362(d)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy

Code").

Movants consent to the Court's entry of final judgments or orders in connection with this

Motion.

*Muszynski again asks, to what "Movants" (plural) is Culpepper referring; he's pro se.*

## III. FACTS

### A. The Debtor's Bad Faith Bankruptcy Filing

On May 11, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under

chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"),

along with the schedules of assets, liabilities, income, and expenses (the "Schedules"), the

statement of financial affairs ("SOFA"), and other documents required under section 521(a)(1) of

the Bankruptcy Code. (ECF No. 1.)

*Finally! Culpepper admits he knew of the stay, that it was in place since Muszynski*

*apprised him of it at the commencement of the hearing on 12 May 2023, and that it was effective*

*since 9:03 a.m. on 11 May 2023 (Central time). Given his admission, Culpepper has willfully,*

*knowingly, and repeatedly violated the stay at least TWENTY TIMES, see EXHIBIT 13, list of Stay*

*Violations.*

The Debtor's Schedules and SOFA are facially implausible and strongly suggest – even

without reference to facts outside of the Debtor's bankruptcy disclosures – that the Debtor is misrepresenting the true state of his financial affairs. On the one hand, the Debtor indicates that he has few personal possessions and receives no income other than roughly $3,000.00 as a beneficiary under an unnamed trust.[2] (Schedules A/B and I.) In his SOFA, the Debtor discloses no year-to-date income or income for the 2021 and 2022 calendar years. (SOFA at Nos. 4 and 5.) On the other, the Debtor identifies in excess of $16,000,000.00 in debts consisting of (a) roughly $1.3 in past due alimony and (b) an unsatisfied judgment in favor of the Movants in the amount of $15,000,000.00. (Schedules E/F.). The Debtor's allegedly meager assets and income are wholly inconsistent with the nature and extent of his debts.   Indeed, as set forth below and in the declaration of Kerry S. Culpepper, the Debtor is, in fact, a sophisticated businessman with a long history of concealing his assets that continues to the present day.

*Culpepper mistakes his "declaration" equating to fact and provides no examples of "bad faith" on Muszynski's part; yet claims disparity in Muszynski's personal net worth relative to the size of his debt is "wholly inconsistent with the nature and extent of his debts". This is curious as the overwhelming majority of Muszynski's debts are attributable to Culpepper's default judgment, stemming from a company Muszynski managed but did not own. After Muszynski's heart attack, he was unable to maintain his prior level of performance and pay alimony to his ex-wife for the rest of his life. It is widely accepted that "past performance is not indicative of future returns.". Just because Mr. Culpepper illegally obtained Muszynski's five-year-old tax returns showing income to an irrevocable trust (not Muszynski), it doesn't change the fact that today "There is no money."; as Muszynski has stated repeatedly, under oath, in writings, and in hearings. Mr. Culpepper conflates a default judgment with the ability to pay and expects his victims to hurry up with it lest he savage them in international media and with knowingly false claims in court.*

"The Debtor's Schedules and SOFA are facially implausible and strongly suggest – even without reference to facts outside of the Debtor's bankruptcy disclosures – that the Debtor is misrepresenting the true state of his financial affairs."

*Based on what, Culpepper's accusations? Where are the facts?*

.    Stephen J. Zayler has been appointed interim chapter 7 trustee and the initial meeting of creditors was scheduled for June 2, 2023. (ECF No. 4.)

On May 12, 2023, the Court denied the Debtor's request to extend the deadline to complete the credit counseling requirement under section 109(h)(1) of the Bankruptcy Code and set May 26, 2023, as the deadline for the Debtor to do so. (ECF No. 5.) As of the date of this Motion, the Debtor has not complied.

*Culpepper attempts to tarnish Mr. Muszynski as 'non-compliant'. Other than for purposes of harassment, why would anyone bring an administrative issue of such little significance to a Judge? Besides, Muszynski did not fail to meet the deadline and the Court's docket evidences Culpepper's overreach - Muszynski timely completed credit counseling, see EXHIBIT 14, and submitted his Certificate of Completion. Of note, Culpepper, the author of the Final Judgment in Injunction upon which his Motion to lift the Automatic Stay necessarily derives, never mentions once the words "willful" or "malicious", much less stating "willful and malicious", see EXHIBIT 14-A.*

**B.  The Debtor's Concealment of Assets in the District Court Action**

On August 17, 2021, Movants filed their thirteen count Second Amended Complaint in the

District Court against the Debtor ("SAC"), his co-defendants, 1701 and AUH20, and other named

and unnamed co-defendants. The thrust of the SAC is that the defendants intentionally induced

and contributed to infringement of numerous movie copyrights and directly infringed a trademark

owned by Movants. Further, Movants alleged that 1701 and AUH20 were *alter egos* of the Debtor.

*Culpepper appears "pro se". Who are the "Movants" (emphasis added) to which he's*

*referring? Culpepper's claims of "alter egos" are false, as proven in the Nevis Court*

*proceedings and filings in the District Court. Culpeper possesses documentation as to the*

*ownership of AUH2O, LLC (it is not Muszynski). AUH2O, LLC owned 1701 Management, LLC*

*(also not Muszynski). A small sampling of many falsehoods Culpepper incorporated into the*

*fantasies referred to as the default judgment. When not trying issues on the merits, the prickly*

*reality of truth tends to pop the balloons of fabrication after the fact. It's clear in this example*

*how trolls rely on the FRCP to manipulate reality and leverage their shakedown.*

*There are not Movants (plural) that own a 'trademark', just ONE Movant, 42 Ventures,*

*LLC, wholly owned by Culpepper (a trademark which, if challenged, would easily be voided due*

*to years of prior use by a torrent group called "Popcorn Time"). Culpepper obtained the mark*

*to further monetize his lawsuit scheme against the torrent site by obtaining default judgments,*

*then attempting collections. The easy "victory" of a judgment lacking merited adjudication*

*necessarily contains many surprises, hence awards rarely correlate to reality.*

On March 23, 2022, the District Court entered its *Final Default Judgment and Permanent*

*Injunction* in favor of Movants and against the Debtor, 1701 and AUH20 (the "Judgment

Debtors"), jointly and severally, and awarded, among other things, statutory damages for (a)

copyright infringements pursuant to 17 U.S.C. § 504(c) in the amount of $9,900,000.00, and (b)

DMCA violations pursuant to 17 U.S.C. § 1203 in the amount of $4,950,000.00 (the "Judgment").

*See* Ex. "A" (Default Judgment) and "B" (Order Granting Motion for Default Judgment).

On December 12, 2022, Magistrate Judge Otazo-Reyes entered her *Report and
Recommendation and Certification of Facts Constituting Contempt* (the "Contempt R&R") in the
District Court Action. *See* Ex. "C".  In the Contempt R&R, the magistrate made the following
finds of fact:

- Judgment Debtors had notice of the court's order, dated August 26, 2022, requiring them to complete Forms 1.977 in accordance with Florida Rule of Civil Procedure 1.560, no later than October 11, 2022.

- Judgment Debtors 1701 and AUH20 failed to submit completed Forms 1.977.

- Judgment Debtor Muszynski submitted a partially completed Form 1.977 that was stricken from the record as incomplete and inaccurate.

- Judgment Debtors had notice of the court's December 8, 2022 hearing (the "Contempt Hearing") on Movant's contempt motion (the "Contempt Motion").

- Judgment Debtors failed to appear at the Contempt Hearing as required.

As a result of the foregoing, the magistrate recommended that the Judgment Debtors be
held in contempt and subject to a fine of $500.00 per day until they purged themselves of the
contempt.

On January 24, 2023, District Court Judge Bloom entered her *Order Adopting Magistrate
Judge's Report and Recommendations. See* Ex. "D".

To date, none of the Judgment Debtors, including the Debtor has purged their contempt.

On February 9, 2023, Judge Bloom entered her *Order Granting Preliminary Injunction
Restraining Assets* (the "District Court Injunction"). *See* Ex. "E".  In granting the injunction, Judge
Bloom concluded that "Judgment Debtors are concealing assets and moving assets so as to be

unreachable by Plaintiffs…". The court noted the following examples:

- The Debtor's use of legal structures such as trusts to conceal his assets.

- Five large withdrawals were made to the Debtor from 1701's PayPal account within ten days of the commencement of the District Court Action.

- The Debtor's abandonment of valuable assets that otherwise could have been liquidated in partial satisfaction of the Judgment.

- The Debtor's transfer of assets to third parties and other entities he controls.

- The Debtor's contempt.

Based on the foregoing, the District Court enjoined the Judgement Debtors from:

- Causing a change in status of any company in which the Judgment Debtors hold an interest.

- Dissipating the assets of any trust controlled by the Judgment Debtors or under which they are a beneficiary.

- Disposing of or diminishing the value of any of their assets within or outside the United States.

