# EXHIBIT 1-A

## Cashman Law Firm, PLLC

5322 West Bellfort Avenue • Suite 218 • Houston, TX 77035
(713) 364-3476 • rzcashman@CashmanLawFirm.com

June 10, 2023

Dear Judge Searcy:

There is a problem with copyright infringement lawsuits against accused internet downloaders across
the U.S. which I would like to bring to your attention. $150,000 statutory copyright damages is
obviously an inappropriate damages amount for someone who clicks on a torrent file or downloads a
piece of music, and it is my opinion that the copyright laws need to be reconsidered even in view of
the statutes in place, and more specifically, the Digital Millennium Copyright Act.

Even though copyright laws do on their face appear to hold a downloader liable for copyright
infringement, it is my understanding that it was not the intent of lawmakers to hold consumers liable
for purchasing or acquiring copyrighted products and as a result, violating copyright laws in their
acquisition. Both from the viewpoint of the copyright owners and from the viewpoint of copyright
holders, there is a problem with the current state of intellectual property enforcement as it relates to
internet piracy. Copyright holders face a difficult path enforcing their copyrights in that they lack a
mechanism to financially benefit from the infringement that takes place over the internet, and I
encourage and discuss solutions in this letter to solve the "piracy" problem.

### I. COPYRIGHT LAWS AND THE INTENT OF ITS FRAMERS.

It is my understanding that the intent of the copyright lawmakers when fashioning the Copyright Acts
and their corresponding legislation (e.g., the Digital Millennium Copyright Act "DMCA") were to
prosecute commercial entities (e.g., movie theaters, the guy in NYC on the corner of 5th Avenue
selling pirated DVDs, the gas station owners selling pirated DVDs, the online distributors who sell
pirated DVDs ["burn DVD title on demand"], etc.), and to curtail piracy. Essentially, the copyright
laws were written for anyone who makes a windfall off of copying or selling copyrighted media
without giving the authors the choice of whether to sell and depriving the authors of the profits that
they should make from their copyrighted works.

Now in my opinion, we were indoctrinated in law school to "read and obey" the law on its face. Every
average lawyer does this. In my opinion, however, a lawyer should not only read the law on its face,
but they must investigate the INTENT of the lawmakers, and then they ask themselves whether the
law is correctly applied, or whether it needs to be reinterpreted, limited in scope, or outright changed
or repealed. A lawyer is an advocate not only to uphold the law, but to interpret the law to do what is
right, and here there will be many opinions [which is why we have an unbiased judiciary and
lawmakers].

### II. REMEDIES GIVEN TO COPYRIGHT HOLDERS UNDER THE DIGITAL MILLENNIUM
COPYRIGHT ACT ("DMCA")

In 1998, Congress passed the Digital Millennium Copyright Act ("DMCA") where lawmakers were
already aware of the internet, piracy, and the issues copyright holders faced in that their copyrighted
works can be digitally (meaning "an exact copy") replicated, copied, and distributed essentially for
free, and with zero degradation in the quality of the copied work. And, while they were aware that
individual downloaders were pirating and downloading copyrighted works, rather, they gave a remedy

to copyright holders to force content providers (e.g., ISPs, website owners, etc.) to take down infringing materials [or hyperlinks thereto], or else face liability for copyright infringement themselves. This is frequently referred to as the "safe harbor" provisions which pretty much every website in the reach of U.S. courts complies with dutifully. In short, Congress put the burden of stopping piracy ON THE COPYRIGHT HOLDERS THEMSELVES to police their own intellectual property, and then they put the responsibility to stop copyright infringement ON THE WEBSITES AND CONTENT OWNERS because they were the in the best position to stop piracy.

### III. "COPYRIGHT TROLLS" AND THE BITTORRENT-BASED COPYRIGHT INFRINGEMENT LAWSUITS

After more than TWO YEARS fighting the copyright trolls, I am shocked that these bittorrent lawsuits are still here and are growing in popularity by fresh and young attorneys coming out of law school. However, bittorrent lawsuits are nothing but a scheme and a scam to separate a family's lifetime savings from the ISP account holder. "Copyright trolls" (meaning, copyright holders and their lawyers who sue individual downloaders for the infringement of their copyrighted works) do not have an interest in stopping piracy. Rather, they seek to encourage piracy so that they can sue more defendants and "shake down" more unsuspecting internet users regardless of whether the internet user downloaded the content themselves or not.

If copyright holders truly cared for protecting the integrity of their intellectual property, then they would focus their efforts on 1) REMOVING CONTENT AND LINKS from the bittorrent websites, and 2) PROSECUTING INDIVIDUALS WHO COPY, UPLOAD, AND INITIALLY SEED the pirated videos. I applaud copyright holders who watermark and track their content so that if and when their content is pirated, they can identify the so-called "pirate" immediately. I also applaud copyright holders who police their intellectual property and send takedown notices to website holders. I shame, however, copyright holders who fail to do their duty to police their own copyrighted content and instead 1) sue individual downloaders without first mitigating damages (meaning, trying to stop the piracy), or 2) send threat letters or DMCA notices to ISP account holders ("subscribers") [rather than to website owners] to pay the copyright holders hundreds or thousands (or in some cases, tens of thousands) of dollars threatening, "or else we will name you in a lawsuit against you in federal court."

Copyright infringement lawsuits have been around since the formation of our United States. And, they continue even today by companies who properly protect their intellectual property. However, the reason we do not hear about most cases is because there is nothing wrong with a company who sues a vendor which, for example, is copying DVDs and selling pirated content on the Amazon Marketplace. The reason we hear so much about these "copyright trolls" and "bittorrent lawsuits" is because they are so vile in that the copyright holder is 1) failing to do their duty to police their content and issue DMCA takedown notices, 2) they are suing individual downloaders rather than going after those who initially copied and uploaded ("the initial seeder" of) the copyrighted works, and 3) they are using settlement letters and scare tactics to shame, embarrass and threaten accused downloaders that regardless of whether they are guilty or not, they must settle "or else." This is a copyright troll.

### IV. THE INEQUALITY BETWEEN A COPYRIGHT HOLDER AND AN ACCUSED DEFENDANT IN A COPYRIGHT INFRINGEMENT LAWSUIT

There is a clear disadvantage an accused defendant has in the courtroom. A copyright troll uses boilerplate letters, boilerplate motions, and they have refined their extortion scheme to lower their costs. Unlike the lawsuits by the RIAA or the MPAA, copyright trolls do not take their cases to trial and they do not fight on the merits of each of their cases. Rather, they hide and conceal their methods of tracking individual downloaders, and any time a defendant tries to fight back, they dismiss him and move on to other victims who do not have the funds, the will, or the ability to retain counsel and fight back. When plaintiffs dismiss these defendants, they do so in a way which is not "on the merits,"

which deprives the prevailing defendant from receiving the attorney fees and costs that the Copyright Act provides for prevailing parties.

Further, copyright trolls encourage settlements by telling defendants that "it is cheaper to settle than it is to fight us," and this is a true statement. There is a clear disproportionate advantage a copyright troll has over an individual defendant because most defendants do not have the resources to retain counsel, and since copyright infringement is a civil matter rather than a criminal matter (as far as these cases go), there is little to no legal help or lawyers offering to represent defendants "pro bono."

Defense lawyers are often less than helpful as well in these cases. Many defense attorneys have agreements not to fight the plaintiff attorneys under the condition that the plaintiff attorneys give those lawyers a "lower settlement amount" for their clients. Some defense attorneys have outright verbal agreements to represent a client poorly to allow the plaintiff attorney to prevail over the defendant to establish some principle of law. Similarly, defense lawyers often charge large amounts of money to their clients in order to file motions in court which they know will not succeed. In addition, too often defense attorneys charge large amounts of money as far as retainers and hourly fees to represent clients, and their interest is not to represent defendants, but to push them to settle their cases. Thus a defendant in a bittorrent case often has little to no assistance from attorneys on either side, and are unable to obtain or pay for counsel to dutifully represent them in these cases. Thus, they are left without legal counsel.

Without the ability to protect themselves, defendants are often forced to attempt "self-help" legal tactics which often fail. Defendants are not lawyers, and they are unaware of the deadlines associated with lawsuits, and they are far from being experts in federal courts, the jurisdiction in which most of these cases are tried. Without assistance from those competent to try these cases, they are at the mercy of the copyright holders who consistently outmaneuver them in the courtroom.

## V. PROPOSED SOLUTIONS TO SOLVE THE "PIRACY PROBLEM" WHICH BENEFITS COPYRIGHT HOLDERS AND PROTECTS INTERNET USERS.

For the above reasons, I ask that lawmakers reform the copyright laws to give accused defendants a way to protect themselves against copyright trolls, and to prevent a copyright holder from abusing the legal system by filing lawsuits against individual downloaders. I also ask the judges in the federal courts to narrowly interpret the copyright laws to prevent the injustice that takes place. My end goal is for the law to be reformed to allow copyright holders to benefit from those infringing their products, but only after they take steps to police and protect their intellectual property by filing takedown notices with the websites and content providers. There are a few solutions in order to accomplish this.

## A. SOLUTION #1: COPYRIGHT HOLDERS SHOULD DEMONSTRATE THEY HAVE MITIGATED DAMAGES BY POLICING THEIR INTELLECTUAL PROPERTY

The law or the courts could make it a prerequisite to demonstrate that a copyright holder has diligently protected their copyrighted content (and thus they have mitigated damages) by filing DMCA notices with the website providing the links to the copyrighted content or to websites providing the content itself. The copyright holder would need to show 1) the actual torrent file that was downloaded, and 2) demonstrate that they filed DMCA notices to the website providers [plural] providing that content or links thereto. This solution has been proposed by both plaintiff attorneys and defense attorneys alike.

The immediate and obvious problem to this solution is that downloaders can only download torrent files which contain links, and once a DMCA notice is filed, the link will be taken down and thus the downloader will not be able to download the torrent. Thus, any downloaders who are sued for copyright infringement will have no notice that the content is copyrighted and that they might be subject to a lawsuit for downloading that file. One could argue that the law itself gives notice, but with popular websites such as Hulu, and with technologies such as TiVo which allow an individual to record and play back television shows and movies, what is legal and what is illegal becomes unclear to the average internet user.

**B. SOLUTION #2: IMPLEMENT A COMPULSORY LICENSING PIRACY PROGRAM IN CONJUNCTION WITH THE "SIX STRIKES" PROGRAM** With the most recent "Six Strikes" program instituted by the ISPs combined with the old model of "compulsory licensing" where radio stations pay a set amount to each artist every time a song is played, I believe that technology has created both a solution to piracy, and a way for a copyright holder to ethically and financially benefit from piracy.

With compulsory licensing, every time a radio station plays a copyrighted song, the copyright holder is entitled to a set fee which is paid to him. The fee is often a small amount of money, but the artist is compensated for each instance that their song is played.

The "Six Strikes" program is a copyright infringement warning system that has been put in place by the internet service providers (ISPs) to warn their subscribers when they take action which infringes a copyright holder's copyrights. While the goal of the Six Strikes program is to educate and curtail piracy by 1) forcing that user to acknowledge that what they are doing is illegal, and 2) forcing them in some cases to take online instructional classes to educate them about copyright laws and how to properly use the internet so as not to violate the rights of copyright holders, the Six Strikes program could also serve the function to give notice to a downloader that if they continue to download copyrighted media, then they will be forced to take a compulsory license for the unlicensed media they download. In other words, the Six Strikes program can be used to give the required notice to the downloader that his activities are illegal, and that he will be subject to fines should he continue this course of action.

Once an internet user is given notice that his activities are infringing the rights of copyright holders, either the ISPs themselves can serve as the mechanism to administer the compulsory licenses and to extract the fees from its subscribers (e.g., as a fee on the subscriber's monthly internet bill) whereas they would take a fee or a small percentage for their operating costs, or a third party company could track and administer the compulsory licensing program either independently or through the ISP.

## 1. DETERMINING "DAMAGES" IN A COMPULSORY LICENSING PROGRAM

As far as the amount of what the compulsory license should be, there are a few ways to look at this. Radio station compulsory licenses pay pennies on the dollar each time they play a song. Internet infringement compulsory licenses could do the same thing.

While lawmakers could determine the average cost of a movie (whether that be an adult film, or a motion picture, a song, or computer software [an application or a game]), and they could extract that amount from the internet user, they could also determine the average retail cost to purchase or rent a DVD containing the copyrighted media, and charge some multiple of that amount as a penalty because it was acquired or viewed through piracy. For example, if a movie costs $39.99 to purchase in a retail store, that amount, a fraction of that amount, or a multiple of that amount could be charged to the internet user who downloads that title. Similarly, if the content is of pornographic material where the content providers do not sell DVDs, but rather, offer membership subscriptions to their online websites (e.g., $39.99 for a month; or $129 annually, etc.) then the compulsory license could be that amount ("you break it you buy it"), it could be a fraction of that amount, or a multiple of that amount.

## VI. CONCLUSION

As I write this letter, copyright infringement lawsuits against unsuspecting ISP account holders (who are often not the downloader) continue without the copyright holder taking any steps to mitigate damages, to police their content, or to curtail piracy. The lawsuits continue to be lopsided in that plaintiff attorneys ("copyright trolls") minimize their costs and maximize the efficiency of their operations, while defendants continue to be harassed and victimized by the plaintiffs and their

attorneys, often without having the ability or the benefit of legal representation. The copyright laws need to be reformed to prevent this kind of abusive litigation.

Warm regards,

Robert Z. Cashman, Owner
Cashman Law Firm, PLLC
Phone:  (713) 364-3476
Fax:      (281) 764-8744
E-mail:  rzcashman@cashmanlawfirm.com
Website: http://www.cashmanlawfirm.com

# EXHIBIT 1

Honorable Thomas S. Zilly

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

**U.S. DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

STRIKE 3 HOLDINGS, LLC, a
Delaware corporation,

      Plaintiff,

      vs.

JOHN DOE, subscriber assigned IP
address 73.225.38.130,

      Defendant.

Case No. 2:17-cv-01731-TSZ

**PRAECIPE TO AMEND LYNCH**
**DECLARATION – Docket No: 21-**
**11**

19

    TO THE CLERK OF THE ABOVE ENTITLED COURT:

20

    Defendant JOHN DOE, subscriber assigned IP address 73.225.38.130, respectfully

21

requests an amendment to Docket No. 21-11, the Declaration of Christopher Lynch.  The

22

previously submitted version was missing the appropriate caption page. This has been corrected

23

in the version accompanying this praecipe.

24

25

26

27

PRAECIPE TO AMEND LYNCH DECLARATION –
DOCKET NO: 21-11- 1
CASE NO. 2:17-cv-01731-TSZ

**EDMONDSON IP LAW**
Venture Commerce Center, 3699 NE John Olsen Ave
Hillsboro, Oregon 97124
TEL. 503.336.3749 • FAX 503.482.7418

1  Respectfully Submitted on March 9, 2018 by:   /s/ J. Curtis Edmondson

2                                            J. Curtis Edmondson, WSBA #43795
                                             3699 NE John Olsen Avenue
3                                            Hillsboro, Oregon 97124
                                             Telephone: (503) 336-3749
4                                            Email: jcedmondson@edmolaw.com

5                                            *Attorney for Defendant*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PRAECIPE TO AMEND LYNCH DECLARATION –
DOCKET NO: 21-11- 2
CASE NO. 2:17-CV-01731-TSZ

EDMONDSON IP LAW
Venture Commerce Center, 3699 NE John Olsen Ave
Hillsboro, Oregon 97124
TEL. 503.336.3749 • FAX 503.482.7418

<u>CERTIFICATE OF SERVICE</u>

I, J. Curtis Edmondson, hereby certify that on March 9, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Bryan J. Case, WSBA #41781
    Email: bcase@foxrothschild.com
    FOX ROTHSCHILD LLP (SEATTLE)
    1001 Fourth Avenue, suite 4500
    Seattle, Washington 98154
    Telephone: (206) 624-3600

    Lincoln D. Bandlow, *Admitted Pro Hac Vice*
    Email: lbandlow@foxrothschild.com
    FOX ROTHSCHILD LLP (LOS ANGELES)
    10250 Constellation Blvd., Suite 900
    Los Angeles, California 90067
    Telephone: (310) 598-4150

    *Attorneys for Plaintiff Strike 3 Holdings LLC*

DATED this 9th day of March, 2018.