- Disposing of or diminishing the value of assets for which any Judgment Debtors is a beneficiary whether the asset is within or outside of the United States.

Also on Feb. 9, 2023, a separate Judge in the S.D. Flo. issued a default judgment in an admiralty action against a yacht controlled by Debtor through the Cayman Islands company Smiling Dog Ltd. *See* Ex. "F".

Despite being held in contempt of court on February 9, 2023 by Judge Bloom, Debtor steadfastly refuses to disclose information on trusts for which he is a beneficiary and that own AUH2O in compliance with the original order for which he is in contempt. Accordingly, on April 26, 2023, Movants filed a motion for an order to show cause hearing why the Debtor should not be held in contempt to which Muszynski filed replies.

On May 15, 2023, the District Court set a show cause hearing on why Debtor should not be in contempt for June 1, 2023.

On May 19, 2023, Debtor's suggestion of bankruptcy dated May 12, 2023 was docketed in the District Court action. However, as of the date of this Motion, the District Court has not stayed the hearing.

*Culpepper again misrepresents the truth by ignoring time. All of what he claims was corrected by Muszynski after he appeared in the collection phase by his timely responses, accepted by the District Court. Rather than consume more of the Court's time with "he said, she said" details responding to each one, Culpepper's entire set of time-shifted contrivances is efficiently disposed of by stating Culpepper again makes knowingly false statements based on stale out of date information. Culpepper's claims stem from decisions absent Muszynski's presence. After the case closed and Culpepper and Rothman conspired to entrap and jail Muszynski with "contempt", Muszynski appeared and timely made all responses required by the District Court. Muszynski was ready to proceed, despite objections to the last District Court proceeding in violation of the automatic stay, and present responses to the Court based on Objections to Culpepper outrageous "interrogatories". Muszynski timely responded to the District Court at the 2 June 2023 hearing to all its Orders, the same as when it accepted Muszynski's replies at its hearing on 12 May 2023. It was in this last hearing that Culpepper submitted his most recent lie to the District Court – claiming Muszynski had not responded when, in fact, Culpepper had acknowledged receipt of Muszynski's reply, see Culpepper's email exchange with Muszynski in EXHIBIT 9.*

*Culpepper references the* <u>*District Court's failure to recognize the automatic stay*</u>*. Having already appeared in multiple bankruptcy cases, does he not realize District Courts cannot ignore (much less override) automatic stays (generally)? Regardless, all parties were provably informed of the stay on 12 May when Muszynski emailed Culpepper the Certificate from the bankruptcy court and the case number and announced it at the beginning of the hearing. Regardless,*

*Culpepper has continually, willfully violated the stay. His filing wrongly cites a State Court case related to marital support as a basis for his over-ride argument to the District Court; apples to oranges since, in this instance, both cases are federal and neither directly involve State support issues.*

## C. **The Nevis Injunction**

On January 18, 2023, the Nevis Court entered an order granting Movants' application for an order freezing the assets of the Debtor and AUH2O including the Debtor's Nevis bank accounts at the Bank of Nevis Limited and the Hamilton Reserve Bank Ltd. (the "Nevis Injunction").[3] *See* Ex. "G".

*Culpepper is again incapable of telling the whole truth. The Nevis order is temporary, Muszynski had/has no funds at Hamilton Reserve Bank Ltd., and the Nevis action will head to trial later this year. Culpepper used Nevis' judgment as a predicate to leverage the same request at the District Court, unopposed.*

## IV. **ARGUMENT**

### A. **Debtor's Ongoing Concealment of His Financial Affairs Warrants Relief from the Automatic Stay**

A petition for relief under the Bankruptcy Code generally stays post-petition acts to pursue claims against a debtor and its property including the enforcement of pre-petition judgments. 11 U.S.C. § 362(a)(2). However, the automatic stay may be annulled or modified for cause. 11 U.S.C. § 362(d)(1). Requests for stay relief made by unsecured creditors are generally granted only under extraordinary circumstances. *In re Brown*, 311 B.R. 409, 413 (E.D. Pa. 2004) ("Unsecured creditors are generally entitled to relief from an automatic stay only in extraordinary

circumstances") (citations omitted). Despite this high bar, stay relief is plainly warranted under the circumstances.

First, the District Court has already determined that the Debtor continues to conceal and transfer assets as part of an ongoing judgment avoidance scheme, actions which have resulted in a finding of contempt. It is thus clear that absent further enforcement efforts, the Debtor's bankruptcy estate will be further diminished. Incidentally, Movants note that the Debtor's concealment establishes a *prima facie* case for a denial of discharge under Bankruptcy Code section 727(a)(3). 11 U.S.C. § 727(a)(3).

*The District Court's pronouncements were made in absence of any rebuttal by debtor, without his knowledge of proceedings occurring, are based on knowingly false claims presented by Culpepper that Muszynski "owns" and/or "controls" LLCs and/or trust(s), those same claims void of any proof showing debtor moved his assets because of Culpepper's debt, and no evidence exists to show Muszynski engaged in asset depletion or movements subsequent to the judgment. Every one of Plaintiffs' contempt allegations have been set aside, only one is pending final hearing after the stay.*

Second, the Debtor's perfunctory, facially implausible, and bad faith bankruptcy filing serves no purpose other than to improperly frustrate his creditors' collection efforts. *See In re 1701 Commerce, LLC*, 477 B.R. 652, 657 (Bankr. N.D. Tex. 2012) (debtor's bad faith may constitute "cause" for stay relief or to dismiss bankruptcy case). This is especially evident from the fact that the Debtor's scheduled debts are all non-dischargeable under section 523(a). The breathing room afforded by the automatic stay thus serves no purpose other than to allow the Debtor to continue his judgement avoidance scheme post-petition.

[3] The Debtor discloses his Bank of Nevis bank account in Schedule A/B but stated he does not have a Hamilton Reserve bank account.

*Other than gesticulations and adjectives, Culpepper provides no evidence of "bad faith" in Muszynski's filing. To Muszynski's knowledge, there was not a bank account at Hamilton Reserve, if Culpepper claims one exists, Muszynski would question it without proof of its existence and was unaware of it if it indeed exists. Culpepper's claim that the default judgment is non-dischargeable under section 532(a) is baseless and presumptive. The District Court judgment Culpepper wrote does not mention the words "willful" or "malicious", much less "willful and malicious". Besides falling short of the tests for non-dischargeability, Muszynski had no personal or direct involvement in electronic administration of LiquidVPN as those responsibilities were (ironically) David Cox's and Mike Gamache's. Cox was paid by 1701 Management, LLC to administer the change-over in ownership in the claim's timeframe, institute and upgrade its infrastructure to Orchid Labs' encryption, while Muszynski handled the re-branding to marketing to South and Central America (hence the logic of a workforce based in Puerto Rico). 1701 Management bought LiquidVPN for its infrastructure but Cox sold it while anticipating it being targeted by trolls. Cox concealed this risk from Muszynski during acquisition discussions to defraud 1701 Management into purchasing a liability timebomb. 1710 Management, LLC purchased the assets for LiquidVPN.*

Third, the interests of judicial economy weigh in favor of stay relief. *In re United States Brass Corp.*, 176 B.R. 11, 13 (Bankr. E.D. Tex. 1994) ("The factor of judicial economy may be considered in deciding whether to lift the automatic stay; in fact, a decision to lift the stay may be upheld on this ground alone" (citing *In re Kemble*, 776 F.2d 802, 807 (9th Cir. 1985)). Having litigated against the Debtor in the District Court Action for several years, Movants – as well as the District Court – are well-versed in the Debtor's financial affairs and are willing to continue their

31

post-judgment collection efforts for the general benefit of the Debtor's estate. Although the

Bankruptcy Code and the Federal Rules of Bankruptcy Procedure afford the Trustee ample tools

to uncover the true state of the extent of the Debtor's financial affairs, the estate is currently without

funds to pay for such an investigation. In particular, a substantial portion of the Debtor's estate

appears to lie in a foreign jurisdiction. Having already obtained the Nevis Injunction, Movants are

well-positioned to recover the Debtor's Nevis assets for the benefit of the estate.