                    By:   /s/   J. Curtis Edmondson
                          J. Curtis Edmondson

PRAECIPE TO AMEND LYNCH DECLARATION --
DOCKET NO: 21-11- 3
CASE NO. 2:17-CV-01731-TSZ

**EDMONDSON IP LAW**
Venture Commerce Center, 3699 NE John Olsen Ave
Hillsboro, Oregon 97124
TEL. 503.336.3749 • FAX 503.482.7418

Honorable Thomas S. Zilly

1

2

3

4

5

6

7

8          **U.S. DISTRICT COURT**
9      **WESTERN DISTRICT OF WASHINGTON**

10

11   STRIKE 3 HOLDINGS, LLC, a Delaware
     corporation,
12
                        Plaintiff,          Case No.: 2:17-cv-01731-TSZ
13
            vs.                             **DECLARATION OF J. CHRISTOPHER**
14                                          **LYNCH**
     JOHN DOE, subscriber assigned IP
15   address 73.225.38.130,

16                      Defendant.

17

18

19

20

21

22

23

24

25

26

27

CASE NO.: 2:17-CV-01731-TSZ - 1

**EDMONDSON IP LAW**
Venture Commerce Center, 3699 NE John Olsen Ave.
Hillsboro, Oregon 97124
TEL. 503.336.3749 • FAX 503.482.7418

1

2                                                                        Honorable Thomas S. Zilly

3

4

5

6

7                              UNITED STATES DISTRICT COURT
                              WESTERN DISTRICT OF WASHINGTON
8                                          AT SEATTLE

| | |
|---|---|
| VENICE PI, LLC,<br><br>                    Plaintiff,<br><br>    vs.<br><br>SEAN O'LEARY JR, et al.,<br><br>                    Defendants. | Civil Action No. 2:17-cv-988TSZ<br><br>DECLARATION OF J. CHRISTOPHER LYNCH |
| VENICE PI, LLC,<br><br>                Plaintiff,<br><br>    vs.<br><br>JONATHAN DUTCZAK, et al.,<br><br>                Defendants. | Civil Action No. 2:17-cv-990-TSZ |
| VENICE PI, LLC,<br><br>                Plaintiff,<br><br>    vs.<br><br>MARTIN RAWLS, et al.,<br><br>                Defendants. | Civil Action No. 2:17-cv-991-TSZ |

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

| | |
|---|---|
| VENICE PI, LLC,<br><br>                    Plaintiff,<br><br>    vs.<br><br>INA SICOTORSCHI, et al.,<br><br>                    Defendants. | Civil Action No. 2:17-cv-1074-TSZ |
| VENICE PI, LLC,<br><br>                    Plaintiff,<br><br>    vs.<br><br>GREGORY SCOTT, et al.,<br><br>                    Defendants. | Civil Action No. 2:17-cv-1075-TSZ |
| VENICE PI, LLC,<br><br>                    Plaintiff,<br><br>    vs.<br><br>YELENA TKACHENKO, et al.,<br><br>                    Defendants. | Civil Action No. 2:17-cv-1076-TSZ |
| VENICE PI, LLC,<br><br>                    Plaintiff,<br><br>    vs.<br><br>CELINA POTTER, et al.,<br><br>                    Defendants. | Civil Action No. 2:17-cv-1160-TSZ |

DECLARATION OF J. CHRISTOPHER LYNCH - ii

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

1

VENICE PI, LLC,                                    Civil Action No. 2:17-cv-1163-TSZ

2
                    Plaintiff,

3
        vs.

4
TONJA LAIBLE, et al.,

5
                    Defendants.

6
VENICE PI, LLC,                                    Civil Action No. 2:17-cv-1164-TSZ

7
                    Plaintiff,

8
        vs.

9
VICTOR TADURAN, et al.,

10
                    Defendants.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

DECLARATION OF J. CHRISTOPHER LYNCH - iii

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

**TABLE OF CONTENTS**

A.   Mr. Arheidt and Mr. Perino state differing work histories in differing declarations. 2

    1.   Nu Image: Perino and Arheidt at USCG and Guardaley..................................3

B.   Achte/Neunte: Perino and Achache at USCG and Guardaley....................................4

    1.   Perino and Achache: Use of photocopied signatures. ...................................5

C.   Shirokov v. U.S. Copyright Group, Guardaley, et al., D. MA. .................................6

D.   Malibu Media and Tobias Fieser: Guardaley's pornography cases. .........................7

    1.   Guardaley's non-pornography cases after spring 2012. ................................9

E.   Mr. Lowe's filing history does not align with his declaration about Crystal Bay
Corporation.............................................................................................................11

    1.   Current representations by Mr. Lowe about Crystal Bay Corporation. .......11

    2.   Dallas Buyers Club: Daniel Macek at Crystal Bay Corporation..................12

    3.   Elf-Man: Daniel Macek at Crystal Bay Corporation....................................14

    4.   Crystal Bay Corporation: Explanation provided under Court Order............15

    5.   Canal Street Films, LLC: William Gorfein at IP Squared............................16

F.   Mr. Lowe's representations about "Darren M. Griffin" do not align with the
apparent facts.........................................................................................................19

    1.   Mr. Lowe tells this District that "Darren M. Griffin" exists. .......................19

    2.   Mr. Lowe told E.D. WA that "Darren M. Griffin" exists. ...........................20

    3.   Mr. Lowe incorrectly claims that no declarations of "Darren M. Griffin"
have been filed in this District. Scores of them have been filed in W.D.
WA. ........................................................................................................21

    4.   "Darren M. Griffin" is likely fictitious.......................................................22

    5.   Use of "Darren M. Griffin" declarations with Judge Lasnik........................23

    6.   "Darren M. Griffin" declarations in other Districts.....................................25

    7.   "Darren M. Griffin" is connected to each of the non-pornography
declarants.................................................................................................25

    8.   The typed up charts of alleged infringement cannot be direct output of a
computer program. ..................................................................................31

G.   Conclusion ............................................................................................................32

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

1    J. CHRISTOPHER LYNCH declares under penalty of perjury as follows:

2    1.    I am over the age of 18, competent to be a witness herein, and make this declaration

3    on personal knowledge.

4    2.    I have represented defendants in other Bit Torrent cases filed by David Allen Lowe's

5    law firm in this District, although not in these *Venice PI* cases. Both the Court's Order to Show

6    Cause, Dkt. #32, and Plaintiff's Response, Dkt. #33, cite me by name. This prompts this response

7    to clarify facts I have discovered. I respectfully request that the Court entertain this declaration and

8    I would testify in Court if requested to do so.

9    3.    I submit this declaration in response to the Declarations of Daniel Arheidt, Dkt. #37;

10   David Lowe, Dkt. #38, and Benjamin Perino, Dkt. #39 in lead case number 2:17-cv-988-TSZ.

11   4.    Mr. Perino's declaration at paragraphs 4-18 provides a detailed work background

12   that does not include "U.S. Copyright Group," for which Mr. Perino submitted numerous

13   declarations in other Districts. Dkt. #39. My declaration documents those instances.

14   5.    Mr. Arheidt's declaration at paragraphs 7-17 provides a detailed work background

15   that seems to contradict his claimed work history in a declaration in the District of Columbia. Dkt.

16   #37. My declaration documents those instances.

17   6.    Mr. Lowe's declaration, Dkt. #38, at paragraphs 7-8 provides an explanation that no

18   declarations regarding "Crystal Bay Corporation" and "Darren M. Griffin" have been filed in this

19   District—but they have been filed in this District. My declaration documents those instances.

20   7.    I provide significant detail below to support these three principal points as

21   completely as possible. I apologize to the Court for the density of the information and length of this

22   document. The subject matter warrants the detail.

23

24

DECLARATION OF J. CHRISTOPHER LYNCH - 1

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

8.      All documents cited in this declaration are PACER records. Because proving the points requires numerous documents, all filed in the United States District Courts, I have not attached paper copies of the cited references, only a reference to the District, the case number, and the ECF number of the cited pleading or exhibit. Also, this declaration includes inserted graphics which are copies of signatures from some cited PACER records. I have faithfully reproduced these signatures to the best of my staff member's ability, but the originals remain in PACER for review. I will provide hard copies of the citations to ECF materials if requested.

9.      I have used PACER search techniques to thoroughly investigate Bit Torrent litigation, particularly the non-pornography cases. There are thousands of cases in numerous (but not all) Districts over the past nine years. I have discovered certain facts that are inconsistent with the declarations of Messrs. Perino, Arheidt, and Lowe filed in these cases. These inconsistencies seem relevant to the administration of justice and compel me to make this declaration.

10.     I have concluded that a fictitious declarant, "Darren M. Griffin," claiming a relationship to "Crystal Bay Corporation" of South Dakota "in its technical department," was used to obtain Subpoenas in hundreds of cases, including numerous cases in this District. The declarations in this case of Messrs. Perino, Arheidt, and Lowe do not claim any relationship to "Darren M. Griffin," however there is a direct connect between "Darren M. Griffin" and declarants Perino, Arheidt, and Lowe. My declaration documents those connections.

**A.      Mr. Arheidt and Mr. Perino state differing work histories in differing declarations.**

11.     In 2010, starting in the District of Columbia, non-pornography BitTorrent movie lawsuits began being filed. The majority include a declaration of Mr. Perino, who filed declarations between 2010 and 2012 in cases against over 10,000 individuals. Mr. Perino claimed a relationship to "U.S. Copyright Group." Mr. Perino's declarations were filed with declarations of Patrick

DECLARATION OF J. CHRISTOPHER LYNCH - 2

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

1    Achache claiming a relationship to Guardaley, Limited. In those cases, Mr. Arheidt filed at least

2    one declaration that was identical to Mr. Achache's, including the personal background. These

3    2010-2012 declarations are inconsistent with Mr. Perino's current declaration, Dkt. #39, and Mr.

4    Arheidt's current declaration, Dkt. #37.

5    **1.    *Nu Image*: Perino and Arheidt at USCG and Guardaley.**

6    12.    In *Nu Image, Inc. v. Does 1-6500*, D. DC, case no. 1:11-cv-301, Mr. Arheidt's

7    declaration is ECF No. 5-2, signed February 17, 2011. Mr. Arheidt's 2011 declaration claims more

8    technical experience than Mr. Arheidt's 2018 declaration, Dkt. #37, ¶¶ 7-17, would seem to make

9    possible. Mr. Arheidt's 2011 declaration:

10    I am Director of Data Services for Guardaley, Limited ('Guardaley'), a company
      incorporated in England and Wales under company number 06576149. Guardaley is
11    a provider of online anti-piracy services for the motion picture industry. Before my
      employment with Guardaley, I held various software developer and consultant
12    positions at companies that developed software technologies. I have approximately
      ten (10) years of experience related to the protocols, technical architecture and
13    operation of the Internet.

14    (ECF No. 5-2 at ¶ 1, the "*ten-years experience paragraph.*")

15    At Guardaley, I am the head of the department that carries out evidence collection
      and provides litigation support services. I work closely with our development team
16    to create credible techniques to scan for, detect, and download copies of copyrighted
      material on multiple network protocols for use by copyright owners.

17
     (ECF No. 5-2 at ¶ 2, the "*credible techniques paragraph.*")
18
19    13.    Mr. Perino's declaration in that same *Nu Image* case is ECF No. 5-1, signed

20    February 11, 2011. Mr. Perino's 2011 declaration claims a position at "U.S. Copyright Group" that

21    is not disclosed in his 2018 declaration's recitation of relevant work history. Dkt. #39 at ¶¶ 4-18.

22    Mr. Perino's 2011 declaration:

23    I am one of four Managers of the US Copyright Group (USCG) which is a private
      company dedicated to anti-piracy efforts in the motion picture industry involving

24

DECLARATION OF J. CHRISTOPHER LYNCH - 3

1       unlawful P2P downloading. I submit this declaration in support of Plaintiff's Motion
    for Leave to Take Discovery Prior to Rule 26(f) Conference.

2
(ECF No. 5-1 at ¶1.)

3
    The Internet is a vast collection of interconnected computers and computer networks
4       that communicate with each other . . . .

5   (ECF No. 5-1 at ¶ 4, the "*vast collection paragraph*.")

6       In order to assist Plaintiff in combating infringement on P2P networks, the USCG
    retained Guardaley Limited ('Guardaley'), a company incorporated in England and
7       Wales under company number 06576149. Guardaley provides anti-piracy and
    copyright protection services through sophisticated technology and proprietary
8       technology and software programs. *See* Decl. of Daniel Arheidt.

9   (ECF No. 5-1 at ¶ 10.)

10       14.    In this *Nu Image* case, Mr. Arheidt's declaration is 18 paragraphs in length, and Mr.

11   Perino's is 13 paragraphs. Mr. Perino filed identical (13 paragraph) declarations in similar cases

12   filed from 2010 through 2012, usually filed with a declaration of Patrick Achache (instead of Mr.

13   Arheidt.)

14   **B.**    *Achte/Neunte:* **Perino and Achache at USCG and Guardaley.**

15       15.    The earliest example of declarations of Messrs. Perino and Achache is *Achte/Neunte*

16   *v. Does 1-2094,* D. DC, case no. 1:10-cv-453.

17       16.    Mr. Perino's (13 paragraph) declaration is ECF No. 4-1; it is identical to Mr. Perino's

18   *Nu Image* declaration above.

19       17.    **Mr. Achache's** declaration is ECF No. 4-2; it is identical to **Mr. Arheidt's** *Nu Image*

20   declaration above, including, for example the "*ten years experience paragraph*" and the "*credible*

21   *techniques paragraph*." In the *Achte/Neunte* case, **Mr. Achache** claims:

22       I am Director of Data Services for Guardaley, Limited ('Guardaley'), a company
    incorporated in England and Wales under company number 06576149. Guardaley is
23       a provider of online anti-piracy services for the motion picture industry. Before my
    employment with Guardaley, I held various software developer and consultant

24

DECLARATION OF J. CHRISTOPHER LYNCH - 4

1  positions at companies that developed software technologies. I have approximately
2  ten (10) years of experience related to the protocols, technical architecture and
   operation of the Internet.

3  (ECF No. 4-2 at ¶ 1, the "*ten-years experience paragraph.*")

4  At Guardaley, I am the head of the department that carries out evidence collection
   and provides litigation support services. I work closely with our development team
5  to create credible techniques to scan for, detect, and download copies of copyrighted
   material on multiple network protocols for use by copyright owners.

6  (ECF No. 4-2 at ¶ 2, the "*credible techniques paragraph.*")

7  18.    I used PACER search techniques to isolate copyright cases filed during certain

8  periods, looking for common witnesses and other commonalities. I did this for successive time

9  periods from 2009 to the present. Other 2010-2012 declarations of Mr. Perino and Mr. Achache

10 seem to have photocopied signatures, or other anomalies.