*Movants' default judgment is 99.5% statutory damages; Nevis courts do not honor foreign*

*judgments for statutory "damages". Culpepper has litigated against an empty chair for several*

*years due to lack of proper service, jurisdiction, and adequate funds. However, as he claims he's*

*"well-versed in the Debtor's financial affairs" perhaps he can direct Muszynski to the "significant*

*assets" he claims exist in order to substantiate Debtor's "bad faith" filing – Culpepper can't have*

*it both ways. The Nevis injunction is temporary and is in place for Nevis' trial to determine if*

*Plaintiffs' claim was properly noticed under U.K. law (Muszynski was unquestionably present in*

*St. Kitts & Nevis and never received initial service as required). Culpepper and Jonathan Yunger*

*will bear theirs costs and Muszynski' s, Culpepper and Cox will be required to personally appear*

*and a substantial ($100K USD) cash bond to will be required to proceed to ensure Culpepper*

*doesn't cut and run to avoid Muszynski' s costs and fees. Culpepper continues to claim Debtor's*

*estate has substantial assets after "years" of litigation – where are they?*


Finally, stay relief will not prejudice the rights of the Debtor, its estate, or the estate's

creditors. *Petro Franchise Sys., LLC v. All Am. Props., Inc. (In re All Am. Props., Inc.)*, No. 1:10-

bk-00273MDF, 2010 Bankr. LEXIS 687, at *7 (Bankr. M.D. Pa. Mar. 10, 2010) ("unsecured

creditors often are granted relief from the stay when two factors are present: (1) the debtor has

engaged in 'morally culpable conduct' that the moving party is seeking to undo in another forum and (2) the movant is not pursuing assets of the estate") (citing *In re Hohol*, 141 B.R. 293, 297 (M.D. Pa. 1992)). Movants are not seeking stay relief to arrogate estate assets to satisfy its own claims. Rather, Movants seek stay relief for the sole purpose of halting the Debtor's prepetition and post-petition depredations against the bankruptcy estate. Nor are Movants seeking to recover from Debtor's post-petition earnings. Movants understand and expressly agree that any estate assets recovered from the Debtor on account of the District Court Injunction or Nevis Injunction should and must be turned over directly to the Trustee.

*Culpepper's claim again lacks proof. After three years, he cannot evidence Muszynski owns or controls anything and has no basis for a claim of "morally culpable conduct", much less an example (Muszynski can't help but ask the Court to consider Culpepper's "morally culpable conduct" as a troll). Culpepper and Rothman's relentless harassment of Mr. Muszynski is documented in Bar complaints in respective States. Mr. Stephen Zayler is capable and has more authority and leverage to investigate Mr. Muszynski's estate. Mr. Culpepper has had involvement in other bankruptcies, whereas Zayler has handled thousands. Removing the automatic stay would inequitably subject Mr. Muszynski to a two-pronged investigation by both Mr. Zyler and Culpepper, the latter's ethics, felonies and harassment are well documented. A two-pronged collection effort is anathema to the basis for granting an automatic stay in the first place.*

B. **Injunctive Relief is Necessary to Protect the Integrity of the Bankruptcy Process**

In addition to stay relief, Movants submit that the Court should adopt the District Court Injunction and Nevis Injunction or, in the alternative issues its own injunction freezing the Debtor's assets both within and without the United States.

Section 105(a) of the Bankruptcy Code provides, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The foregoing includes the power to issue injunctions. *Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.)*, 801 F.2d 60 (2d Cir. 1986). Here, the Debtor's misconduct implicates several provisions of the Bankruptcy Code. *See, e.g.*, 11 U.S.C. § 349 and 541(a). Moreover, injunctive relief is appropriate where, as here, there is a substantial likelihood of irreparable harm absent such relief. *Menotte v. Willis (In re Willis)*, 411 B.R. 783 (Banl<r. S.D. Fla. 2009) (enjoining debtor continuing post-petition withdrawals from non-exempt IRA account). One of the trusts (F.A. Hayek Irrevocable Settlement Trust) Muszynski boasts of controlling and being a beneficiary, which owned 47.368421 percent of the company Waste Professional LLC and which owns 100 percent of AUH20 has already attempted to transfer funds to an attorney Lorenzo J. Palomares in violation of the S.D. Flo. preliminary injunction. *See* Deel. of Culpepper at, rr, r22, 25-27 and 37-38.

*Mr. Culpepper continues to falsely characterize Mr. Muszynski as "controlling" or "owning" various assets, LLCs, and trust(s). Culpepper is knowingly and willfully lying to the court and offers no facts to support his demand for an injunction. The sole basis for his claims are communications between Muszynski and Mr. Robert Pola, CPA. Culpepper's cherry-picked "evidence" relies on out of context statements in email communications between Robert Pola and Muszynski (see full Pola email EXHIBIT 15). Pola's email to Culpepper states* "Most time was spent having theoretical corporate structure debates on the telephone." *when interacting with Muszynski. Without authentication of the emails, deposition of Pola, or confirmation by Muszynski, Culpepper's claims are nothing but conjecture drawn from imagination, served to fit a narrative designed to hoodwink the court; in short, another knowing fabrication.*

*Not to mention, in bankruptcy, an injunction against depletion is automatic anyway and*

34

*Muszynski has no control over any entity other than his personal assets already in the Estate.*

## V. <u>CONCLUSION</u>

For the foregoing, Movant's Motion for and Order granting relief from the automatic stay

and adopting the orders of the Southern District of Florida should be granted.

*Culpepper's entire presentation should be rejected out of hand for failure to prove any*

*accusation, lack of standing and ethics violation appearing as a pro se filer, and lack of evidence.*

*Culpepper's own words confirm Muszynski is complying in the spirt of the existing orders:*

**"At this time, Plaintiffs are not seeking to hold Muszynski in contempt for using funds in**

**violation of the US Worldwide Asset Restraint because it appears at this time that his withdrawals**

**complied with at least the spirit of the variances granted by the Nevis Court for the Nevis Worldwide**

**Asset Restraint."**

## <u>DEBTOR'S RESPONSES TO</u>
## <u>CULPEPPER'S DECLARATION</u>

*Debtor's Response to the Declaration of Kerry Culpepper follows Culpepper's format with Debtor's*
*responses, when necessary, clarifying and/or correcting same. Debtor's responses appear in <u>italics</u>,*
*Culpepper's in <u>regular font</u>; otherwise, Culpepper's Declaration text appears as original.*

1.      I am an attorney licensed to practice law by the in Hawaii, Virginia, and the

District of Columbia. I am also licensed to practice law in the Western District of Texas, the

District of New Mexico, the District of Colorado, the District of Maryland, the Southern District

of Indiana and the Fourth, Ninth and Tenth Circuit Court of Appeal.

*Debtor has reported multiple federal felonies by Culpepper to the FBI with evidence from the District Court's Docket for reference showing Culpepper extorted Pola to obtain Muszynski's privileged federal tax returns without a court order. Culpepper and Rothman have pending Bar grievances in Hawaii and Florida, respectively. FBI charges and Bar grievances were submitted 15 May 2023. Culpepper and Rothman have committed more than a dozen knowing, willful violations of the automatic stay, see EXHIBIT 13.*

2.      I am duly licensed *pro hac vice* to practice before the Southern District of Florida ("S.D. Flo.") in the civil action *Millennium Funding, Inc. et al v. 1701 Management, LLC*. et al, 1:21-cv-20862-BB and the admiralty action *BROWARD SHIPYARD, INC., v. M/Y SMILING DOG* et al., 0:22-cv-61548-RKA. I represented the Plaintiffs in the civil action and intervening Plaintiffs in the admiralty action (which are the creditors in the present action). I make this declaration, which is filed in support of the Motion to lift the automatic stay, and I could and would testify competently to the matters set forth herein.

3.      I have attached as Exhibit "A" a Clerk's certified copy of the Final Default Judgment and Permanent Injunction ("Judgment") the S.D. Flo. Issued against Debtor Charles Muszynski ("Muszynski") and his co-Defendants 1701 Management LLC ("1701") and AUH2O LLC ("AUH2O") (collectively: "LiquidVPN Defendants") in the Civil Action on March 25, 2022. The money judgment is valid and unsatisfied. As of the date of this declaration, Muszynski and his co-Defendants have not appealed the judgment.

4.      I have attached as Exhibit "B" a true and accurate copy of the Order Granting Plaintiffs' Motion for Default Judgment. As noted on pg. 5 of the Order, "...Muszynski is the sole member of AUH2O and 1701, which he has described as his "shelf companies"." As noted

on pg. 12 of the Order, "...LiquidVPN Defendants willfully contributed to and induced

infringement of the Works by promoting their service as Popcorn Time VPN for blatant piracy."

As noted on pg. 14, "LiquidVPN Defendants have intentionally used Plaintiff 42's Mark

Popcorn Time in U.S. commerce without authorization or license by using the name "Popcorn

Time VPN" to promote their VPN service to use the piracy application Popcorn Time."

*Culpepper's own filings establish F.A. Hayek Irrevocable Settlement as sole member of*

*AUH2O, LLC and that AUH2O, LLC is the sole member of 1701 Management, LLC. Culpepper*

*knows, yet falsely claims, Muszynski is the sole member of these entities. Muszynski is not a*

*member. Muszynski denies he personally, intentionally contributed to any copyright or*

*trademark infringement(s). Culpepper's statements regarding Muszynski' s "ownership" are*

*intentional frauds on the court.*

5.      I have attached as Exhibit "C" a true and correct copy of the Report and

Recommendation ("R&R") of Dec. 12, 2022 issued by Magistrate Judge Otazo-Reyes

recommending that Muszynski, 1701 and AUH2O be held in contempt and fine $500/day for

their failure to fully comply with the Court's Order requiring them to submit complete Florida

Forms 1.977 (a debtor asset declaration form).