11 **1.    Perino and Achache: Use of photocopied signatures.**

12 19.    For example, Mr. Achache's declaration in *West Bay One v. Does 1-2,000* (aka

13 *Maverick Entertainment Group, Inc. v. Does 1-1,000*) in D. DC, case no. 1:10-cv-569, ECF No. 4-

14 2, filed April 16, 2010, appears to have a photocopied date-line and signature from ECF No. 4-2 of

15 Mr. Achache's *Achte/Neunte* declaration cited above. Mr. Perino's declarations in those two cases,

16 ECF No. 4-1 in both cases, also appear to have a photocopied date-line and signature.

17 4/16/10 D. DC 10-cv-569 [4-2]                    3/18/10 D. DC 10-cv-453 [4-2]

18 Executed on 31.12.09 , ___, at 'Karlsruhe             Executed on 31.12.09 , ___, at 'Karlsruhe

19

20 /P. Adache                                         /P. Adache
   Patrick Achache                                    Patrick Achache

21

22 3/18/10 D. DC 10-cv-453 [4-1]                    4/16/10 D. DC 10-cv-569 [4-1]

23 Executed on   31.12 , 03, at Karlsruhe           Executed on   31.12 , 03, at Karlsruhe

24 Benjamin Perino                                   Benjamin Perino

601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

20.     Other examples of photocopied signatures are Mr. Achache's declarations in (i) *Nu Image v. Does 1-2,165,* D. MD, case no. 8:12-599, ECF No. 4-2; (ii) *Nu Image v. Does 1-2,515,* M.D, FL, case no. 2:12-cv-109, ECF No. 8-2; (iii) *Nu Image v. Does 1-359,* M.D. FL, case no. 2:12-cv-359, ECF No. 6-3; and (iv) *Nu Image v. Does 1-18,* E.D. PA, case no. 2:12-cv-4755, ECF No. 4-2.

21.     Examples of photocopied signatures for Mr. Perino include declarations in (i) *Nu Image v. Does,* ND FL, case no. 4:12-cv-331, ECF No. 5-2; and (ii) *Studio West v. Does,* SD TX, case no. 4:12-CV-3691, ECF No. 5-2.

22.     Mr. Perino claimed to work for U.S. Copyright Group in each of the 2010-2011 cases where Mr. Achache (and Mr. Arheidt) claimed to work for Guardaley. Then, in March 2012, Mr. Perino's declarations' opening paragraph changed, eliminating any current or future reference to "U.S. Copyright Group" as copied verbatim below:

> I am a Manager for Guardaley, Limited ('Guardaley'), a company incorporated in England and Wales under company number 06576149. Guardaley is a provider of online anti-piracy services for the motion picture industry. I submit this declaration in support of Plaintiff's Motion for Leave to Take Discovery and for Internet Service Providers to Disclose Identifying Information of Unknown Defendants. [SIC]

(*Nu Image v. Does 1-2,165,* D. MD, case no. 8:12-cv-599, ECF No. 4-1.)

23.     It may be that *Shirokov v. US Copyright Group and Guardaley,* a federal lawsuit alleging fraud in copyright litigation, influenced this change.

**C.     *Shirokov v. U.S. Copyright Group, Guardaley, et al.,* D. MA.**

24.     During 2010-2012, Guardaley and U.S. Copyright Group became defendants in a lawsuit alleging litigation abuse. *Shirokov v. Dunlap Grubb and Weaver, et al.,* D. MA, case no. 1:10-cv-12043 was filed November 24, 2010 against *Achte/Nenute* (the copyright Plaintiff cited

DECLARATION OF J. CHRISTOPHER LYNCH - 6

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

1  above); U.S. Copyright Group; Guardaley, Limited; and lawyers Nicholas Kurtz, Thomas Dunlap,

2  and Dunlap, Grubb and Weaver PLLC.

3      25.    Guardaley moved to dismiss, claiming Guardaley was not subject to personal

4  jurisdiction, given its purported location in "England and Wales." ECF Nos. 42, 44. The plaintiff

5  opposed, submitting documents about Guardaley's location, systems, and relationships to Mr.

6  Perino and U.S. Copyright Group. ECF No. 56. Guardaley moved to strike those documents, ECF

7  No. 58, as inconsistent with its Rule 12 Motion.

8      26.    On March 27, 2012, Judge O'Toole dismissed Guardaley for lack of personal

9  jurisdiction. ECF No. 90 at 21-27.

10      27.    Following dismissal of Guardaley, it does not appear from my PACER searching

11  that Guardaley was overt about its role in Bit Torrent cases in the U.S. District Court system. No

12  new plaintiffs used declarations of Messrs. Perino, Achache, or Arheidt. Guardaley was not

13  mentioned in newly filed cases.

14      28.    From what I can discern, Guardaley's pornography cases apparently continued to

15  claim "IPP" as the purported investigator. From what I can discern, Guardaley's non-pornography

16  cases in 2012 moved primarily to claiming "Crystal Bay Corporation" as the purported investigator.

17  **D.**    *Malibu Media* **and Tobias Fieser: Guardaley's pornography cases.**

18      29.    Certain currently filed pornography cases, e.g. *Strike 3 v. Does* in this District, e.g.

19  case no. 17-cv-1729, Dkt. #4-3, claim that German company IPP conducted the investigation using

20  IPP employee Tobias Fieser.

21      30.    Mr. Feiser has consistently claimed to be an employee of IPP. Mr. Perino's present

22  declaration claims Mr. Feiser is an employee of Guardaley, as well as IPP. Dkt. #39 at ¶ 20.

23  (Karlsruhe is 625 kilometers south of Hamburg.)

24

DECLARATION OF J. CHRISTOPHER LYNCH - 7

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

1    31.    Other than Mr. Feiser's opening paragraph and references to "IPP" instead of

2  "Guardaley," Mr. Fieser's declaration in the pornography case *Digital Content v. Does,* D. MD,

3  case no. 8:10-cv-3403, ECF No. 5-2 is identical to Mr. Arheidt's and Mr. Achache's 18 paragraph

4  declarations discussed above:

5         I am employed by IPP, Limited ('IPP'), a company incorporated in Hamburg,
          Germany under the company number 115546. IPP is a provider of online anti-piracy
6         services for proprietary digital content. I have studies software development and
          have approximately five (5) years of experience related to the protocols, technical
7         architecture and operation of the Internet.

8  (ECF No. 5-2 at ¶ 1, a modified *"ten-years experience paragraph."*)

9         At IPP, I am the head of the department that carries out evidence collection and
          provides litigation support services. I work closely with our development team to
10        create credible techniques to scan for, detect, and download copies of copyrighted
          material on multiple network protocols for use by copyright owners.
11
12  (ECF No. 5-2, ¶ 3, the *"credible techniques paragraph."*)

13        32.    The remaining paragraphs of Mr. Feiser's declaration are identical to the declarations

14  of Mr. Arheidt and Mr. Achache cited above, other than substitutions of "IPP" for "Guardaley."

15        33.    Mr. Feiser has submitted numerous declarations for other pornography cases,

16  including the *Malibu Media* cases, e.g. *Malibu Media v. Does 1-21,* D. CO, case no. 1:12-cv-835,

17  ECF No. 6-2 (claiming employment with IPP.)

18        34.    Mr. Lowe's response, Dkt. #33 at ¶ 6, seems to speak of *Malibu Media* similarly to

19  *Prenda* as a "bad actor." He also claims:

20        Malibu Media apparently uses similar forensic technology to identify Bit Torrent
          infringers, albeit obtained from different data providers and licensees than Plaintiff
21        uses in these cases.

22  (Dkt. #33 at ¶ 6.)

23        35.    But Tobias Fieser is a direct connection, claiming to work for IPP, with Mr. Perino

24  claiming he also works for Guardaley. Note also the "metadata" in Mr. Lowe's response. Almost

DECLARATION OF J. CHRISTOPHER LYNCH - 8

1   all of Mr. Lowe's Bit Torrent pleadings on PACER using Chrome show (i) in the tab at the top and

2   (ii) in the header of the document, what appears to be his firm's document code. For example, the

3   Response, Dkt. #33, shows "INIP-6-0088P18-RESPSC." Presumably this is a code for "InteralIP

4   LLP," an undisclosed entity connected to Guardaley, and codes for the plaintiff, the matter number,

5   the pleading, and document title. But, note the metadata for the exhibit to Mr. Lowe's declaration,

6   Dkt. #38-1 where the "INIP" code is not used, a code including "Malibu" is used: "042016-Malibu."

7   Despite the Response argument at Dkt. #33 at ¶ 6, there is a direct connection between the non-

8   pornography plaintiffs and the pornography plaintiffs – it is in the metadata. Here are screen

9   captured graphics showing the "INIP" metadata from Dkt. #33, and the "Malibu" metadata from

10  Dkt. #38-1:



17      **1.      Guardaley's non-pornography cases after spring 2012.**

18      36.      As to the non-pornography cases, after the *Shirokov* personal jurisdiction ruling

19  dismissing Guardaley, Guardaley no longer filed declarations directly for new plaintiffs.

20  Declarations using copied paragraphs from Mr. Perino's and Mr. Achache's declarations were then

21  seen from (i) Excubitor USA, Inc.; (ii) Copyright Defenders, Inc.; (iii) IP Squared Technologies,

22  Inc.; and (iv) Crystal Bay Corporation, although there could be others. Crystal Bay Corporation was

23  the most prolific.

24

DECLARATION OF J. CHRISTOPHER LYNCH - 9

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

### a.   Mesut Tarhan at Excubitor USA, Inc.

37.    For example, in *Liberty Media Holdings v. Does 1-38,* M.D. FL, case no. 1:11-cv-21567, ECF No. 19-1, Mesut Tarhan's declaration amalgamates copied paragraphs from the Perino and Achache declarations quoted above, with the company name changed from Guardaley:

> I am the Vice President of Excubitor USA, Inc. a company incorporated in Nevada with its principal address at 4550 West Oakey [SIC] Blvd, #111H Las Vegas, Nevada 89102. Excubitor is a provider of online anti-piracy services for the motion picture industry. Before my employment with Excubitor, I held various positions at companies that developed software technologies. I have approximately ten years of experience related to digital media and computer technology."

(*Id.* at ¶ 1, the *"ten years experience paragraph."*)

> At Excubitor, I am the head of the department that carries out evidence collection and provides litigation support services. I work closely with our research team to create credible processes to scan for, detect, and document copyright infringement over the Internet.

(*Id.* at ¶ 3, the *"credible processes paragraph."*)

> The Internet is a vast collection of interconnected computers and computer networks that communicate with each other.

(*Id.* at ¶ 4, the *"vast collection paragraph."*)

### b.   Matthias Schroeder Padewet at Copyright Defenders, Inc.

38.    Declarations in 2011-2012 also came from Matthias Schroeder Padewet. Matthias Schroeder Padewet claimed association with Copyright Defenders, Inc. (using the same Las Vegas address as Excubitor USA, Inc.), and copied Mesut Tarhan's amalgamated copied paragraphs from Mr. Perino and Mr. Achache. For example, Matthias Schroeder Padewet claimed in *4 Twenty Media v. Swarm,* W.D. LA, case no. 6:12-cv-31, ECF No. 2-3:

> I am the vice president of Copyright Defenders, Inc. ('Copyright Defenders') a company incorporated in Nevada with its principal place of business at 4550 West Oakey [SIC] Blvd. #111H Las Vegas NV 89102. Copyright Defenders is a provider of online anti-piracy services for the motion picture industry. Before my employment with Copyright Defenders, I held various positions at companies that developed

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

software technologies. I have approximately ten years of experience related to digital media and computer technology.

(*Id.* at ¶ 1, the "*ten years experience paragraph.*")

At Copyright Defenders, I am the head of the department that carries out evidence collection and provides litigation support services. I work closely with our research team to create credible processes to scan for, detect, and document copyright infringement over the Internet.

(*Id.* at ¶ 3, the "*credible processes paragraph.*")

The Internet is a vast collection of interconnected computers and computer networks that communicate with each other.

(*Id.* at ¶ 4; the "*vast collection paragraph.*")

### c.   William Gorfein, "Darren M. Griffin," and Daniel Macek at Crystal Bay Corporation

39.   By summer 2012, Crystal Bay Corporation became the entity most cited by declarants in non-pornography Bit Torrent cases using amalgamated copies of the Perino and Achache declaration language. Crystal Bay Corporation is discussed in Point E, *infra*.

### E.   Mr. Lowe's filing history does not align with his declaration about Crystal Bay Corporation.

40.   Mr. Lowe makes representations about Crystal Bay Corporation that are objectively false, as the ECF record proves.

### 1.   Current representations by Mr. Lowe about Crystal Bay Corporation.

41.   Mr. Lowe's declaration includes two paragraphs about Crystal Bay Corporation and "Darren M. Griffin":

I understand that Mr. Griffin is an individual who worked briefly for Crystal Bay Corporation in the 2012-2013 to verify infringement detection data licensed from Excipio. As explained in the Supplemental Declaration of Ben Perino, Excipio is a company to which parts of the GuardaLey infringement detection system were outsourced in the 2012-2015 time period (see ¶ 16), and which in turn licensed the

DECLARATION OF J. CHRISTOPHER LYNCH - 11

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

1  technology to others, believed to have included Crystal Bay. I have no personal
   knowledge about Crystal Bay, and never worked with that entity. The only
2  information I can glean from that entity is obtained from the South Dakota
   Secretary of State website, attached as Exhibit A, which indicates that the entity
3  was formed in March 2012 and ceased existence in or around March 2015.

4  (Dkt. #38 at ¶ 7.)

5  Mr. Griffin apparently verified infringement detection data and submitted a number
   of declarations in various jurisdictions confirming the data, similar to what has been
6  done in these cases by Mr. Arheidt. But I have never met or worked with Mr.
   Griffin and, to the best of my knowledge and investigation, have never submitted
7  a declaration from him in any case in this jurisdiction.

8  *(Id.* at ¶ 8.)

9       42.    But there must be personal knowledge of Crystal Bay Corporation because Mr.

10  Lowe's law firm filed declarations of declarants claiming a connection to Crystal Bay Corporation

11  in at least three sets of cases: (i) *Dallas Buyers Club*; (ii) *Elf-Man*; and (iii) *Canal Street Films.*

12       **2.    *Dallas Buyers Club*: Daniel Macek at Crystal Bay Corporation**

13       43.    Lowe Graham & Jones PLLC filed thirteen cases for *Dallas Buyers Club LLC* in this

14  District between July 30, 2014 and April 3, 2015. Each *Dallas Buyers Club* case commences with

15  a Motion to allow Subpoenas supported by a Declaration of Daniel Macek claiming:

16  I have been retained as a software consultant by Crystal Bay Corporation ('Crystal
    Bay'), a company incorporated in South Dakota and organized and existing under the
17  laws of the United States, in its technical department.