*Culpepper's statement is another partial truth, a lie by omission. The District Court*

*ruling in EDF #483, see EXHIBIT 7, shows Muszynski' s responses the Court's Order were*

*timely provided and accepted by the Court. The District Court has stated that Muszynski can*

*apply to have the fines dismissed. Culpepper's claim rests solely on his latest filing, his third*

*attempt to hold Muszynski in contempt, related to Muszynski' s timely responses to*

37

*interrogatories – to which Muszynski replied and so stated at the District Court hearing on 1*

*June 2023. Culpepper's statement is misleading at best, or an outright lie if typical.*

6.    I have attached as Exhibit "D" a true and correct copy of the Order of Judge

Bloom of Jan. 23, 2023 adopting the findings of the R&R and finding Muszynski, 1701 and

AUH2O in civil contempt and fining each of them $500/day.

*This six-month-old order is now irrelevant, all the allegations were vacated by the*

*District Court's ruling in EDF #483 (EXHIBIT 7) on 12 May 2023 and, but for the stay,*

*application to have the fines reversed would already be in front of the District Court.*

*Muszynski also submitted the narrative required by the District Court regarding 1701*

*Management, LLC's destruction by Cox and Culpepper that led to its failure of entity*

*registration ultimately rendering it's reply to a Florida Statute 1.977 Form moot as well.*

*Muszynski timely responded to Culpepper's request for interrogatories but Culpepper lied to*

*the District Court and claimed he had not received a response, see EXHIBIT 10, Culpepper's*

*email exchange with Muszynski and EDF #500, EXHIBIT 16, suspension of Culpepper's*

*needless SCO request*

7.    As of the date of this declaration, Muszynski and his co-Defendants have not paid

the $500/day fine.

*Another half-truth; Muszynski and the co-Defendants were told to apply for release from*

*fines as contempt was moot after the 12 May 2023 hearing of the District Court. Because the stay*

*is in place, a request for removal of the fines cannot yet be submitted to the District Court.*

8.     I have attached as Exhibit "E" a true and correct copy of an Order of Judge Bloom

of February 9, 2023 issuing a preliminary injunction restraining Muszynski, 1701, AUH2O LLC

and those in concert with them from diminishing the LiquidVPN Defendants' assets.

*Another half-truth. Culpepper himself was responsible for destroying LiquidVPN's*

*assets, the only assets owned by 1701 Management, LLC. AUH2O's sole asset was its stock in*

*1701 Management, LLC. When Culpepper illicitly obtained LiquidVPN's proprietary customer*

*information from Liquid's former owner, David Cox, Culpepper engaged an international media*

*blitz to publicize his (Culpepper's) "victory" against copyright downloaders. What was left of*

*LiquidVPN's few hundred subscribers easily switched providers since their primary value*

*proposition, privacy and anonymity (two different things) had been breached. Cox and his*

*subcontractor, Russ, further conspired to sabotage and destroy LiquidVPN's infrastructure and*

*extort approximately $65,000.00 USD in Orchid tokens from 1701 Management, LLC. Once*

*Culpepper extorted LiquidVPN's proprietary subscriber information which Cox illegally*

*possessed, any asset value left in LiquidVPN was destroyed. At the 12 May 2023 hearing, the*

*District Court asked for and subsequently received a narrative describing why 1701 was unable to*

*complete a 1.977; it no longer exists, has not had assets since late 2020/early 2021, its registration*

*in Puerto Rico lapsed, and it was technologically dead by late 2020, early 2021due to sabotage by*

*David Cox. Cox provided LiquidVPN's private customer information to Culpepper. None of the*

*"debtors" have dissipated assets, all have responded and been found to have complied with the*

*District Court's Orders at hearings in June 2023. Culpepper's claims are based on filings five*

*months old that have already been resolved.*

9.      I have attached as Exhibit "F" a true and accurate copy of an Order from Judge

Altman of Feb. 8, 2023, issuing final default judgment in the admiralty action against

Muszynski' s yacht M/Y Smiling Dog.


*False. Culpepper states: "…admiralty action against Muszynski' s yacht…. ", yet*

*Muszynski does not own the vessel.*


### Nevis Action against Muszynski and AUH2O

10.      On Dec. 30, 2022, the Plaintiffs filed an *Ex Parte* Application for a worldwide

temporary asset freeze of the assets of Muszynski and AUH2O in The Eastern Caribbean

Supreme Court St. Christopher and Nevis Circuit Court.

11.      On Jan. 19, 2023, the Nevis Circuit Court granted Plaintiffs' application and

ordered a worldwide asset freeze ("TRO") of AUH2O and Muszynski' s assets that was dated

Jan. 18, 2022. I have attached as Exhibit "G" a true and correct copy of the TRO. With the

exception of modification to allow Muszynski to pay living expenses and health insurance, the

TRO is still in effect.


*Nevis' temporary order awaits trial at end of this year. Culpepper has copies of*

*Muszynski' s bank statements evidencing compliance with the Nevis Court's Order, the same*

*information Muszynski submitted to the Bankruptcy Court.*


12.      On Feb. 3, 2023, in the Nevis action, Muszynski filed an Account of Assets of

AUH2O admitting that he is the manager of AUH2O LLC and that the members of AUH2O

LLC are trustees of F.A. Hayek Irrevocable Settlement Trust. Below is a true and accurate

partial screenshot.

*Muszynski filed a copy of the paperwork provided to him by the lawyer for the ownership of*

*AUH2O, LLC as directed by the Nevis Court. This does not mean Muszynski had prior knowledge of the*

*information and further undermines Culpepper's narrative that "Muszynski controls everything",*

*Muszynski is a manager, not a member.*

### REGISTER OF MEMBERS
### OF
# AUH20, LLC

| Member's Name | Member's Address | Percentage Membership Interest | Appointed M/D/Y | Resigned M/D/Y |
|---|---|---|---|---|
| SOUTHPAC TRUST NEVIS LIMITED, as Trustee of F. A. Hayek Irrevocable Settlement | PO Box 681, Hunkins Plaza, Main Street, Charlestown, Nevis | 100% | 28/02/2020 | 13/06/2022 |
| Barrett Venture Holdings LLC, as Trustee of F. A. Hayek Irrevocable Settlement | The Provident House, Central Government Road, Charlestown, Nevis | 100% | 13/06/2022 | |

13.    On April 3, 2023, the Nevis Circuit Court denied Muszynski and AUH2O's

application to discharge the Nevis TRO and ordered him to pay Plaintiffs' costs (attorneys' fees).

As of the date of this filing, Muszynski has refused to pay Plaintiffs' attorneys' fees per the

Nevis Order.


*The Nevis court set the matter for trial because Culpepper's alleged "service" on*

*Muszynski occurred at a defunct post office box in Livingston, Texas while Muszynski was*

*provably in St. Kitts & Nevis. Under U.K. law, that is improper service. Muszynski has not*

*'...refused to pay Plaintiffs' attorneys' fees per the Nevis Order." rather, he is challenging the*

*validity, magnitude, and timeline of Culpepper's alleged fees since they are multiples higher than*

*defense costs, out of proportion to the proceedings, and appear to not match the timeframe for the litigation.*

### Enforcement proceedings against Garnishees

14.    1701 previously owned the dba WasteWiser and its intellectual property. After the Civil Action was filed, Muszynski moved the intellectual property, customer accounts and inventory moved to a newly created entity Buhosabio LLC and had all the bank accounts put in the name of his friend Terry Lacy. Plaintiffs have had Writs of Garnishments issued against Terry Lacy and Buhosabio LLC that are outstanding.