18  (Case nos. (1) 14-cv-1153, Dkt. #5; (2) 14-cv-1336, Dkt. #7; (3) 14-cv-1402, Dkt. #7; (4)
    14-cv-1684, Dkt. #6; (5) 15-cv-1819, Dkt. #5; (6) 14-cv-1926, Dkt. #6; (7) 15-cv-133, Dkt.
19  #6; (8) 15-cv-134, Dkt. #6; (9) 15-cv-576, Dkt. #6; (10) 15-cv-579, Dkt. #6; (11) 15-cv-580,
    Dkt. #6; (12) 15-cv-581, Dkt. #6; (13) 15-cv-582, Dkt. #6. (¶ 2.))
20
21       44.    Each declaration of Daniel Macek is identical, at 21 paragraphs. Each uses a copy of

22  Mr. Perino's *"vast collection paragraph"* (at paragraph 3). Each is identical to the currently-used

23  declarations of Mr. Arheidt in this District, other than substitution of "MaverickEye" for "Crystal

24  Bay Corporation" (including the typographical error "propriety").

DECLARATION OF J. CHRISTOPHER LYNCH - 12

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

1    45.    Each declaration claims (i) that the witness used Crystal Bay Corporation software

2    ("The forensic technology used by Crystal Bay is propriety [SIC] software that collects, identifies,

3    and records the IP addresses in use by those people" (paragraph 10)); and (ii) that Crystal Bay

4    Corporation made determinations ("Crystal Bay determined that the Doe Defendants identified in

5    Exhibit C to the Complaint were using the ISPs listed in the exhibit to gain access to the Internet

6    and distribute and make available for distribution and copying Plaintiff's copyrighted motion

7    picture" (paragraph 14)); among (iii) other recitations about Crystal Bay Corporation relied upon

8    by the Plaintiff in the Motions for Expedited Discovery, e.g. case no. 2:14-cv-1153, Dkt. #4.

9    46.    Mr. Macek does not state that he is a German national or that the investigation he

10    allegedly undertook apparently was undertaken from Germany. The only geographic reference is to

11    South Dakota. There is no explanation how a South Dakota corporation could lawfully employ a

12    German national in "its technical department."

13    47.    Each *Dallas Buyers Club* case includes a Motion invoking work purportedly

14    undertaken at Crystal Bay Corporation:

15            Plaintiff has engaged Crystal Bay Corporation ('Crystal Bay'), a provider of
            online antipiracy services for the motion picture industry, to monitor this
16            infringing activity.

17    *(e.g.* case no. 14-cv-1153, Dkt. #4 at ¶ 2.)

18    48.    *Dallas Buyers Club* also moved for default judgment on the basis of work

19    purportedly undertaken at Crystal Bay Corporation. *E.g.* case no. 14-cv-1153, Dkt. #46, at ¶ 7. This

20    Motion for default judgment used declarations of Michael Patzer, Dkt. #49 and Daniel Macek, Dkt.

21    #50.

22    49.    Mr. Patzer claims to be an independent contractor to Excipio of Germany with

23    knowledge of Excipio's business. Mr. Patzer claims:

24

DECLARATION OF J. CHRISTOPHER LYNCH - 13

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

1
2

Excipio contracts with Crystal Bay Corporation ('Crystal Bay') to provide Crystal Bay with this data collection system, which is the system that Crystal Bay uses to detect infringement of plaintiff's works.

3  *(Id.* at Dkt. #49.)

4       50.    Mr. Macek's "second declaration" is identical to the 21 paragraph declaration

5  initially filed with each case. This second declaration adds paragraph 22 claiming evidence of other

6  infringements, and adds paragraph 23, an (oddly worded) disclaimer: "No one including myself,

7  has an ownership in Crystal Bay, or vice versa." Dkt. #50 at ¶ 23.

8       51.    Mr. Lowe filed "Macek at Crystal Bay Corporation" declarations in *Dallas Buyers*

9  *Club* cases in this District between July 30, 2014 and April 3, 2015. According to the links provided

10  in Mr. Lowe's declaration, Dkt. #38 at pp. 5-6, the Australian *Dallas Buyers Club* hearing was in

11  February 2015. Mr. Macek claimed to work for "Maverick" (Reasons for Judgment, ¶ 10 from the

12  link provided), during the same timeframe where he was telling United States District Courts that

13  his *Dallas Buyer Club* investigations were for "Crystal Bay Corporation . . . of South Dakota . . . in

14  its technical department," e.g. in this District, case no. 15-cv-582, Dkt. #6. From my observation of

15  Bit Torrent, it is international by nature, and the investigations could not be anything but

16  international at the stage of harvesting the data.

17      **3.**    *Elf-Man***: Daniel Macek at Crystal Bay Corporation**

18       52.    Lowe, Graham & Jones represented *Elf-Man LLC* in E.D. WA, case nos. 13-cv-115

19  and 13-cv-395. Mr. Lowe's appearance, ECF No. 110, followed the withdrawal of Elf-Man LLC's

20  attorney Maureen VanderMay for ethical reasons. Ms. VanderMay's Motion explained:

21
22

Issues have arisen between Plaintiff's representatives and counsel the nature of which make it impossible for counsel to both continue with representation and comply with the governing rules of professional conduct.

23  *(Elf-Man,* case no. 13-cv-115, ECF No. 109, June 3, 2014.)

24

DECLARATION OF J. CHRISTOPHER LYNCH - 14

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

1    53.    In case no. 13-cv-115, Mr. Lowe moved for default judgments. These Motions used

2    declarations of Michael Patzer, ECF No. 126, and Daniel Macek, ECF No. 128, both claiming a

3    relationship to Crystal Bay Corporation of South Dakota in its technical department. Judge Thomas

4    O. Rice granted the Motions. *Id.* at ECF No. 134.

5    54.    In case no. 13-cv-395, Mr. Lowe moved to dismiss *Elf-Man's* Amended Complaint

6    against my client, Mr. Lamberson, with prejudice. In opposition to a defense motion for attorneys'

7    fees, Mr. Lowe used Declarations of Mr. Macek, ECF No. 88 and Mr. Patzer, ECF No. 89, both

8    claiming a relationship to Crystal Bay Corporation of South Dakota in its technical department.

9    **4.    Crystal Bay Corporation: Explanation provided under Court Order.**

10    55.    Judge Rice Ordered Ms. VanderMay to provide a narrative of the relationship of Mr.

11    Macek and Crystal Bay Corporation to Elf-Man LLC. Case No. 13-cv-395, ECF No. 31. Ms.

12    VanderMay's explanation is ECF No. 44 and was filed under seal. Judge Rice unsealed the

13    document in 2018.

14    56.    The narrative includes "APMC, Inc." in the role previously claimed by Guardaley

15    (or U.S. Copyright Group) in the Perino and Achache declarations: the company hired by the rights

16    holder, or the right holder's sales agent, who in turn hired the investigator company, who in turn

17    hired the declarant, who used software of a third party, to conduct an investigation.

18    57.    Ms. VanderMay's explanation in response to Judge Rice's Order is ECF No. 44:

19    Pursuant to this arrangement, Vision Films, Inc. retained APMC, Inc. to arrange for
anti-internet piracy services for various rights holders, including Elf-Man LLC.

20    Transmitted herewith is a copy of an agreement between Vision Films, Inc. and
AMPC, Inc. which was executed in April, 2012. As you will see, Schedule A to this

21    Agreement lists titles other than *Elf-Man.* I am awaiting further confirmation on this
point, but it is my understanding that the September, 2012 Schedule A was intended

22    as a substitute for the Schedule A to the April 2012 Agreement and that no new
agreement was executed in conjunction with the revised Schedule A.

23

24
DECLARATION OF J. CHRISTOPHER LYNCH - 15

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

As I understand it, the parties to the April 2012 agreement have abandoned the financial terms of their arrangement with respect to Elf-Man in various jurisdictions, including but not limited to the state of Washington. The April 2012 agreement was provided to me with certain terms redacted from Schedule B. In light of the parties' agreement to abandon this arrangement with respect to anti-piracy in this jurisdiction, I do not believe that this is an issue of consequence.

APMC, Inc. acting on behalf of Vision Films, Inc. and Elf-Man LLC, retained Crystal Bay, Inc. [SIC] to conduct the subject investigation. As I have previously explained, there is no agreement which memorializes this arrangement with Crystal Bay, Inc. [SIC] No financial terms were agreed to in connection with this investigation because this was considered to be a test case. The investigators were directed to capture IP addresses and record network traffic between the infringers computer and the source computer.

With respect to Messrs Patzer and Macek, Mr. Patzer is an outside consultant who acted as the network architect and who designed the system employed by Crystal Bay, Inc. [SIC] to conduct the subject investigation. Mr. Patzer is responsible for ongoing maintenance of the network infrastructure.

Mr. Macek was working for Crystal Bay Inc. [SIC] in conducting the subject investigation.

58.    Mr. Lowe was aware of this explanation as counsel to *Elf-Man* and because I raised it with him during case no. 13-cv-395.

### 5.    *Canal Street Films, LLC*: William Gorfein at IP Squared

59.    Mr. Lowe's law firm filed two cases for *Canal Street Films*, W.D. WA case no. 13-cv-7, and E.D. WA case no. 13-cv-3001. The E.D. WA case was assigned to Judge Edward Shea. The W.D. WA case was assigned to Judge Robert S. Lasnik, along with the 48 other BitTorrent cases filed in W.D. WA from December 12, 2012 to March 28, 2013 by attorneys Richard Symmes and Maureen VanderMay.

60.    Mr. Lowe used declarations of William Gorfein in these *Canal Street Films* cases. Mr. Gorfein's declarations use copied paragraphs from Mr. Perino and Mr. Achache, but Mr. Gorfein claims to work for "IP Squared" "in its technical department":

DECLARATION OF J. CHRISTOPHER LYNCH - 16

1        I have been retained as a software consultant by IP Squared Technologies ('IP Squared'), a company incorporated in Delaware and organized and existing under the laws of the United States, in its technical department. IP Squared is in the business of providing forensic investigative services to copyright owners.

(W.D. WA, case no. 13-cv-7, Dkt. #5-1 at ¶ 2.)

The Internet is a vast collection of interconnected computers and computer networks that communicate with each other.

(*Id.* at ¶ 3, the "*vast collection paragraph.*")

61.    But during this same time frame, William Gorfein was filing declarations claiming a relationship with Crystal Bay Corporation. For example, *R&D Film 1, LLC v Does 1-33*, ED MO, case no. 4:12-cv-1741, ECF No. 4:

I have been retained as a software consultant by Crystal Bay Corporation ('CBS') [SIC], a company incorporated in South Dakota and organized and existing under the laws of the United States, in its technical department. CBS is in the business of providing forensic investigation services to copyright owners.

(*Id.* at ¶ 2)

The Internet is a cast collection of interconnected computers and computer networks that communicate with each other.

(*Id.* at ¶ 3, the "*vast collection paragraph*")

62.    The typed charts of alleged infringement of the W.D. WA William Gorfein declaration claims observations from September 15, 2012 to December 26, 2012 while purportedly working for "IP Squared." Dkt. # 1-1. This time period overlaps with the time period of July 17, 2012 to September 18, 2012 which is the time frame of observations allegedly made by William Gorfein while purportedly working for "Crystal Bay Corporation" as stated in the Declaration of William Gorfein filed in *Battle Force* in ND IL, case no. 12-cv-7818, ECF Nos. 1-1, 8-1.

63.    There is also a direct connection between Mr. Gorfein and "Darren M. Griffin" in this district. *R&D Film* filed declarations of both William Gorfein and "Darren M. Griffin" in N.D. IL. For example, N.D. IL, case no. 12-cv-5610, ECF No. 9-1 is William Gorfein claiming to work for

DECLARATION OF J. CHRISTOPHER LYNCH - 17

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

1   Crystal Bay Corporation. N.D. IL, case no. 12-9036, ECF No. 7-1 is "Darren M. Griffin" claiming

2   to work for Crystal Bay Corporation. That same *R&D Film* filed eight cases in W.D. WA (cited,

3   *infra*, e.g. W.D. WA, case no. 13-cv-50, Dkt. #4) including declarations of "Darren M. Griffin"

4   claiming to work for Crystal Bay Corporation.

5        64.    In *Canal Street Films*, both Judge Shea and Judge Lasnik asked for supplemental

6   declarations. In both cases, Mr. Lowe filed second declarations of "William Gorfein" in May 2013.

7   The signature of William Gorfein in each second declaration (E.D. WA case no. 13-cv-3001, ECF

8   No. 16-2 at 8; W.D. WA case no. 13-cv-007, Dkt. #19-2) is obviously different than the original

9   signatures used to start those cases (E.D. WA case no. 13-cv-3001, ECF No. 6-1; W.D. WA, case

10   no. 13-cv-007, Dkt. #5-1). Plus, each "new" William Gorfein signature also appears to be a

11   photocopy of the other, as does each "old" William Gorfein signature.

12   E.D. WA 13-cv-3001 (ECF No. 6-1):    E.D. WA 13-cv-3001 (ECF No. 16-2 at 8):

13

14   William M. Gorfein          William M. Gorfein

15   W.D. WA 13-cv-007 (Dkt. # 5-1):    W.D. WA 13-cv-007 (Dkt. #19-2):

16

17   William M. Gorfein          William M. Gorfein

18        65.    It appears that many of the Declarations of William Gorfein, whether working for IP

19   Squared or Crystal Bay Corporation includes photocopied signatures, including those filed in this

20   District.

21   *Battle Force*, N.D. IL 1:12-cv-7818 (ECF No. 8-1):

22   By: William Gorfein

23

24

DECLARATION OF J. CHRISTOPHER LYNCH - 18

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

*Dragon Quest*, N.D. IL 1:12-cv-7812 (ECF No. 8-1):

By: *Will Gorfein*
       William Gorfein

*TriCoast Smitty*, N.D. IL 1:12-cv-6386 (ECF No. 9-1):

By: *Will Gorfein*
       William Gorfein

*R&D Film No. 1*, E.D. IL 1:12-cv-5810 (ECF No. 9-1):

By: *Will Gorfein*
       William Gorfein

**F.    Mr. Lowe's representations about "Darren M. Griffin" do not align with the apparent facts.**

66.    Mr. Lowe makes representations about "Darren M. Griffin" that are almost certainly untrue, as the ECF record shows.

**1.    Mr. Lowe tells this District that "Darren M. Griffin" exists.**

67.    Mr. Lowe's declaration includes two paragraphs about Crystal Bay Corporation and "Darren M. Griffin":

> I understand that Mr. Griffin is an individual who worked briefly for Crystal Bay Corporation in the 2012-2013 to verify infringement detection data licensed from Excipio. As explained in the Supplemental Declaration of Ben Perino, Excipio is a company to which parts of the GuardaLey infringement detection system were outsourced in the 2012-2015 time period (see ¶ 16), and which in turn licensed the technology to others, believed to have included Crystal Bay. I have no personal knowledge about Crystal Bay, and never worked with that entity. The only information I can glean from that entity is obtained from the South Dakota Secretary of State website, attached as Exhibit A, which indicates that the entity was formed in March 2012 and ceased existence in or around March 2015.

(Dkt. # 38 at ¶ 7.)

> Mr. Griffin apparently verified infringement detection data and submitted a number of declarations in various jurisdictions confirming the data, similar to what has been done in these cases by Mr. Arheidt. But I have never met or worked with Mr.

DECLARATION OF J. CHRISTOPHER LYNCH - 19

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

Griffin and, to the best of my knowledge and investigation, have never submitted a declaration from him in any case in this jurisdiction.

(Dkt. #38 at ¶ 8.)

**2.    Mr. Lowe told E.D. WA that "Darren M. Griffin" exists.**

68.    In *Elf-Man v. Lamberson*, E.D. WA case no. 13-395, Mr. Lowe also addressed the purported existence of "Darren M. Griffin":

> Though much is made of Darrin [SIC] Griffin, a former investigator for Crystal Bay Corporation, there is no Darrin [SIC] Griffin in this case. To the best of Plaintiff's knowledge this former investigator has never been before this Court or relied on my any Party in this District.