*1701 did not previously own "...the dba WasteWiser and its intellectual property." and Culpepper offers no evidence to the contrary. Culpepper's claim that "Muszynski moved the intellectual property, customer accounts and inventory moved to a newly created entity Buhosabio LLC and had all the bank accounts put in the name of his friend Terry Lacy." is also false. Culpepper's documented history of meaningless writs is well established in this case – the fact that he issued them is indisputable but the fact that they're unexecuted evidences none of the entities had any assets of the debtors. Culpepper's proven modus operandi is to issue writs to anyone, no matter how tangentially associated with Muszynski, extort them for information, then refuse to release the writ unless they pay him to do so. He's done this to companies in the Cook Islands, St. Kitts & Nevis, Kenya, Puerto Rico, and the U.S. And has nothing to show for it except mounting expenses related to their legal fees since NONE of the recipients have any of the debtors' assets. 1701 had no intellectual property, customer accounts, or inventory to move to Buhosabio, LLC. Buhosabio, LLC exists to meet Terry Lacy's requirements as its CEO. Culpepper claims "had all the bank accounts put in the name of his friend Terry Lacy" but Culpepper has repeatedly*

*acknowledged in discussions with Lacy and Lacy's attorney that Lacy has nothing of Muszynski's*

*and that Culpepper will "release Lacy from the writ" ....as soon as Culpepper has extorted Lacy's*

*signature on prevarications in an affidavit from Lacy.*

*Culpepper references "all the bank accounts", plural. Does this mean 1701's bank accounts,*

*Buhosabio's bank accounts, or Muszynski's personal accounts? Muszynski cannot move property*

*he does not own and Culpeper offers no evidence of any customer accounts, inventory, or bank*

*accounts, or where accounts used by Terry Lacy were Muszynski's funds. Terry Lacy and*

*Buhosabio are challenging the writs (as did Glo-jet, Marci Babione, Andy Keesee, Chase Bank,*

*and many others) since they're illegitimate and truthful responses were made stating none of the*

*debtors' assets are held by the parties. Lacy, and Buhosabio are moving to pursue costs, damages,*

*and sanctions against Rothman and Culpeper as Glo-Jet already has with a Rule 11 filing.*

*According to Terry Lacy, Culpepper, rather than accepting the response that none of the*

*debtors' assets were in his possession, extorted Lacy and/or his attorney by suing a writs of*

*garnishment release to get him to agree to a half-hour phone call and demand to sign off on*

*falsehoods in an affidavit allegedly the product of Mr. Lacy. Culpepper repeatedly stated on the*

*calls that he "knows Lacy doesn't have any assets" and that Culpepper "will release him from the*

*writ". After SIX MONTHS, he has yet to do so despite Lacy even offering to pay to have his books*

*audited.*

15.     Plaintiffs have obtained documents such as Schedule K tax documents that show

$258,916 was distributed to Muszynski as beneficiary of the F.A. Hayek Irrev. Settlement trust

and that one of the trustees is "Jan Dash co Grant Thornton." Plaintiffs have had Writs of

Garnishments issued against F.A. Hayek Irrev. Settlement trust, Jan Dash and Grant Thornton.

Final Default Judgment was issued against F.A. Hayek Irrev. Settlement trust, Jan Dash and

Grant Thornton on May 30, 2023.


*Culpepper obtained Muszynski's tax documents without a Court Order – **a federal felony**. Culpepper's MO: improperly issue writs to knowingly wrong addresses, wait for the response times to elapse, then pursue unsuspecting third parties by ambush litigation to extort information and fraudulent affidavits. This is what he did to Robert Pola, SouthPac Trust, and other parties unrelated to Debtors. Culpepper threatens them with relentless, expensive, baseless attacks in federal court if they don't comply. It's what he did to Glo-Jet. It's what he did to SouthPac. It's what he did to Jan Dash. It's what he did to Pola. It's what he did to Muszynski – fabricated notice in TX even though Culpepper knew Muszynski did not live in the U.S.*


16.    Plaintiffs have obtained documents such as patent and trademark assignments that show that Muszynski had the intellectual property of WasteWiser assigned to entities such as Antilles Management, LLC care of Southpac Trust Limited. Plaintiffs have also obtained documents that show that Muszynski regularly paid Southpac Trust Limited and Southpac Trust Nevis Limited through his credit cards. Plaintiffs have had Writs of Garnishments issued against Southpac Trust Limited and Southpac Trust Nevis Limited ("SouthPac").


*For intellectual property to be assigned it first has to be owned. Culpepper's claim necessitates Muszynski owns the property but provides no evidence to substantiate it. Culpepper's writ ambush scheme was already been deployed and illegally obtained documents from Muszynski's CPA. It appears Culpepper used the same tactic on Southpac Trust Limited which led that company to violate laws in the Cook Islands and Nevis; Culpepper extorted information from a third party that holds none of Muszynski's assets. Muszynski denies all these allegations and*

*suggests the Court consider why Culpepper is attempting to introduce "evidence" related to a*

*third party that provably does not hold any personal assets of Muszynski – it's irrelevant.*

17.     On May 12, 2023, Judge Otazo-Reyes issued an R&R recommending that default

judgment be issued against Garnishes Jan Dash, Grant Thornton, F.A. Hayek Irrev. Settlement

trust and Southpac Trust Limited and Southpac Trust Nevis Limited.

*This evidences Culpepper's MO, extortive, ambush lawfare based on knowingly false*

*service in order to wait out a default clock. Muszynski denies any of these unrelated third parties,*

*Jan Dash, Grant Thornton, F. A. Hayek Irrev. Settlement trust, Southpac Trust Limited, or*

*Southpac Trust Nevis Limited, hold any personal assets of Muszynski' s.*

18.     In response to these Writs, SouthPac informed me that until a resignation last

year, it was trustee for F.A Hayek Irrev. Settlement trust and the Dusko Popov Irrevocable Trust.

*See* Doc. #16-2. Accordingly, I agreed to a stipulation with SouthPac on behalf of the Plaintiffs

to dissolve the Writs.

*Another Culpepper half-truth. Southpac did not respond to <u>writs</u> but, due to gross*

*negligence in ignoring the writs by SouthPac, Culpepper waited for the lapse in default time, then*

*contacted threatened to pursue Southpac for a $15M "default judgment" they had nothing to do*

*with. <u>This is another admitted and willful violation of the automatic stay evidencing Culpepper's</u>*

*<u>collection activity.</u> Culpepper, Rothman, and Southpac conspired to and violated Cook Island and*

*Nevis laws (if) when they produced protected, proprietary information <u>unrelated</u> to Muszynski' s*

*personal assets. It appears Southpac may also have violated attorney/client privilege of entities it*

*served in addition to committing gross negligence in ignoring Culpepper's original notices.*

*Without authentication, Culpepper's claims are meaningless hearsay, illegally and unethically*

*obtained. Muszynski requests copies of all documents and any/all correspondence related thereto*

*regarding Culpepper's communications with Southpac as they are now at issued in this matter.*

*Otherwise, Muszynski is disadvantaged by being denied his right to inspect them, challenge*

*authenticity, and/or bring other arguments regarding Culpepper's claims.*

19.    On May 15, 2023, counsel for Garnishee Terry Lacy informed me that Terry Lacy

would no longer cooperate in discovery because Muszynski filed bankruptcy.

*Terry Lacy cooperated with Culpepper until Culpepper demand Lacy swear to lies and statements*

*with the potential for legal and/or criminal claims in an affidavit Culpepper prepared and presented.*

*Culpepper had multiple calls with Lacy's lawyer and a half-hour call with Lacy, "off the record". During*

*the calls, Culpepper repeatedly stated he would not release the writ against Lacy unless Lacy agreed to*

*an "informal call that satisfies me (Culpepper)". Lacy capitulated. After the half-hour call, Culpepper*

*said he wanted another one. Lacy demanded to see the draft release and was sent an email with 10MB of*

*prevarications and felonies Culpeper intended Lacy to sign; fabrications concocted by Culpepper that*

*continue to be held over Lacy's head lest Culpepper provide his release. Lacy required inspection of the*

*release documents before agreeing to another call with Culpepper then recognized the breadth and depth*

*of Culpepper's frauds and untenable misrepresentations. During calls with Lacy and his lawyer,*

*Culpeper stated multiple times with both on the call: "I know he/you don't have anything of Muszynski's*

*and I will release you." Culpepper has yet to do so despite holding his threats over Lacy since December*

*of 2022.*

**Despite being held in civil contempt, Muszynski still refuses to disclose the assets he controls
and trustees and trusts for which he is a beneficiary.**

20.    On April 21, 2023, Muszynski submitted Florida Forms 1.977 but with numerous deficiencies.  For AUH2O, Muszynski did not disclose: the shareholder, member, or partner owning more than 5 percent; meeting minutes; and resolutions.  For 1701, Muszynski did not answer question number five concerning bills of sales 12 months prior to filing of the lawsuit. For himself, Muszynski did not disclose names and address of Trustee(s) and details such as amounts received from Trustee(s) from past 3 years.   As his basis for failing to disclose much of this information, Muszynski merely states that it is protected confidential information or not available under St. Kitts and Nevis laws.

*Muszynski's submissions were accepted by the District Court at the 26 May 2023 hearing. Culpepper's claims are irrelevant.*



21.     Based upon my communications counsel (Edisha Greene) that is representing

Plaintiffs in parallel proceedings in the St. Christopher and Nevis Circuit Court to enforce this

judgment against Muszynski and AUH2O and my own study of the Nevis Limited Liability

Ordinance and came across the following website of the Nevis Financial Services Regulatory

Commission [https://www.nevisfsrc.com/services/llcs/] I am convinced that there is no basis for

Muszynski' s refusal to disclose the shareholder and trustee information.