*(Id.* at ECF No. 105 at 3.)

Mr. Lowe also claimed:

> There is no evidence that Griffin is a 'fake person,' or that Crystal Bay Corporation is a 'fake company.' There is only Lynch's wild speculation and Plaintiff has no obligation to respond to such wild and purely inflammatory allegations, let alone prove a negative.

*(Id.* at 4.)

Mr. Lowe also claimed:

> Lynch has no evidence that Griffin is not a real person that worked for duly incorporated Crystal Bay Corporation, or that he then ceased his work for that company. Lynch has no basis for any testimony regarding Crystal Bay Corporation, or that Mr. Macek, who did testify in this case as a consultant for Crystal Bay Corporation, does not also provide consulting for other entities such a MaverickEye UG.

*(Id.)*

Mr. Lowe also claimed:

> Exhibit A to the Lynch Declarations consists entirely of declarations of Darren M. Griffin, a former investigator for Bit Torrent plaintiffs in other cases from other jurisdictions. There is nothing to tie these declarations to this case. Though much is made of Darrin [SIC] Griffin, a former investigator for Crystal Bay Corporation, there is no Darrin [SIC] Griffin in this case. To the best of plaintiff's knowledge, this former investigator has never been before this court, or been relied on by any party to this or related cases in this District. Nothing related to Darrin [SIC] Griffin

DECLARATION OF J. CHRISTOPHER LYNCH - 20

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

can be said to be relevant to this matter, and the exhibit should be stricken in its entirety.

*(Id.* at 8.)

3. **Mr. Lowe incorrectly claims that no declarations of "Darren M. Griffin" have been filed in this District. Scores of them have been filed in W.D. WA.**

69.    Mr. Lowe made similar representations intimating the existence of "Darren M. Griffin" in this District in *Criminal Production v. Does,* case no. 2:16-cv-1351. A *pro se* defendant brought a Motion to dismiss citing "Darren M. Griffin" and "his" direct connection to Mr. Arheidt. In opposition, Mr. Lowe represented:

> Likewise, references to a 'Darrin [SIC] Griffin' or a 'Crystal Bay Corporation' are irrelevant to this case. To the best of Plaintiff's knowledge, the former is a former investigator for the latter, but which has never been before this Court or been relied on by any party in this District.

(Dkt. #53 at ¶ 4, n.2.)

70.    But, declarations of "Darren M. Griffin" claiming to "have a degree in computer science" "retained as a software consultant" "by Crystal Bay Corporation" "in its technical department" have been filed in 41 different cases in this District.

71.    Declarations of "Darren M. Griffin" were filed in W.D. WA by *R&D Film* (8 cases: 13-cv-50, 13-cv-51, 13-cv-52, 13-cv-53, 13-cv-54, 13-cv-55, 13-cv-56, 13-cv-57); *Flypaper Distribution* (1 case: 13-cv-63); *Private Lenders Group* (1 case: 13-cv-194); *D3 Productions* (1 case: 13-cv-228); *Riding Films* (7 cases: 13-cv-255, 13-cv-256, 13-cv-277, 13-cv-278, 13-cv-287, 13-cv-288, 13-cv-289); *Zembezia Film* (12 cases: 13-cv-307, 13-cv-308, 13-cv-310, 13-cv-311, 13-cv-312, 13-cv-313, 13-cv-314, 13-cv-315, 13-cv-316, 13-cv-317, 31-cv-318, 13-cv-319); *Ledge Distribution* (3 cases: 13-cv-328, 13-cv-329, 13-cv-330); *Voltage Pictures* (8 cases: 13-cv-455, 13-cv-456, 13-cv-457, 13-cv-458, 13-cv-459, 13-cv-460, 13-cv-461, 13-cv-462).

DECLARATION OF J. CHRISTOPHER LYNCH - 21

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

72.    Each declaration of "Darren M. Griffin" filed in W.D. WA is executed with only the initials "DG". Each declaration cited here by me of "Darren M. Griffin" from other Districts is also executed only with the initials "DG". Each declaration of "Darren M. Griffin" that I have seen, but which are not cited here, are also executed only with the initials "DG".

**4.    "Darren M. Griffin" is likely fictitious.**

73.    As I have explained in *Elf-Man v. Lamberson,* E.D. WA case no. 13-395, ECF No. 120 at 5-7, after thorough investigation, I have concluded that "Darren M. Griffin" is fictitious. There is no such person. There is no technical department at Crystal Bay Corporation. 110 E. Center St. Suite 2053 in Madison, South Dakota is a mailbox center. Mr. Gorfein did not work there or for it. Mr. Macek did not work there or for it. "Darren M. Griffin" certainly did not work there or for it.

74.    Venice PI's submission in response to the present Order to Show Cause confirms my certitude that "Darren M. Griffin" is fictitious. Declarants Benjamin Perino and Daniel Arheidt claim to have met Tobias Fiser, Michael Patzer, and Daniel Macek. No one claims to have met or spoken with Daniel Susac, yet his identification was produced for counsel. No one claims to have met or spoken with "Darren M. Griffin," and his identification has not been seen. No employment records, no tax records, no payment records, no immigration records, no address, no family members, no computer science classmates, no photographs, no correspondence, no voice mails, no emails.

75.    "Crystal Bay Corporation" is not explained other than Dkt. #38-1, a printout from the South Dakota Secretary of State showing its incorporation in 2012. (Note that page 7 shows the "President" as "Peter Kurtz" with an address of 110 E. Center Street, Suite 2053, Madison, South Dakota 57042. I am suspicious that "Peter Kurtz" is likewise fictitious, and in any event not the President of Crystal Bay Corporation, but that is not the subject of this declaration. There was an attorney Nicholas Kurtz who was a defendant along with Guardaley in the *Shikorov* case.)

DECLARATION OF J. CHRISTOPHER LYNCH - 22

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

76.    If there ever were a time for presentation of identification and a declaration of "Darren M. Griffin," it would have been in response to the Order to Show Cause in this case, but that did not happen. An explanation was provided, but the explanation cannot be true. "Darren M. Griffin" with a "degree in computer science" who was "retained as a software consultant by Crystal Bay Corporation" "of South Dakota" "in its technical department" does not exist.

77.    "Darren M. Griffin" filed over 500 declarations in United States District Courts, including over 50 declarations filed in this District, all claiming to be employed by or a consultant to Crystal Bay Corporation.

78.    I have logged the plaintiffs, districts, case numbers, and filing of as many "Darren M. Griffin" declarations as I could locate using my PACER search techniques (which do not allow searches by named declarant). I can provide this data to the Court if requested.

**5.    Use of "Darren M. Griffin" declarations with Judge Lasnik**

79.    Forty-nine Bit Torrent lawsuits were filed in this District between December 12, 2012 and March 28, 2013. All were assigned to Judge Lasnik. Mr. Lowe filed one of the cases, *Canal Street Films v. Does*, case no. 13-cv-007, discussed above. Seattle attorney Richard J. Symmes filed forty-six cases, identified above. Salem, Oregon attorney Maureen C. VanderMay filed two cases, *Elf-Man LLC*, case no. 13-cv-507, and *Thompson Film LLC*, case no. 13-cv-560.

80.    All three counsel moved for Orders allowing subpoenas. Ms. VanderMay used no declarations with her requests. Mr. Lowe used the declaration of William Gorfein. Mr. Symmes did not submit a declaration in a few of his forty-six cases, but the majority of them include a filed declaration of "Darren M. Griffin."

81.    For example, *R & D Film 1, LLC v. Does 1-46*, W.D. WA case no. 13-50, Dkt. #4-1:

My name is Darren M. Griffin. I am over the age of 18 and otherwise competent to make this declaration. This declaration is based on my personal knowledge and if

DECLARATION OF J. CHRISTOPHER LYNCH - 23

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

1   called upon do to so, I will testify that the facts stated herein are true and accurate. I
    am I am [SIC] a software consultant with nine years experience working in the field.
2   I have a degree in computer science. (paragraph 1.)

3       82.     This is a variation on Mr. Achache's *"ten years experience paragraph"* (although Mr.

4   Achache did not claim a "degree in computer science"). These W.D. WA declarations of "Darren M.

5   Griffin" also use Mr. Perino's *"vast connection paragraph"* (paragraph 3).

6       83.     After granting Subpoenas in each case, Judge Lasnik *sua sponte* issued an Order in

7   May 2013, terminating the Subpoenas in all cases. Each of the three counsel were required to respond

8   to an Order to Show Cause regarding Judge Lasnik's concerns about litigation abuse. *See*, case no.

9   13-cv-50, Dkt. #9.

10      84.     Ms. VanderMay submitted a response that is under seal. case no. 13-507, Dkt. #25.

11      85.     Mr. Lowe submitted a second declaration of "William Gorfein." Dkt. #19-2, as

12  described above with the "new" signature.

13      86.     Mr. Symmes filed a second declaration of "Darren M. Griffin" in all of his cases:

14  *R&D Film Company* (e.g. case no. 13-cv-50 first "Griffin" is Dkt. #4-1, second "Griffin" is Dkt.

15  #12-8); *Flypaper Distribution* (case no. 13-cv-63 first "Griffin" is Dkt. #4-2 (unsigned), second

16  "Griffin" is Dkt. #11-26); *Private Lenders Group* (case no. 13-cv-194 first "Griffin" is Dkt. #4-1,

17  second "Griffin" is Dkt. #13-2); *D3 Productions* (case no. 13-cv-228 first "Griffin" is Dkt. #3-1,

18  second "Griffin" is Dkt. #-3); *Riding Films* (e.g. case no. 13-cv-277 first "Griffin" is Dkt. #4-1,

19  second "Griffin" is Dkt. #13-6); *Zembezia Film* (e.g. case no. 13-cv-308 first "Griffin" is Dkt. #4-

20  1, second "Griffin" is Dkt. #35-6; *Ledge Distribution* (e.g. case no. 13-cv-328 first "Griffin" is Dkt.

21  #4-1, second "Griffin" is Dkt. #12-6); *Voltage Pictures* (e.g. case no. 13-cv-457 first "Griffin" is

22  Dkt. #4-1, second "Griffin" is Dkt. #13-4).

23

24

DECLARATION OF J. CHRISTOPHER LYNCH - 24

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

6. **"Darren M. Griffin" declarations in other Districts.**

87.   "Darren M. Griffin" signed declarations by initials "DG" in every District. In most Districts, "Darren M. Griffin" claimed to be "retained as a software consultant to Crystal Bay Corporation," but that differs in some Districts. For example:

88.   In *Bait Productions v. Doe,* M.D. FL, case no. 8:13-171, ECF No. 13-2, "Darren M. Griffin" uses the "*credible processes paragraph,*" the "*ten years experience paragraph*" and adds "I work for Crystal Bay Corporation . . .."

89.   In *Killer Joe Nevada v. Does 1-18,* D. DE, case no. 1:13-677, ECF No. 6-1, "Darren M. Griffin" uses the "*vast collection paragraph,*" and claims:

> I am a data supply expert with the firm Crystal Bay Corporation CBC, located at 110 E. Center Sr, STE 2053, Madison 57042 [SIC] South Dakota." (paragraph 1.)

90.   Also, there are other Districts in addition to W.D. WA where a second declaration of "Darren M. Griffin" was used in response to a judicial order for more information. e.g *R & D Film 1, LLC,* N.D. IL, case no. 1:12-cv-9043, ECF No. 11 is a "Supplemental Declaration of Darren M. Griffin."

91.   The use of fictitious declarant "Darren M. Griffin" is directly connected and related to the other declarants used in the non-pornography cases: Mr. Perino, Mr. Achache, Mr. Gorfein, Mr. Macek, Mr. Arheidt.

7. **"Darren M. Griffin" is connected to each of the non-pornography declarants.**

92.   Fictitious declarant "Darren M. Griffin" is literally connected to the other declarants in Mr. Lowe's cases. It can be shown (i) that the times of alleged observations by those declarants literally overlap among declarants and their purported employers, and (ii) that the declaration language of "Darren M. Griffin" overlaps among declarants and their purported employers.

DECLARATION OF J. CHRISTOPHER LYNCH - 25

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

      a.     **Observation overlap among declarants and companies.**

93. The claimed "observations" overlap for each witness and company in this progression: (i) Arheidt at MaverickEye observations overlap with observations claimed to have been made by Macek at MaverickEye, which (ii) overlap with observations claimed to have been made by Macek at Crystal Bay Corporation, which (iii) overlap with observations claimed to have been made by "Darren M. Griffin" at Crystal Bay Corporation, which (iv) overlap with observations made by William Gorfein at Crystal Bay Corporation. All of this can be seen from the PACER records.

94. Here are the "observation" overlaps:

95. "Arheidt at MaverickEye": Mr. Arheidt submitted a declaration in this District for *London Has Fallen*, case no. 16-cv-1015, Dkt. #6, claiming observations for MaverickEye from June 4, 2015 through June 25, 2015, Dkt. #1-1.

96. "Macek at MaverickEye" overlaps with "Arheidt at MaverieckEye": Mr. Macek had submitted a declaration in this District for *London Has Fallen*, case no. 16-cv-865, Dkt. #6, claiming observations for MaverickEye from May 14, 2015 through June 6, 2015, Dkt. #1-1, overlapping with Mr. Arheidt's observations.

97. "Macek at Crystal Bay Corporation" overlaps with "Macek at MaverickEye": Mr. Macek submitted a declaration in this District for *Cobbler Nevada*, case no. 15-cv-1404, Dkt. #6, claiming observations for MaverickEye from March 14 through April 16, 2015. Dkt. #1-1. Mr. Macek submitted a declaration in this District for *Dallas Buyers Club*, case no. 15-cv-582, Dkt. #6, claiming observations for Crystal Bay Corporation from December 20, 2014 through April 3, 2015, Dkt. #1-1, overlapping with his claimed observations for MaverickEye in the *Cobbler Nevada* case.

DECLARATION OF J. CHRISTOPHER LYNCH - 26

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

98.     "Macek at Crystal Bay Corporation" overlaps with "'Darren M. Griffin' at Crystal

Bay Corporation": Mr. Macek submitted a declaration in D. CO for *TCYK, Inc.*, case no. 1:13-cv-

2950, ECF No. 7-1, claiming observations for *TCYK* from September 27, 2013 through October 6,

2013, ECF No. 1-1. "Darren M. Griffin" submitted a declaration in D. CO for *TCYK, Inc.*, case no.

1:13-cv-3496, claiming observations from September 27, 2013 to November 20, 2013, ECF No. 1-

1, overlapping with Mr. Macek's claimed observations for Crystal Bay Corporation.

99.     Aside as to timing: This D. CO declaration of "Darren M. Griffin" overlapping Mr.

Macek's was filed October 29, 2013. Mr. Macek's was filed December 28, 2013. I previously

testified in *Elf-Man v. Lamberson*, E.D. WA, case no. 13-cv-395 (e.g. ECF No. 120 atf 5-7) that

during October to December 2013, I inquired of Ms. VanderMay whether "Darren M. Griffin"

would be disclosed as a witness pursuant to Fed. R. Civ. P. 26, since declarations of "Darren M.

Griffin" had been filed for *Elf-Man* in other U.S. District Courts with times overlapping the time

alleged for my client, Mr. Lamberson. At our Rule 26(f) meeting of counsel in December, 2013,

Ms. VanderMay could not identify her witness. In the 26(a) initial disclosures served in January,

2014, "Darren M. Griffin" was not disclosed, but Daniel Macek and Michael Patzer were. "Darren

M. Griffin" filed over 500 declarations starting in November 2012, but they ended in December

2013 with the switch to Mr. Macek as declarant for Crystal Bay Corporation. (End aside.)