*Culpepper now imagines he is a licensed practitioner of UK law, but has yet to*

*be admitted by the Bankruptcy Court. He claims third-hand hearsay as 'proof' regarding perils*

*Muszynski may face under foreign laws and expects this Court to rely on Plaintiffs' counsel in*

*Nevis to characterize and represent that Muszynski' s concerns and risks in a foreign*

*jurisdiction are not merited. At a minimum, it's an ethics violation by Culpepper and his Nevis*

*counsel to provide an adverse party legal advice, much less advice to Muszynski regarding his*

*standing in a (to a U.S. attorney) foreign jurisdiction.*

22.     Throughout post-judgment discovery, Muszynski has refused to disclose the

names of the trustees for which he is a beneficiary. I have discovered numerous documents that

establish Muszynski is living a luxurious lifestyle from trusts he established to defraud his

creditors. For example, on Nov. 1, 2021, Muszynski sent an email to Mr. Robert Pola describing

how he has organized all of his assets. Here, Muszynski stated that he has a bank account at

"UBP" held directly by Dusko Popov Trust; a 105' yacht owned by Antilles; an entity

EVKLeddihn that owns a Nevis LLC that owns a house; an entity F.A. Hayek owns AUH2O

which owns 1701 Management LLC; an entity Solzhenitzyn owns the Puerto Rican LLC

Buhosabio that is Wastewiser.com. An excerpt of the email is reshown below.

> Robert:
>
> Under Dusko Popov:
>
> Antilles is an LLC that hold an LLC that owns a boat I'm trying to
> sell (105' MY);
>
> EVKLeddihn owns a Nevis LLC that owns a house;
>
> The account at UBP is held directly by Dusko Popov Trust
>
> Under F. A. Hayek:
>
> AUH2O holds the PR LLC called 1701 that has been abandoned - it used
> to own Liquid VPN but due to the DMCA action brought by the copyright
> troll - total loss
>
> Solzhenitzyn holds the PR LLC called Buhosabio that is Wastewiser.com - it's just starting the
sales cycle and has produced its first monitor units for trial - Buhosabio's account is in Terry Lacy's
name and SSN.
>

*"Defraud his creditors"? Culpepper represented the bankruptcy was a "two party" dispute,*

*now he states there are multiple "creditors"? Muszynski's creditors include his ex-wife (who*

*has primacy over Culpepper's claims), Culpepper's 41 clients, and J.P. Morgan Chase.*

*Culpepper is a well-known copyright troll operating a scintilla removed from civil racketeering*

*and champerty. Who's he to claim Muszynski has defrauded anyone? The default judgment is*

*99.5% statutory damages, not a debt Muszynski agreed to enter into and defaulted. Culpepper*

*knowingly and willfully misrepresents to the court by omission. One of the multiple Bar*

*complaints to Hawaii includes his prevarications to the Court. This is another example: 1)*

*Culpepper claims to have "numerous documents" but offers no exhibits, 2) Culpepper cherry*

*picks a small portion of Muszynski's discussions with Pola instead of providing the full context*

*(Pola's FULL email states their conversations were <u>theoretical</u> and <u>occurred mostly over the</u>*

*<u>phone</u>), See Pola's full email for context in EXHIBIT 15.*

*Culpepper's statements lead the reader to presume that since Culpepper's default judgment*

*issued, Muszynski has been busy setting up trusts and LLCs to hide assets – this is a lie and*

*Culpepper knows it. He cannot produce documentation otherwise since Muszynski has not set up*

*any entities for years.*

23.    Muszynski' s description of his assets to Mr. Pola in this email is consistent with

his incomplete responses to the Form 1.977 and the Requests for Production of Documents. For

example, in response to my query about Muszynski' s failure to disclose the rental lease for the

residence he lives in in Nevis but does not own, he states "*The lease is pre-paid, verbal, and not*

*uncommon*".  I believe the truth is as Muszynski told Pola, his residence is owned by a trust

(EVKLeddihn) controlled by him.  At every step, Muszynski has gone to great lengths to refuse

to disclose the trustees of and trusts from which he is receiving funds because he knows that I will request

a writ of garnishment be issued against the trustee.

*Muszynski has no assets. His descriptions and conversations with Pola were theoretical, as*

*Pola stated in his email to Culpepper. Culpepper has no basis for his claims other than*

*salivating greed and the need to cover his losses. Muszynski' s prepaid lease expense is listed on*

*his bankruptcy filing. There's nothing illegal or unethical about a prepaid, verbal lease*

*(common in the West Indies). Culpepper's conjecture and hearsay may be "truth" in his mind,*

*but is not admissible in court.*

24.    Muszynski' s description of his assets to Mr. Pola is also consistent with

documents I have viewed that show Muszynski is the manager of Antilles Management, LLC.

*This evidences Culpepper's continuing collection violations of the automatic stay,*

*otherwise, how, when, and where did Culpepper obtain "documents" What documents? From*

*where? From whom? Further, how are Culpepper's documents authenticated, let's see them*

*and any correspondence in which Culpepper engaged to obtain them – threats, money*

*demands, etc.*

25.    I received tax documents (U.S. Return of Partnership Income) from Mr. Pola such

as the 2018 and 2019 tax returns of Waste Professional LLC. These tax documents how that

Muszynski owned 47.368421 percent of Waste Professional LLC through the F.A. Hayek Irrev.

Settlement Trust.

*Culpepper here admits to committing federal felonies Muszynski reported to the FBI by illegally*

*obtaining Muszynski's irrelevant, six-year-old federal tax documents without Muszynski's consent or*

*a Court's order. Note - the documents were passcode protected and, after obtaining them without a*

*court order, he extorted Robert Pola again for password access with threats of lawfare. Anyone can*

*Google Culpepper's reputation in seconds, entire websites are dedicated to him. Florida CPAs are*

*required to notify clients of any court ordered requests for privileged information (CPA privilege exists*

*in Florida), particularly federally protected tax documents. Culpepper's extortionate threats prevented*

*the CPA from notifying Muszynski, and prevented him an option to object to their production.*

*Having illegally obtained the 2018 and 2019 tax returns, Culpepper continues to harass*

*Muszynski. At the 12 May 2023 District Court hearing, Culpepper insisted Muszynski complete*

*redundant IRS applications for his 2018 and 2019 tax documents despite Culpepper stating he already*

*possessed them. Muszynski completed the Court's Order under duress of contempt and incarceration to*

*provide Culpepper the forms. In Culpepper's current Declaration, he exhibits only a portion of*

*Muszynski's tax documents having, by now, researched his jeopardy due to Muszynski's FBI complaint and realizing his felonies are serious, he likely realized that again publishing one's tax documents is also actionable (he previously published tax return information in prior District filings, including Muszynski's full SSN and other private information entered without redaction – more harassment).*

| B  Partnership's name, address, city, state, and ZIP code | 4 |
|---|---|
| **WASTE PROFESSIONALS, LLC** | 4 |
| **1000 PRIMERA BLVD., STE. 2150** **LAKE MARY        FL 32746** | |
| C  IRS Center where partnership filed return  ▶   **E-FILE** | 6 |
| D  ☐ Check if this is a publicly traded partnership (PTP) | 6 |
| **Part II    Information About the Partner** | |
| E  Partner's SSN or TIN (Do not use TIN of a disregarded entity. See instr.)  **FOREIGNUS** | 6 |
| F  Name, address, city, state, and ZIP code for partner entered in E. See instructions.  **F.A. HAYEK IRREV SETTLMT TRST** **JAN DASH, TRUSTEE CO GRANT THORNTON** **33 CALLE BOLIVA STE 400** **SAN JUAN       PR 00917** | 9 |
| G ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member | 9 |
| H1 ☐ Domestic partner    ☒ Foreign partner | 9 |
| H2 ☐ If the partner is a disregarded entity (DE), enter the partner's:  TIN _____  Name _____ | 1 |
| I1  What type of entity is this partner?  **TRUST** | 1 |
| I2  If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here  ☐ | |
| J  Partner's share of profit, loss, and capital (see instructions): | |

| | Beginning | Ending | |
|---|---|---|---|
| Profit | 47.368421 % | 0.000000 % | 1 |
| Loss | 47.368421 % | 0.000000 % | 1 |
| Capital | 47.368421 % | 0.000000 % | 1 A |
| Check if decrease is due to sale or exchange of partnership interest .............. ☐ | | | |

26.      These tax documents from Mr. Pola such as the 2018 and 2019 tax returns of Waste Professional LLC. These tax documents how that Muszynski owned 47.368421 percent

of Waste Professional LLC through the F.A. Hayek Irrev. Settlement Trust.