100.    "'Darren M. Griffin' at Crystal Bay Corporation" overlaps with "William Gorfein at

Crystal Bay Corporation": "Darren M. Griffin" submitted a declaration in N.D. IL for *R & D Film*

*No. 1*, case no. 12-9036, ECF No. 7-1 claiming observations for Crystal Bay Corporation from July

3, 2012 through September 17, 2012. William Gorfein submitted a declaration in N.D. IL for *Battle*

*Force*, case no. 12-7828, ECF No. 7-1 claiming observations for Crystal Bay Corporation from

DECLARATION OF J. CHRISTOPHER LYNCH - 27

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

1   July 31, 2012 to August 28, 2012, ECF No. 1-1, overlapping with "Darren M. Griffin's" alleged

2   observations for Crystal Bay Corporation.

3        101.   "William Gorfein at Crystal Bay Corporation" overlaps with "William Gorfein at IP

4   Squared": William Gorfein submitted a declaration in this District for *Canal Street Films* claiming

5   observations for IP Squared from September 12, 2012 through December 11, 2012, Dkt. #1-1,

6   overlapping with Mr. Gorfein's alleged observations for Crystal Bay Corporation in N.D. IL for *R*

7   *& D Film No. 1*, case no. 12-9036, ECF No. 7-1, claiming observations from July 3, 2012 through

8   September 17, 2012, ECF No. 1-1.

9        102.   To me, these overlaps show (i) that the declarants are not making observations, and

10   (ii) the data is not being collected by differing entities.

11        103.   Plus, there are timing anomalies in addition to timing overlaps. For example, Mr.

12   Arheidt testified in this District in *Criminal Production v. Does,* W.D. WA, case no. 2:16-cv-1016,

13   Dkt. #1-1 and Dkt. #6, that he made observations for MaverickEye from June 25 through June 27,

14   2016. But in *Criminal Productions v. Does*, D. CO, case no. 1:16-cv-1761, Mr. Macek testifies that

15   he made the observations for MaverickEye from June 25 through June 28, 2016. ECF Nos. 1-3 and

16   4-1. So those overlap, but note that Mr. Macek's declaration was signed June 14 (maybe June 16),

17   2016 – BEFORE the alleged observations took place.

18        104.   I discovered four D. CO cases for *Criminal Productions* where a "Macek at

19   MaverickEye" case was filed where the declaration was signed before the claimed observations

20   were made. In those four cases, the signatures all appear to be photocopies and all four pre-date the

21   alleged observations. Here are copies of the signatures to examine:

22

23

24

DECLARATION OF J. CHRISTOPHER LYNCH - 28

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

D. CO 16-cv-01761 (ECF # 4-1) (covering dates June 25-28)

Executed on this.{{ day of _____, 2016.

By: _____
    Daniel Macek

D. CO 16-cv-01802 (ECF # 4-1) (covering dates June 23-24)

Executed on this.{{ day of _____, 2016.

By: _____
    Daniel Macek

D. CO 16-cv-01813 (ECF # 4-1) (covering dates June 1-23)

Executed on this.{{ day of _____, 2016.

By: _____
    Daniel Macek

D. CO 16-cv-01836 (ECF # 4-1) (covering dates June 4-18)

Executed on this.{{ day of _____, 2016.

By: _____
    Daniel Macek

105.    The copied declaration language also shows overlap between "Darren M. Griffin"

and the other non-pornography declarants, Messrs. Perino, Achache, Arheidt, Gorfein and Macek.

           b.      **Testimonial language overlap among declarants and companies.**

106.    The declarants from 2012 to the present (e.g. Mr. Arheidt, Mr. Macek, "Darren M.

Griffin," and Mr. Gorfein) all use copied paragraphs from Mr. Perino's and/or Mr. Achache's 2010-

2012 declarations, including (i) the *"ten years experience paragraph,"* (ii) the *"credible techniques*

*paragraph,"* and (iii) the *"vast collection paragraph,"* among other commonalities. These overlaps

occur, regardless which investigator company the declarant claims a relationship.

DECLARATION OF J. CHRISTOPHER LYNCH - 29

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

1   107.   For example, each of the declarant/investigator combinations used Mr. Perino's

2   *"vast collection paragraph"*: (i) William Gorfein for IP Squared, *Canal Street Films, v. Does 1-*

3   *104*, W.D. WA, case no. 2:13-cv-7, Dkt. #5-1, ¶ 3; (ii) William Gorfein for Crystal Bay Corporation,

4   *R&D Film 1, LLC v Does 1-cv-33*, E.D. MO, case no. 4:12-cv-1741, ECF No. 4, ¶ 3; (iii) "Darren

5   M. Griffin" for Crystal Bay Corporation, *R & D Film 1, LLC v. Does 1-46,* W.D. WA, case no. 13-

6   cv-50, Dkt. #4-1, ¶ 3; (iv) Daniel Macek for Crystal Bay Corporation, *Dallas Buyers Club v. Does*

7   *1-10,* W.D. WA, case no. 2:13-cv-1153, Dkt. #5, ¶ 3; (v) Daniel Macek for MaverickEye, *Cobbler*

8   *Nevada v. Does 1-10,* W.D. WA, case no. 2:15-cv-1404, Dkt. #6, ¶ 3; (vi) Daniel Arheidt for

9   MaverickEye, *Venice PI, LLC v. Does,* W.D. WA, case no. 2:17-cv-988, Dkt. #6, ¶ 3.

10          c.     **Mr. Arheidt's declaration is directly derived from "Darren M. Griffin"**

11                 **and the other Guardaley declarants.**

12   108.   The current declaration of Mr. Arheidt used in W.D. WA is nearly identical to

13   declarations of Mr. Macek used in W.D. WA, both for MaverickEye and for Crystal Bay

14   Corporation, as cited from the cases cited above. That original Macek declaration from *Dallas*

15   *Buyers Club* (i.e. the current Arheidt declaration) is literally an amalgamation of the declaration of

16   William Gorfein filed in W.D. WA by Mr. Lowe, case no. 13-cv-7, Dkt. #5-1, and the declarations

17   of "Darren M. Griffin" filed in W.D. WA by Mr. Symmes, e.g. case no. 13-cv-50, Dkt. #4-1.

18   109.   Mr. Macek's declaration in *Dallas Buyers Club* 2:14-cv-1153, Dkt. #5 is nearly

19   identical to Mr. Gorfein's declaration in *Canal Street Films* W.D. WA, case no. 13-7, Dkt. #6-1.

20   Changes are seen in Mr. Macek's paragraphs 5, 8, 9, 11, 14, 15, 16, and 19, some are slight, some

21   are entirely new. All 12 of the other paragraphs are identical or nearly identical to Mr. Gorfein's

22   declaration, other than changed names, including "Crystal Bay Corporation" for "IP Squared."

23

24

DECLARATION OF J. CHRISTOPHER LYNCH - 30

LEE & HAYES, PLLC
601 West Riverside Ave., Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256 Fax: (509) 323-8979

1      110.    Comparing "Darren M. Griffin" W.D. WA case no. 2:13-cv-50, Dkt. #4-1, to Mr.

2  Macek, 2:14-cv-1153, paragraphs 1-5 of Macek are paragraphs 1-4 of the "Griffin" declaration.

3  Paragraphs 7-8 of Macek are paragraphs 8-9 of the "Griffin" declaration. Paragraphs 10-12 of

4  Macek are paragraphs 13-15 of the "Griffin" declaration. Paragraph 13 of Macek is paragraph 18

5  of "Griffin." Paragraph 15 of Macek is paragraph 24 of "Griffin."

6      111.    The current Arheidt is identical to this *Dallas Buyers Club* "Macek at Crystal Bay

7  Corporation" declaration: 21 paragraphs, with the company names changed and the role changed

8  from "software consultant" to "consultant." E.g. case no. 17-cv-988, Dkt. #6.

9      **8.**     **The typed up charts of alleged infringement cannot be direct output of a**

10             **computer program.**

11      112.    The witnesses overlap in testimony and times of observations, but, surprisingly, the

12  format of the "typed up charts of alleged infringement" submitted with each case do not. The typed

13  up charts of alleged infringement appear to vary by plaintiff's attorney, not by plaintiff, and not by

14  witness or by investigative company.

15      113.    For example, the charts accompanying the W.D. WA "Macek at Crystal Bay" *Dallas*

16  *Buyers Club* cases cited above all have a chart arranged in the same manner. e.g. case no. 2:14-cv-

17  1153, Dkt. #1-1. This same chart format is used in the W.D. WA "Macek at MaverickEye" *Cobbler*

18  *Nevada* cases. e.g. case no. 2:15-cv-404, Dkt. #1-1. This same format is used in the W.D. WA

19  "Arheidt at MacerickEye" *Venice PI* cases. E.g. case no. 17-cv-988, Dkt. #1-1.

20      114.    But, other typed up charts for those same plaintiffs, using those same declarants, are

21  different in different Districts. Use *Dallas Buyers Club* as an example. In D CO, *Dallas Buyers Club*

22  filed both "Macek at Crystal Bay" and "Macek at MaverickEye" declarations. But the typed up

23  charts of alleged infringement accompanying both forms of those D. CO declarations differs from

24

DECLARATION OF J. CHRISTOPHER LYNCH - 31

1   that filed in the W.D. WA. Indeed, the typed up charts of alleged infringement for *Dallas Buyers*

2   *Club* differ in each District, even if the declarant remained the same. A logical conclusion from this

3   is that the typed up charts of alleged infringement filed in each case are not direct output of the

4   computer software that is referenced in each Motion to obtain Subpoenas.

5       115.   Here are some of the *Dallas Buyers Club* jurisdictions, each with a different form of

6   typed up chart of alleged infringement: (i) E.D. WI, 2:14-cv-359, ECF No. 1-1; (ii) N.D. CA, 3:16-

7   cv-2939, ECF No. 1-1; (iii) N.D. IL, 1:15-cv-1770, ECF No. 1-1; (iv) D. CO, 1:14-cv-1945; (v)

8   S.D. TX, 4:14-cv-248; (vi) D. OR 3:15-cv-2020; (vii) S.D. OH, 2:14-cv-389; (viii) M.D. FL 6:14-

9   cv-1012; (ix) W.D. WA 2:15-579, Dkt. #1-1.

10   **G.   Conclusion**

11       116.   I am confident that "Darren M. Griffin" is fictitious. I am confident that "Crystal Bay

12   Corporation" of South Dakota did not employ investigators. I am confident that the declarations of

13   Mr. Lowe, Mr. Perino, and Mr. Arheidt are inconsistent with records of the United States District

14   Court, as I detail here. I would be willing to provide more information to the Court as may be

15   requested.

16       I declare under penalty of perjury of the laws of the United States that the foregoing is true

17   and correct.

18       EXECUTED this 23rd day of February 2018.

19

20   By: _____

    J. Christopher Lynch, WSBA #17462

21       Lee & Hayes, PLLC

    601 W. Riverside Ave., Ste. 1400

22       Spokane, WA 99201

    Telephone: (509) 944-4792

23       Fax: (509) 323-8979

    Email: chris@leehayes.com

24

DECLARATION OF J. CHRISTOPHER LYNCH - 32

**EXHBIT 2**

**DEPARTMENT OF PUBLIC SAFETY**

DIVISION OF POLICE



**CURTIS CAID**
CHIEF OF POLICE

**DENNIS K. WRIGHT**
MAYOR

15050 FARMINGTON ROAD
LIVONIA, MICHIGAN 48154-5499
(734) 466-2470
FAX: (734) 261-2265

## FREEDOM OF INFORMATION ACT
## RESPONSE LETTER

Date: _5/12/2020_

Dear Requester,

Your request for information under P.A. 1976 No 442, known as the Michigan Freedom of
Information Act, has been:

☐   Granted, please find the information requested enclosed
☒   Partly granted and partly denied, please see Sections Two, Three, and Four.
☐   Denied, please see Sections Two, Three and Four
☐   Other, please see Section One

**In all correspondence, please refer to our file number**   _385.20_ .

### SECTION ONE

☐   From the nature of your inquiry, our organization is unable to determine with requisite
specificity the exact information you seek. Please re-submit your request in greater detail
so that we may provide you with the specific information you desire.
☐   It is hereby certified we are unable to locate the public record you requested under the
name and/or identification number submitted or by any other name reasonably known to
us.

Nancy Siegle
Keeper of the Records

FOIA # _385.20_

## SECTION TWO - REASONS FOR DENIAL

**Redaction(s)** have been made from the requested documents and/or entire documents withheld in order to protect records that are exempt. Under the authorization granted by Section 13 of the Michigan Freedom of Information Act (MCL 15.231. et seq.) exemption of the information was necessary based upon the section or sections checked below.

☐     MCL 15.232, Sec 2(e) Documents requested are not "Public records" as defined within the Act.

☒     MCL 15.243, Sec 13(1)(a) Information is of a personal nature and disclosure would constitute a clearly unwarranted invasion of an individual's privacy.

        ☐     The Livonia Police Department will neither confirm nor deny that any record exists. A signed notarized release from the individual is necessary when requesting a record check. (and/or Sec. 13.(1)(d)).

☒     MCL 15.243, Sec. 13(1)(b) Investigating records compiled for law enforcement purposes, but only to the extent that disclosure as a public record would do any of the following:

        ☐   (i)     Interfere with law enforcement proceedings.
        ☒   (ii)    Deprive a person of the right to a fair trial or impartial administrative adjudication.
        ☒   (iii)   Constitute an unwarranted invasion of personal privacy.
        ☐   (iv)   Disclose the identity of a confidential source or disclose information furnished only by a confidential source, or disclose information furnished only by a confidential source in the course of a criminal investigation.
        ☐   (v)    Disclose law enforcement investigative techniques or procedures
        ☐   (vi)   Endanger the life or physical safety of law enforcement personnel.

☐     MCL 15.243, Sec. 13(1)(c) Danger to physical security of penal or custodial institutions.

☒     MCL 15.243, Sec. 13(1)(d) Records or information specifically described and exempted from disclosure by statute. *LEIN–MCL 28.214(5)*

☐     MCL 15.243, Sec. 13(1)(e) Records or information relating to the performance of the duties of a public officer.

☐     MCL 15.243, Sec 13(1)(f) Release of information would reveal trade secret, confidential, commercial or financial information.

☐     MCL 15.243, Sec. 13(1)(g) Records subject to the attorney/client privilege. Work product rule.

☐     MCL 15.243, Sec. 13(1)(h) Records subject to the physician-patient privilege, psychologist-patient privilege or other privilege recognized by statute or court rule.

☐     MCL 15.243, Sec. 13(1)(m) Communications and notes within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials …

☐     MCL 15.243, Sec. 13(1)(n) Records of law enforcement communication codes, or plans for deployment of law enforcement personnel.

☐     MCL 15.243, Sec. 13(1)(s)(i) and (ii) Records that provide a means of identifying an informant or undercover agent.

☐     MCL 15.243, Sec. 13(1)(s) (iii) Records that would disclose the personal addresses or telephone #s of active or retired law enforcement officers.

☐     MCL 15.243, Sec. 13(1)(s) (v) and (vi) Records that would disclose operational instructions for law enforcement officers or agents or reveal the contents of staff manuals provided for law enforcement officers or agents.

FOIA # _385-20_

☐   MCL 15.243, Sec.(1)(s) (vii) Records that would endanger the life or safety of law enforcement officers or agents or their families;

☐   MCL 15.243, Sec.(1)(s)(ix)Records that would disclose personnel records of law enforcement agencies.