*The documents predate Culpepper's initial litigation by several years and have no relevance.*

*Culpepper claims: "These tax documents how (sic) that Muszynski owned 47.368421 percent*

*of Waste Professional (sic) LLC through the F. A. Hayek Irrev. Settlement Trust." Muszynski*

*did not and does not own a trust or its shares related to Waste Professionals, LLC; the*

*TRUST owned them. U.S. tax law required Muszynski to report the trust's income on his*

*personal return; that doesn't mean he owned it and Culpepper's claim is nonetheless*

*meaningless.*

27.    These tax documents from Mr. Pola also show that Waste Professional LLC

grossed a *substantial* amount of income in 2018 and 2019 that makes Muszynski's contention

in his petition that he is penniless unbelievable. I am not stating the exact amounts in a public

document because the other partner in Waste Professional LLC is not involved in this matter.

*Culpepper's argument is irrelevant. Six-year-old tax documents evidencing an irrevocable trust earned*

*income from a U.S. investment do not matter in Muszynski's bankruptcy. Elsewhere in his filings,*

*Culpepper's references "substantial" when referring to approximately $4,000.00 USD in a PayPal*

*account while also claiming Muszynski "grosses hundreds of millions". The reader should be wary of*

*Culpepper's fungible definitions for "substantial". He also refers to "income" whereas in prior filings*

*Culpepper conflated "revenue", "gross", and "income" – all different meanings. Income on a tax*

*return is far different than income in a financial report. Further, how is any of this relevant to*

*Muszynski five or six years later?*

28.    I note in Muszynski's objections to my *pro hac vice* application he asserts that I had no subpoena served on Mr. Pola and obtained his tax documents through "extortion".    This is incorrect.  Holly Vicens served a subpoena on Mr. Pola's company Jenemi Associates, Inc. on Oct. 12, 2022. The subpoena requested "All written communications with Charles Muszynski or his alter egos from January 1, 2021 to present."

**RETURN OF SERVICE**

UNITED STATES DISTRICT COURT
Southern District of Florida

Case Number: 1:21-CV-20862-BB

Plaintiff:
MILLENNIUM FUNDING, INC., ET AL.

vs.

Defendant:
1701 MANAGEMENT, LLC., ET AL.

For:
Kerry S. Culpepper
Culpepper IP, LLC
75-170 Hualalai Road
Suite B204
Kailua-Kona, HI 96740

Received by Phipps Reporting on the 4th day of October, 2022 at 7:41 am to be served on Jenemi Associates, Inc., c/o Robert Pola, 2295 S Hiawassee Rd, Suite 411, Orlando, FL 32835.

I, Holly Vicens, do hereby affirm that on the 12th day of October, 2022 at 2:57 pm, I:

**SUBSTITUTED - BUSINESS:** served by delivering a true copy of the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action; Jenemi Associates, Inc., Attachment A ; Writ of Garnishment; Notice to Defendant of Right Against Garnishment of Wages, Money, and Other Property and Claim of Exemption and Request for Hearing with the date and hour of service endorsed thereon by me, to: Hang Bedwell as Assistant, a person employed therein and authorized to accept service for Jenemi Associates, Inc., at the address of: 2295 S Hiawassee Rd, Suite 411, Orlando, FL 32835 and informing said person of the contents thereof.

Under penalty of perjury I declare that I have read the foregoing and that the facts stated in it are true, that I am a Certified Process server in the circuit in which service was effected in accordance with Florida Statutes, and that I have no interest in the above action.

Holly Vicens
CPS 0154

*Culpepper again misrepresents partial truth. Muszynski stated Culpepper did not have a Court Order or subpoena for Muszynski's tax documents, not communications. After reviewing Muszynski's email communications with Pola, Culpepper saw attachments for tax documents. He then contacted Pola, threated him again via phone and demanded passwords to access Muszynski's encrypted tax documents. Pola capitulated with (see EXHIBIT 15) emails between Pola and Culpepper with Muszynski's passphrase for tax documents.*

*Culpepper misrepresents the above subpoena image. Pola's full subpoena is in EXHIBIT 17.*

*Nowhere does it include the words "taxes", "tax returns", or similar. Muszynski' s objection to*

*Culpepper's admission to the court details these felonies, Culpepper's prevarications to the District*

*Court, dozens of willful violations of the automatic stay in this Court, and continuing harassment and*

*personal assaults upon Muszynski both in filed litigation and the use of those filings in dozens of "news*

*releases" in U.S. and international publications, blogs, and technical journals that needlessly and
intentionally libel him.*

29.    On April 26, 2023, I filed a second motion for an order to show cause ("OSC")

why Muszynski should not be held in civil contempt for failing to disclose the trust information

and records of AUH2O LLC in the Civil Action.  Muszynski filed replied on May 2 and May 10,

2023.

*Culpepper's 26 April filing was without a meet and confer, made to the court*

*based on fabricated claims Culpepper and Rothman presented to entrap Muszynski in false*

*contempt charges, was made in bad faith as the deadline for a response was midnight of the 26th*

*of May and despite this, Culpepper and Rothman prematurely submitted a false filing with the*

*court, without basis, since Culpepper had already provably received Muszynski' s full response,*

*it violated the automatic stay (again), and was designed to needlessly harass Muszynski. After*

*Muszynski filed in reply to Rothman's and Culpepper's unethical and premature allegations,*

*their next response pretended they never said such things – having been caught red-handed by*

*the court's own docketed pleadings; see EXHIBIT 18 and EXHIBIT 19, Defendant's responses*

*to Plaintiffs' District filing EDF #467.*

30.    On May 15, 2023, the S.D. Flo set a hearing for June 1, 2023 on the second

motion for an OSC.

*Not wanting to reveal their scheme, Rothman and Culpepper proceeded with their hearing in violation*

*of the automatic stay and wasting the Court's time (lest they admit their fraud to the District Court).*

*The hearing was held on Thursday, 1 June. Muszynski was not held in contempt. Culpepper lied,*

*claiming Muszynski had not submitted a reply. After Culpepper made his statement, the Judge*

*admonished Muszynski to "take this matter seriously." When Muszynski was allowed to speak, he*

*informed the Court that not only had Culpepper timely receive his response the day before the*

*deadline, but that Culpepper replied in receipt of it and, despite its receipt, planned to continue with a*

*wasteful hearing on 1 June. Muszynski's email asked Culpepper why he set the hearing (the question*

*accompanied the email with Muszynski's interrogatory response, thereby evidencing receipt of the*

*response) and Culpepper replied "...the Judge set the hearing." see EXHIBIT 9.*

31.   On May 18, 2023, I received notification from Muszynski of the bankruptcy

action on behalf of myself and Plaintiff 42 Ventures LLC (of which I own).

*Another Culpepper lie. Culpepper received notice from Muszynski via email on 12 May 2023, see*

*EXHIBIT 20. And, at the same 12 May hearing, as soon as Muszynski was permitted to speak, the*

*Court was notified of the automatic stay effective 10:30 a.m. Eastern. Less than an hour later, Culpepper*

*received Muszynski's email and attachment with the USBC's certificate noting the automatic stay was in*

*place the day before at 9:03 a.m. Central time on 11 May 2023.*

*According to PACER records, Culpeper has involvement in multiple bankruptcies and should*

*clearly understands the meaning of "stay" and the serious implications of an officer of the court willfully,*

*knowingly ignoring one.*

*Culpepper prevaricates by omission again. At the second Culpepper hearing on 12 May 2023,*

*Muszynski again stated on the record (as he did the first hearing) that an automatic stay was in place,*

*that he previously emailed Culpeper a copy of the USBC's certificate of filing, and that he, Muszynski,*

*objected to the second hearing as well but would proceed under duress if the Court refused to honor the*

*stay.*

     32.     On May 19, 2023, Muszynski's suggestion of bankruptcy dated May 12,

2023 was docketed in the District Court action.


     *Culpepper was informed of the Bankruptcy Court's automatic stay becoming*

*effective at 9:03 a.m. Central time on 11 May 2023, at the opening of the 12 May 2023 10:30*

*Eastern hearing in the District Court. Culpepper is now suggesting the Bankruptcy Court's*

*stay does not apply to him, regardless of his nearly contemporaneous knowledge of it less than*

*24 hours after it came into effect and despite his willful, knowing violations. He is using the*

*District Court's ruling as a way to excuse his knowing and willful violations of Muszynski's*

*automatic stay, claiming "since it wasn't docketed and decided by the District Court, it*

*doesn't apply to me. It didn't exist". How else would he justify dozens of knowing, willful*

*violations; "oops"?*


     33.     I studied Muszynski's petition in this bankruptcy action. I noticed that he has not

fully disclosed the trusts for which he is a beneficiary. Rather, he merely states that "I am a

beneficiary of a trust and, upon making application, may be granted money for my personal health

and maintenance if qualified by spendthrift provision and trustee's approval." Petition [Doc. #1]

at p. 6. This is an understatement at best or an outright untruthful statement at worse. In the S.D.