☐   MCL 15.243(1), Sec(1)(s)(x)Records that would identify residences that law enforcement agencies are requested to check in the absence of their owners or tenants,

☐   MCL 15.243, See 13(1)(v) Records or information relating to a civil action in which the requesting party and the public body are parties.

☐   MCL 15.243, Sec. 13(1)(w) Information or records that disclose the social security number of an individual.

☐   MCL 15.243, See 13(2) Release of information that would violate 20 USC 1232g.

## We have denied your request in part and/or have redacted from the record the following:

☐ Addresses   ☐ Phone numbers   ☒ Suspect/Defendant name & identifiers   ☒ LEIN
☐ Juvenile identifiers   ☐ Victim identifiers   ☐ PBT & Breathalyzer results   ☐ Medical
☐ Driver License number   ☒ Other: _STATEMENTS GIVEN TO OFFICERS_

## SECTION THREE – RIGHT TO APPEAL (ADMINISTRATIVE)

Under Section 5 of the Michigan Freedom of Information Act, a person receiving a denial of the information requested has the right to submit to the head of the public body a written appeal that specifically states the word "appeal" and identifies the reason(s) for the reversal of the disclosure denial.  Send your appeal to the Mayor of the City of Livonia 33000 Civic Center Dr.  Livonia, MI  48154 and please include on the front of the envelope "FOIA Appeal".

## SECTION FOUR – RIGHT TO SEEK JUDICIAL REVIEW

Under Section 10 of the Michigan Freedom of Information Act, a person receiving a written denial of the information requested has the right to bring a lawsuit in circuit court to compel disclosure of the public record.  If the court finds that the information withheld by a public body was not exempt from the disclosure, the party requesting such information may receive the requested records and at the discretion of the court, reasonable attorney fees, costs or an appropriate portion thereof.

For additional information regarding the Freedom of Information Act Procedures & Guidelines; visit *http://livoniapd.com/bureaus/central-records.*

FOIA # _385 - 2U_

CR No: 200012659

# LIVONIA PD
15050 FARMINGTON RD
LIVONIA MI 48154
734-466-2470



## Case Report

### Administrative Details:

| CR No. | Subject |
|---|---|
| **200012659** | **2102 - Extortion - Threat to Damage Property [21000]** |
| Report Date/Time | Occurrence Date/Time |
| **04/23/2020 19:00** | **04/23/2020 14:47** |
| Location | Call Source |
| **38380 ANN ARBOR TRL** | **FOP** |
| Dispatched Offense | Verified Offense |
| **2699 Fraud (Other)** | **2102 Extortion - Threat to Damage Property** |
| OIC | OIC Contact Number |
| **Koss, Cameron (LIKOSSC-00718)** | |
| County | City/Twp/Village |
| **82 - Wayne** | **96 - Livonia** |
| Division | Victim |
| **Patrol** | **LIQUID VPN (34305199)** |

### Action Requested:

| | |
|---|---|
| [ ] Arrest warrant | [ ] Review only |
| [ ] Search warrant | [ ] Forfeiture |
| [ ] Juvenile petition | [ ] Other |

CR No: 200012659

| Offenses: |
|---|

| **2102 - Extortion - Threat to Damage Property** |
|---|

| IBR Code / IBR Group | Offense File Class |
|---|---|
| 210 - Extortion/Blackmail / A | 21000 - EXTORTION |

| Crime Against | Location Type | Offense Completed |
|---|---|---|
| PR | 20 - Residence/Home | Completed |

| Domestic Violence | Hate/Bias |
|---|---|
| No | 00 - None (No Bias) |

| Using | Cargo Theft |
|---|---|
| A-Alcohol: No   C-Computer Equipment: No   D-Drugs/Narcotics: No | No |

| Weapons |
|---|
| 00 - None |

| People: |
|---|

| (S-SUSPECT)  [LIARPINOJ (02048)] |
|---|

| Last Name | First Name | Middle Name | Suffix | Mr/Mrs/Ms |
|---|---|---|---|---|
|  |  |  |  |  |

| Aliases | Driver License# | DL State | DL Country | Personal ID# |
|---|---|---|---|---|
|  |  |  |  |  |

| DOB (Age) | Sex | Race | Ethnicity | Birth City & State | Birth Country | Country of Citizenship |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

| Complexion | Build | Teeth | Height | Weight | Attire |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

| Street Address | Apt # | County | Country | Home Phone | Work Phone |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

| City | State | Zip | Cell Phone | Email |
|---|---|---|---|---|
|  |  |  |  |  |

| (V-VICTIM)  [LIARPINOJ (02048)] |
|---|

| Victim Type | Victim of |
|---|---|
| B - Business | 2102 - Extortion - Threat to Damage Property |

| PE: | W.Type: | Name | Suffix | Mr/Mrs/Ms |
|---|---|---|---|---|
|  |  | LIQUID VPN |  |  |

| DOB (Age) | Sex | Race | Ethnicity | Birth City & State | Birth Country | Country of Citizenship |
|---|---|---|---|---|---|---|
| NA | NA | NA | NA | NA | NA | NA |

| Notes |
|---|
| INTERNET BASED COMPANY - NO PHYSICAL ADDRESS |

| Victim Injury |
|---|

| MUSZYNSKI, CHARLES   (O-OTHER) (A-ACTUAL VICTIM'S REPRESENTATIVE)   [LIARPINOJ (02048)] |
|---|

| PE: | W.Type: | Last Name | First Name | Middle Name | Suffix | Mr/Mrs/Ms |
|---|---|---|---|---|---|---|
|  |  | MUSZYNSKI | CHARLES |  |  |  |

| DOB (Age) | Sex | Race | Ethnicity | Birth City & State | Birth Country | Country of Citizenship |
|---|---|---|---|---|---|---|
| 12/28/1964 (55) | M | UNKNOWN |  |  |  |  |

| Street Address | Apt # | County | Country | Home Phone | Work Phone |
|---|---|---|---|---|---|
| FIGTREE DR |  |  | NEVIS | UNKNOWN |  |

| City | State | Zip | Cell Phone | Email |
|---|---|---|---|---|
| JOHNS PARISH |  |  | 4074617732 |  |

| Property: |
|---|

| 1614 - Thumb Drive/USB - 5407  [LIARPINOJ (02048)] |
|---|

| Property Class | IBR Type | UCR Type |
|---|---|---|
| 07 | 07 - Computer Hardware/Software | F - TV's, Radios, Stereos, Etc... |

| Status | | | Count | Value |
|---|---|---|---|---|
|  |  |  |  |  |

Created On 05/12/2020 08:06 AM

CR No: 200012659

| S - Stolen/Etc. (Bribed/Defrauded/Embezzled/Ransomed/Etc.) | | 1 | 1 |
|---|---|---|---|
| Description | | Disposition | Evidence Tag |
| **USB DRIVE/DONGLE** | | | |
| Recovered Date/Time | Location | Owner | |
| | | [V34305199] | |

| Narrative: |
|---|

**CR No: 200012659-001   Written By: LIARPINOJ (02048)   Date: 04/23/2020 08:05 PM**

On 04/23/2020, I, Officer Arpino, received an Extortion report over the phone while working the LPD Patrol Desk.

Charles Muszynski called on behalf of Liquid VPN (no physical address) and stated that Liquid VPN contracted ▇▇▇▇▇▇▇▇▇▇ work in November 2019 for $6,000-8,000. ▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Each encrypted message sent across the network charges a crypto currency token. The USB contains 200,000 tokens, currently valued at $35,000, which Muszynski is unable to withdraw but can observe the value remotely. When ▇▇▇▇▇▇▇▇ Liquid VPN $30,000, instead of the original contracting price of $6,000-8,000, Muszynski disputed the claims. Muszynski said ▇▇▇ then sent an additional invoice for $23,175, for a total of $53,175, demanding to be paid in full within three days or else ● would destroy the USB and any additional Liquid VPN digital property that his company maintained. The demand was made on 04/23/2020, at 1447 hours, from the suspect's email ▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Muszynski forwarded all of the email conversations between himself ▇▇▇▇▇▇ which I have forwarded to the Detective Bureau. Liquid VPN would like to prosecute and Muszynski was given a report number. Muszynski was advised to file a report with the FBI.

The only connection with LPD is that the suspect lives in, and operates his business out of, the city of Livonia.

**CR No: 200012659-002   Written By: LIGELDHOFJ (00739)   ATTACHMENT ONLY REPORT - No Narrative**

**CR No: 200012659-003   Written By: LIKOSSC (00718)   Date: 04/24/2020 10:58 AM**

On 4/24/20 at 1000 hours, I, Detective Koss, was assigned this case.

CR No: 200012659

I reviewed the incident report prepared by PO Arpino.

I contacted the RP, Charles, and spoke to him about the case. Charles stated Liquid VPN is an internet based company that does not have a physical address. Charles stated his permanent residence is in the Country of Nevis which is a small island is the Carribbean. Charles stated he is the manager for Liquid VPN but it is owned by a Foreign LLC.

Liquid VPN contracted with SMR Hosting out of Livonia MI to complete a network job for them. ██████████████████████████████████████████████████. The job Liquid VPN hired ████████ to do was supposed to take 15 days and cost somewhere between $6,000 and $8,000. The job ████ hired to do was to create a network connection between Liquid VPN and Orchid Labs. ████████ was also provided with a "dongle" which is an electronic device that has a specific address in which cryptocurrency payments are made and stored. ████ was given this device to verify the network connection was successful and each time the network was accessed by a user, a payment was made to the dongle.

In February, ████████████████████████████████████ then hired a sub-contractor out of London named ██████ continue the job. According to Charles, ████ then sabotaged the network because he had not been paid ████████████ claimed the network was hacked by a 3rd party but Charles stated Liquid VPN hired a forensic IT company out of Houston which revealed ████ damaged the network connection.

Charles acknowledged that much of this is a business dispute and a civil matter. However, Charles alleges that a criminal complaint also exists because ████ is now attempting to extort additional money from Liquid VPN and withholding their property.

Liquid VPN has paid ████ $33,000 thus far and now that the project is complete and ready to be turned over to Liquid VPN, ████████ Liquid VPN an invoice for an additional over $23,000 and demanded payment before the dongle is returned. The dongle is currently valued at around $35,000 and is still gaining incoming payments each time the network is accessed. The money stays on the dongle until it is removed and sold as cryptocurrency. ████ told Liquid VPN that if he does not get paid he will destroy the dongle and all of the VPN network.

Charles stated he has spoken to the FBI and made a report with them over the phone as well as at IC3.gov online but has not heard back.

4/24/20 at 1145 hours. I contacted Cox and left a message requesting call back.

CR No: 200012659

4/24/20. 1600 hours. I received a voicemail from ███ returning my call. ███ stated that ███ happy to talk with me about this case. ███ went on to say that there is no property owned by Liquid VPN. ███ said that the dongle contains all the work that ██ performed for them. ███ stated Liquid VPN owes ███ $36,000 and once they pay ██ will turn over the work that ██ performed which is all contained on the dongle.

4/27/20. 0900 hours. I contacted ███ and left a voicemail requesting call back.

4/27/20. 1100 hours. I spoke to ███ about this case.

██ stated that ███████████████████████████████████████████████████ ███████████████ stated that ███████████████████████████████████████ ███████████ stated that ███████████████████████████████ According to ███ Charles and ████ did not have the expertise to complete the job so they reached back out to ███ and hired ██████████████████████ stated that ████████████ ███████████████████████████████████████ stated ██████████████████ █████████████ stated ███████████████
Phase 2 of the project did not have an estimated cost because it involved all new networks that time could not be estimated. Phase 1 occurred in the end of 2019 and phase 2 occurred from Jan to Mar 2020.

██ stated after completing phase 2, ██ sent Liquid VPN the invoices for the job which totaled around $50,000. According to ███ Liquid VPN acknowledged the invoices, paid the deposits on both of them and did not dispute them in any way.

██ stated ████████████████████████████████ During that time, the networks had some issues because no one was maintaining them. But they were never damaged intentionally. ██ stated the network just requires maintenance to work. ██ went on to say that the new networks ██ created allow Liquid VPN to obtain digital tokens which then can be traded for Bit Coin. ██ further stated that when accepting cryptocurrency, the currency can be stored in a digital online "wallet" or in order to be more secure, they can be stored in a dongle which is basically a USB flash drive. In this case, ███ stated that all of the digital tokens are being stored electronically and there is no physical dongle. ██ stated Liquid VPN was supposed to send ██ a dongle to store the tokens but they never did so ██ has been storing them

CR No: 200012659



electronically.

█ stated that the electronic token wallet and the network is the product of █ work that █ has yet to be paid for and █ demanding payment from Liquid VPN before providing █ work to them. █ stated █ gives up the work and does not have payment █ will never be able to recover it since they are off-shore and █ cannot sue them in the US.

█ stated █ believes Liquid VPN is upset because they believes this project was going to make them near $1 million because each token was trading at the equivalent to $1 but now because of the stock market, tokens are only going for about .10 cents and Liquid VPN will not make much money from this so they are refusing to pay him.

█ further stated that because of this dispute, the money that has already been paid █ is now being disputed by Liquid VPN with their credit card as chargebacks.

Based upon all of the information obtained from █ and Charles, it is clear that are many civil aspects to this complaint. Charles is also pursuing this as a civil matter simultaneously.

4/28/20. I contacted Charles and spoke to him more about the case. Charles agreed that there are multiple civil aspects and business disputes involved in this case, however, Charles believes a criminal extortion claim still exists as well.

In summary, payments were made █ in the amount of $33,000. █ then requested an additional $23,000 and demanded that the additional $23,000 be paid █ will destroy the "wallet" and all of the network for Liquid VPN. █ has possession of the "wallet" which is unclear if it is a physical or electronic wallet. Either way █ has possession of it and is threatening to destroy it unless █ is paid an additional $23,000. Because of the dispute over money and property, Liquid VPN then filed disputes with their credit card company on the money that had already been paid █.

Charles stated he has sent a pre-paid mailing envelope █ so that █ can mail █ the wallet/dongle but █ refuses. █ is threatening to destroy the property and network of Liquid VPN which would cause an extreme amount of damage to their business, estimated at $90,000 in damage.

Charles and Liquid VPN would like to prosecute █ and Charles stated they would be willing to travel to Michigan for prosecution/court. I asked Charles to send me the supporting

CR No: 200012659

documentation and email communication between him and ███████ and he did. Charles also provided a written summary of the case in the email he sent me.

Also included in the proof that Charles sent me was a detailed demand letter that was shipped to ███████ along with proof the letter was delivered. Also included was an email received by Charles from ███ responding to the demand letter. In the email from ███████ stated ████████ ████████████████████████████████████████████████████████████████████████████

Charles describes this issues in his email and writes a short summary.

**Charles statement said,**
"Liquid VPN hired a contractor to implement web-based connections to a new business affiliate, Orchid Labs. The contractor's sub-contractor purposely, based on server evidence, sabotaged our business causing outages. When the contractor was told Liquid is disputing the charges, wanted its assets returned, and would no longer work with such an organization, the contractor itself withheld Liquid's assets (worth $60K - $90K depending on timing and market conditions) in an attempt to force Liquid to pay for services that had not been rendered, rendered incompletely and/or redundantly, and/or had not been authorized."