Flo action, in response to my query to Muszynski about his failure to disclose the rental lease for

the residence he lives in but does not own, he stated *"The lease is pre-paid, verbal, and not*

*uncommon"*. Note that in Muszynski's email to Mr. Pola, he states that the home is owned by a

trust (EVKLeddihn) controlled by him.

*Muszynski's statements on the BK intake form are truthful. Culpepper's claims are baseless, derived from email communications taken out of context between Pola and Muszynski that had to do with "theoretical" planning – as stated by Pola to Culpepper in an email. Not one who should lecture others about "untruthful statements", Culpepper has also variously claimed Muszynski: 1) owned Glo-Jet International, a Kenyan private jet charter company, 2) was involved in moving gold out of Africa, 3) was antisemitic, 4) bigoted against African-Americans, 5) had multiple CPAs hiding his assets, 6) used a prior company he worked for to buy LiquidVPN, 7) uses African-American names, 8) subject to arrest for not paying a $15,000,000.00 penalty, and much more. Culpepper's fabrications are documented and submitted as part of Muszynski grievances to the Hawaii Bar, include multiple ethical violations, interstate felonies, misrepresentations to the District Court, conspiring with co-counsel, Benjamin Rothman, to frame Muszynski for criminal contempt charges, and several other ethics violations.*

34.     I am (literally) astounded that Muszynski states in his petition that he resides on 445 Carolcrest Lane in Livingston, Texas. In the Nevis action, he has argued (unsuccessfully) that the Nevis court should not be recognized the US judgment because has not lived in the United States since 2020.

*Culpepper's pearl clutching is a nice touch. Muszynski completed the bankruptcy intake form as best he could. Nowhere does the form contemplate one completing it with a foreign residence. It does require listing a local address and one for mail. Following the form, Muszynski used an old Texas address from driver's records. If the court directs otherwise,*

*Muszynski will edit and resubmit the form again to reflect a different address. Culpepper will*

*surely identify any number of pro se errors by Muszynski, given Culpepper's prior bankruptcy*

*involvements. And Culpepper has lied about the Nevis court's "finding" – there has been NO*

*decision, the matter has yet to be adjudicated.*

35.    In a hearing on a motion to compel Muszynski to attend a deposition, he

represented before the S.D. Flo. that he lives in Nevis and cannot even enter the United States

without a Visa. Based upon this representation, Magistrate Judge Otazo-Reyes merely ordered

Muszynski to make himself available if Plaintiffs followed the Hague procedures for

international discovery. Now he is telling this Court that he lives in Livingston, Texas.

*Muszynski completed the form while attempting to conform to its requirements. Muszynski's*

*residence is in St. Kitts & Nevis and, for the umpteenth time, Culpepper feigns outrage that Mr.*

*Muszynski cannot travel to the U.S. for lack of a visa; information he's known for many months as fact.*

*The District Court allowed Culpepper another 60 days' time to depose Muszynski, subsequent to a prior*

*admonishment to do so in a February hearing. The time permitted by the District Court has lapsed.*

As of the date of this declaration, the S.D. Flo has not stayed the order to show cause hearing of

June 1, 2023. I intend to inform the court that I have filed a motion to lift the stay.

*Culpepper does not have standing to request the stay be lifted without admittance, nor*

*as a pro se filer without standing, nor without extraordinary circumstances (which are non-*

*existent). In another knowing, willful violation of this Court's stay, Culpepper proceeded with the*

*hearing on 1 June 2023, without a meet and confer, and after Muszynski provided an acceptable*

*reply - another violation of the automatic stay. Although Mr. Culpepper filed a "pro se" motion*

*in this court, he has no standing to do so as an individual since Muszynski owes him nothing. In*

*addition to lacking admittance and standing, Culpepper engages in arguments on behalf of*

*"Movants" (plural); Culpepper has commenced representation and arguments without*

*admittance.*

**Dissipation of Assets**

36.     As stated above, a Writ of Garnishment was issued against F.A. Hayek

Irrevocable Settlement Trust.  On May 23, 2023, I spoke by phone with an attorney named

Lorenzo J. Palomares who informed me that he was going to be representing F.A. Hayek

Irrevocable Settlement Trust as soon as his retainer arrived.  Mr. Palomares refused to disclose

the name of the trustee.  I sent him a copy of the S.D. Flo. preliminary injunction that restrains

assets.

37.     Based upon this conversation, I believe the F.A. Hayek Irrevocable Settlement

Trust is dispersing funds in violation of the S.D. Flo. Preliminary injunction.

*Culpepper argued to the S.D. Flo. Court that Muszynski was "flagrantly violating" the injunction*

*and dissipating assets while living in luxury – whereas Muszynski was simply withdrawing his weekly stipend*

*of approximately $425 USD as directed by the Nevis court.*

*However, and telling of his hubris, Culpepper's own filing, see EXHIBIT 20, EDF# states:*
"Muszynski is living up to the spirit of the stay".

*There is no basis for Culpepper's request for a freeze order to avoid Muszynski dissipating*

*assets as one already exists as a function of the Bankruptcy Estate. Although Culpepper has experience in*

*multiple other bankruptcies besides ignoring the automatic stay, it appears he does not recognize a*

*freeze order is automatic too. For further harassment, Culpepper even demanded the District court prohibit*

*Muszynski from his choice of email provider.*


38.    Based upon this conversation, I believe the F.A. Hayek Irrevocable Settlement Trust is

dispersing funds in violation of the S.D. Flo. Preliminary injunction.

*Muszynski has no control over a trust and has stated this already in hearings and submissions. While*

*in contact with the trust attorney, Muszynski was provided copies of two letters that were sent to Judge*

*Bloom in the District Court clarifying he had no involvement with the trust other than as a beneficiary. Copies*

*of the letters are attached as EXHIBIT 21 and 22.*


## CONCLUSION


*The "creditor", pro se filer's submissions in the underlying District court action betray his
motives, allegations, and basis for filing to request relief from the automatic stay in this Court's
proceedings. Culpepper's sham filing, presumptively assuming his standing as a "pro se" litigant, is
another example of his unethical, bad faith, continuing harassment of Muszynski; this time employing a
sham filing to usurp the entire purpose of the automatic stay. Culpepper's unethical filing further
evidences his continuing pattern of abuse and justifies this Court's consideration and granting of a
protective order to preserve Muszynski's statutory rights to bankruptcy and prevent further abuses by
Culpepper that have and continue to cause Muszynski severe emotional stress, financial injury, and risk
Muszynski's ability to fund proper healthcare insurance coverage (necessitated due to the significant
stress experienced in prior litigation that lead to his heart attack and similar stress now inflicted by
Culpepper's lawfare.*

*In addition to dismissal with prejudice of pro se filer's sham motion for lifting of the automatic
stay, Muszynski requests this Court make Judicial Notice of Mr. Zayler's competency to assess
Muszynski's bankruptcy estate without need for additional involvement (and harassment and stress)
requested by Mr. Culpepper. Lifting the automatic stay would permit Culpepper to resume lawfare
practices against Muszynski through his foreign action in Nevis, further deplete what little eremains of
bankruptcy assets even faster on attorney's fees, and reward Culpepper's unethical, contemptuous
behavior.*

*It appears Mr. Culpepper did not submit the mandatory filing required by the local FRCP to
request relief from the automatic stay and failed to introduce evidence meeting admissibility standards
within his sham filing upon which reliance could be made. Therefore, Debtor's motions now follow for.*

*Permitting claimant Culpepper to continue his harassment, lift the Automatic Stay, continue to operate without an order of protection would be tantamount to a wrong and a gross miscarriage of justice. Culpepper has no personal standing as a "pro se" litigant, evidence of Culpepper's contrivances is well documented, and the harassment of Muszynski continues. Muszynski brought his bankruptcy action due to a default judgment that was not, on his part, willful or culpable. As Muszynski is denied access to representation due to Culpepper's temporary restraining order in Nevis, he is unable as a layperson to competently appear before this Court under the best of circumstances, much less when under the boot of a two-pronged proceeding led on one hand by Culpepper's scheme and on the other by the properly appointed Trustee's authority.*

*For the foregoing reasons, Debtor respectfully requests that this Court grant this motion and issue the proposed Sanctions, Protective Order, and grant Dismissal of Filer Culpepper's request for lifting of the Automatic Stay.*

DATED: 12 June 2023

Respectfully submitted,

Charles Muszynski, Debtor
usfilefolder@protonmail.com

## CERTIFICATE OF SERVICE

I certify that on 12 June 2023, I caused a copy of the foregoing to be served upon the

following by the following means:

Charles Muszynskj, Pro se
usfilefolder@protonmail.com
855 Forrester Street Silsbee, TX 77656

Via FedEx to: U.S. Bankruptcy Court, Western District, Texas

Via e-mail from usfilefolder@protonmail.com to:

Stephen J. Zayler, US Trustee,          zayler@suddenlinkmail.com
Kerry Culpepper,                        kculpepper@culpepperip.com