Charles provided the following supporting documentation which is summarized as follows:
Attachment 1 - Demand Letter that was sent from Liquid VPN to ████████████████████ outlining the entire case and demanding their property back.
Attachment 2 - USPS Deliverly Proof that ████████ received the demand letter.
Attachment 3 - ████████ reply email to Liquid VPN after receiving the demand letter.
Attachment 4 - Emails exchanged between ████████ and Liquid VPN in which ████████ states ██ has the "wallet" and will not send it back unless ██ gets paid.
Attachment 5 - The additional invoice for over $23,000 that was sent to Liquid VPN by ████
Attachment 6 - Scope of Work Document
Attachment 7 - Email regarding chargebacks
Attachment 8 - ████████████████████ official reply to Liquid VPN's demand letter.
All of these attachments were added to this case.
Charles stated that unless ████████ returns the wallet and all of liquid's business property, he wishes to press charges on ████████ for extortion. Charles ask that I contact ████ and see if ██ is willing to settle this dispute.
4/30/20. I contacted ████████ and left a message requesting call back.
David shows a CCH ████████
████████ called me back and I spoke to ██ about the case. I explained ████ that although there are many civil aspects to this case, Charles is adamant on prosecuting criminally so I will be sending this case to a prosecutor for review. ████ understood and did not wish to work this out with Charles on their own. I informed ██ that Charles had sent me his documentation regarding this case and I offered ████ to write out a statement and send me any supporting documentation he would like to be included in the case. ██ asked what documentation I had and I explained to him what I had. I offered ██ the opportunity to write out a statement and ██ stated ████ reply to Liquid VPN explains ██ side of the story and I already have that

CR No: 200012659

document. That document is listed as "Attachment 8."

I completed a State Warrant Request and send it to the WCPO for review.

Warrant Submitted. Faxed on 5/4/20.

Case Closed.

CK718.

# EXHIBIT 3



**Complaint Referral Form**
**Internet Crime Complaint Center**

## Victim Information

Name: charles
Are you reporting on behalf of a business? Yes
Business Name: liquid vpn
Is the incident currently impacting business
operations?  Yes
Age: 50 - 59
Address: 151 calle san francisco
Address (continued): suite 200
Suite/Apt./Mail Stop:
City: san juan
County:
Country: United States of America
State: Puerto Rico
Zip Code/Route: 00901
Phone Number: 4074617732
Email Address: charles@4equity.co
Business IT POC, if applicable:
Other Business POC, if applicable:

## Financial Transaction(s)

Transaction Type: Other

If other, please specify: Vendor withheld company assets to extort payment
Transaction Amount: $30000
Transaction Date: 01/01/2020
Was the money sent? Yes


Victim Bank Name:
Victim Bank Address:
Victim Bank Address (continued):
Victim Bank Suite/Mail Stop:
Victim Bank City:
Victim Bank Country: [None]
Victim Bank State [None]
Victim Bank Zip Code/Route:
Victim Name on Account:
Victim Account Number:


Recipient Bank Name:

Recipient Bank Address:
Recipient Bank Address (continued):
Recipient Bank Suite/Mail Stop:
Recipient Bank City:
Recipient Bank Country: [None]
Recipient Bank State [None]
Recipient Bank Zip Code/Route:
Recipient Name on Account:
Recipient Bank Routing Number:
Recipient Account Number:
Recipient Bank SWIFT Code:

## Description of Incident

Provide a description of the incident and how you were victimized. Provide information not captured elsewhere in this complaint form.

April 22, 2020

Mr. David Cox, Owner
S.M.R. Hosting, LLC
38360 Ann Arbor Trail
Livonia, MI, 48150          Via FedEx, tracking # _____  _____

RE: S.M.R. Hosting's Orchid implementation; final request to return Orchid tokens and notice of future staking practices; dispute of payment for services and purchase

Dear Dave:

We are at a critical juncture. Although Liquid remains hopeful of resolving delays and implementation failures and, having tried over half a dozen times to reach you unsuccessfully by phone and email in the past weeks with no reply, no other option exists. Please consider the following so we may conclude business with a professional termination for the benefit of both companies without further delay or need for escalation.

Liquid VPN ("Liquid") was purchased from S.M.R. Hosting ("SMR") on February 12, 2019. Over the next several months transfer and verification of technical needs for support, control information, and related security protocols were completed. Significant documentation and correspondence evidences these events as I've followed them for ownership from the beginning.

In October, 2019, Liquid was approached by Orchid Labs ("Orchid"), a referral through you. After discussions with SMR regarding work for hire to accomplish the programming to implement and support Orchid's technologies and a need for SMR's expertise to process blockchain tokens quickly, in reliance on SMR's representations, Liquid entered into Agreement with Orchid on October 25, 2019 as an "Affiliate", in reliance on SMR to coordinate systems.

SMR was engaged to provide programming, blockchain, and advisory services to Liquid for Orchid's technology in November, 2019. A budget was agreed upon with a range of $6,000 - $8,000 to produce turnkey delivery to Liquid for administration of obligations as an Affiliate of Orchid. The project was to ensure Liquid's ability to maintain new links, monitor blockchain use, make blockchain "stakes" as required, and to own and manage Orchid tokens and "staking" actions related to transactions for hosting. Significant documentation and correspondence evidences these events.

SMR's subcontractor, Russell John Fraser Clare ("Russ"), doing business at 48 Castle Street, Saffron Walden, UK CB10 1B3 was engaged by SMR to implement portions of the technology when SMR either had limited capabilities,

time, or both. Liquid was unaware Russ was a former equity partner and co-founder/developer of Liquid under SMR's ownership. Based on SMR's representations, Russ was a contractor with prior experience in Liquid, not a prior equity owner with full access. Liquid learned in March of 2020 that Russ was bought out by SMR prior to Liquid's listing for sale. After purchasing Russ' equity, SMR employed Russ for repair and maintenance of Liquid's systems prior to its sale in February of 2019 and subsequently performed work as a contractor to SMR on Liquid.

Programming for Orchid's implementation on Liquid's behalf proceeded in unison with Orchid Lab's implementation with four other affiliates, all of which completed installation of the same systems with Orchid. Within 30 days of the start of Liquid's project, SMR's claimed difficulties with Orchid's development process, alleging issues based on Orchid not releasing version updates in typical development fashion. SMR alleged these problems continued to occur at Orchid despite other affiliates' completed integration and continued operational functionality.

On record calls with SMR, Liquid, and Orchid's management, Orchid stated repeatedly that of all their Affiliates, only Liquid was experiencing development problems. Orchid offered additional tokens to assuage Liquid's integration problems and briefly considered then later withdrew an offer of cash subsequent to its canvassing of other Affiliates' and determining issues were not Orchid's systems, they were Liquid's problems. Significant documentation and correspondence evidences these events.

Cost over-runs are critical for Liquid and both SMR and its subcontractor were aware of this. Before, during, and subsequent to Liquid's purchase, SMR was aware of Liquid's planned new brand development requiring investment of tens of thousands of dollars and hundreds of hours to "white-label" Liquid's technical backbone under a new name. Discussions involved the potential for SMR's engagement subsequent to the sale for development and management services of both Liquid's existing brand and the new brand's needs.

SMR had knowledge from the at least the date of the sale that significant costs were being expended to develop the new brand. SMR has yet to deliver a functioning Orchid project to Liquid that will permit deployment of the new brand. The new brand's marketing, sales, and roll-out was completed in December of 2019 but now, due to security and functionality failures, risks deployment due to discoveries of SMR's sub-contractor sabotage and its failed implementation.

While sub-contracted by SMR and with its unilateral approval, Russ continued billing for redundant programming again and again with each of Orchid's updates. Liquid, in dire need to complete the adoption in order to meet the roll-out schedule (openly discussed with SMR and thereby its sub-contractor, Russ) and based on representation by SMR that "these are Orchid's problems and need to be fixed", Liquid was presented with two choices: 1) terminate and scrap the new brand or, 2) pay SMR based on representations the project would be promptly attended.

From December of 2019 through the first quarter of 2020, the cost ballooned to $30,000.00.

Based on SMR's continuing representations, Liquid acted in good faith, permitting payments (subsequent to SMR's unilateral authorizations, unapproved by Liquid) for continuing services and a promised "fix" to speed adoption, staking, and management of blockchain tokens. Based on the same representations and in good faith, Liquid permitted SMR to possess keys to hundreds of thousands of ETH tokens now worth variously between $60,000.00 and $90,000.00 (depending on market price) to expeditiously administer Liquid's "Orchid Stake" (a form of Affiliate investment among Orchid's network providers used to process network traffic), with the understand that all related information, control, and possession of tokens, keys, and technical implements are Liquid's and would be immediately returned upon implementation for Liquid or at Liquid's request. Significant documentation and correspondence evidences these events.

In late February of 2020, the owner of SMR was taken ill. Almost simultaneously, Liquid suffered a network outage, a complete network failure, resulting in losses to its customer base, jeopardizing its fledgling relationship with Orchid, and potentially destroying its entire investment in not only Liquid but the investment in the new brand, and the escalated costs related to an activation of Orchid. Out of desperation and unable to reach SMR after numerous attempts, Liquid reached its sub-contractor Russ to ask for assistance. After several days of messages, texts, and

emails, pleading for help with in dire circumstances, Russ returned a call.

On the call, Russ stated he'd had no involvement with Liquid for "months" due to non-payment by SMR, he stated he would not perform more work until "paid in full", and opined that it sounded to him like "Liquid had been hacked". After explaining that Liquid had already paid tens of thousands of dollars to SMR, by the end of the call, Russ said "he'd look into the problem and have it repaired this evening" (it was past 8:00 p.m. in London). He also revealed he was a prior owner of Liquid, asked about an equity stake in the business for performing work to repair the "breach", and reinforced that he'd never received payment from SMR.

After learning these facts, Liquid immediately reviewed network logs which evidenced Russ had, after a long period of not entering the network, entered it moments before the network failure. Within hours of the call, Russ emailed to say he had "fixed the hack", claiming it was a result of a ransomware attack by an outsider demanding payment of one (1) Bitcoin. The system began running again, but not without several days' loss of customer support, subscriber cancellations, damage to Liquid's reputation, and expenditures by Liquid in an attempt to identify the problem.

After searching logs and determining the sub-contractor had perpetuated the "hack", Liquid finally reached SMR to notify it of their problem and ask for assistance in locating a forensic firm capable of auditing, documenting, and recommending actions due to sabotage by SMR's subcontractor. SMR claimed to make two phone calls to locate firms with no results, had no response for Liquid, and said any further work would require payment, irrespective of the already paid monies, continuing damages by SMR's subcontractor, or failed implementation. Significant documentation and correspondence evidences these events.

Liquid located and engaged a trusted audit firm. Is preliminary assessment confirmed SMR's sub-contractor entered the system and caused the sabotage. For the last 18 days Liquid has attempted to contact SMR to discuss these problems; has tried to discover why tokens belonging to Liquid have yet to be sent to Liquid's wallet; has asked what hidden links SMRs subcontractor maintains through "trap doors" into Liquid's network; has asked SMR for technical support and background information to alleviate continuing damage by its sub-contractor's actions; and has notified SMR of continuing damages due to its inactions. Damages such as degradation of Liquid's subscriber base, corruption of Liquid's code, surreptitious access of Liquid's system, loss of equity marketability, theft of Liquid's Orchid tokens, loss of investment predicated on Liquid's adoption of Orchid's systems for the new brand, continuing costs to investigate and repair the sabotage, continuing costs for auditing the entire network structure due to Russ' actions, SMR's failure to deliver network secure from prior ownership's back-door attacks, and SMR's failure to assist and adequately oversee integration and development services for which it was originally contracted.

Subsequent to the owner's illness and upon his return, SMR intermittently responded to contacts for assistance via inconsistent, incomplete, conflicting emails ("I do", or "I don't", have a hard wallet, for example) and has failed to assist in mitigating continuing damages. SMR does have a "hard wallet" and its address is an asset of Liquid as is its account values detailed below:
Address Information
Address    0xD5931F1b050a1815E8d17623E85c6B960Ab2DdF2
Tags/Notes    No tags or notesAdd tag or note
Balance    0.01328978362182054 ETH
$ 2.35
Total In    0.021921876643641078  ETH
Total Out  0.008632093021820537  ETH

Balances
~ $ 33,975.34 (+1.17%)
Ethereum  0.01328978362182054  ETH
$ 2.35
Orchid
200,000.00 OXT

$ 33,973.00 (+1.17%)
Transfers
11 total
2020-03-13 20:55:21
Tx: 0x741f1dafd677b472fbe3e4049fcde59306489cf918c76deb1d3880127c833cb3
From:0xbb1a65333ea8947b5e0b2a7e349412840571f333
To:0xd5931f1b050a1815e8d17623e85c6b960ab2ddf2  Orchid
100,000.00 OXT
$ 16,986.50(17.67%)
~$ 14,435.95@ 0.14
2020-02-21 16:48:04
Tx: 0x8beffa73fef0ae303b9b688eeb2a9596094bd969cd7abddaf7e5c191c7732cc2
From:0xbb1a65333ea8947b5e0b2a7e349412840571f333
To:0xd5931f1b050a1815e8d17623e85c6b960ab2ddf2  Orchid
100,000.00 OXT
$ 16,986.50(-37.71%)
~$ 27,271.21@ 0.27
2020-02-04 23:26:16
Tx: 0xfde6e0b1564840e04e159e85326cd490e4bd68ad157e04221d18c234e831cab8
From:0xd5931f1b050a1815e8d17623e85c6b960ab2ddf2
To:0x918101fb64f467414e9a785af9566ae69c3e22c5
Orchid
-100,000.00 OXT
$ 16,986.50
2020-01-14 19:07:45
Tx: 0x7a36ea6e0c86f467c4d1606a5f3fb95d40abec379c25918bf02c200086059c94
From:0xbb1a65333ea8947b5e0b2a7e349412840571f333
To:0xd5931f

Which of the following were used in this incident? (Check all that apply.)
☐ Spoofed Email
☐ Similar Domain
☐ Email Intrusion
☑ Other    Please specify: Unauthorized
                                instrusion

*Law enforcement or regulatory agencies may desire copies of pertinent documents or other evidence regarding
your complaint.*

*Originals should be retained for use by law enforcement agencies.*

---

**Information About The Subject(s) Who Victimized You**

                    Name: David Cox
        Business Name: S.M.R. Hosting
                 Address: 38360 Ann Arbor TRail
Address (continued):
Suite/Apt./Mail Stop:
                    City: Livionia
             Country: United States of America
               State: Michigan
     Zip Code/Route: 48150
        Phone Number: 7342453318

Email Address: dave@smrhosting.com
Website: smrhosting.com
IP Address:

## Other Information

If an email was used in this incident, please provide a copy of the entire email including full email headers.

Multiple emails have been saved as PDF that document correspondence and related demands to extort blockchain tokens by with holding company property worth approximately $60,000.00.

Are there any other witnesses or victims to this incident?

Corporate employees.

If you have reported this incident to other law enforcement or government agencies, please provide the name, phone number, email, date reported, report number, etc.

Livonia Michigan Police Department, 734-466-2470, reported 4/23/2020, Cameron Koss – reporting officer, report number 200012659

☐ Check here if this an update to a previously filed complaint:

## Who Filed the Complaint

Were you the victim in the incident described above? Yes

## Digital Signature

By digitally signing this document, I affirm that the information I provided is true and accurate to the best of my knowledge. I understand that providing false information could make me subject to fine, imprisonment, or both. (Title 18, U.S. Code, Section 1001)

Digital Signature: charles muszynski

Thank you for submitting your complaint to the IC3. Please save or print a copy for your records. *This is the only time you will have to make a copy of your complaint.*