# EXHIBIT 4

THE HONORABLE THOMAS S. ZILLY

## U.S. DISTRICT COURT

## FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, a Delaware corporation,<br>          Plaintiff,<br><br>vs.<br><br>JOHN DOE, subscriber assigned IP address 73.225.38.130,<br>          Defendant. | Case No. 2:17-cv-01731-TSZ<br><br>MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF COPYRIGHT AND ATTORNEYS' FEES AND COSTS<br><br>**NOTING DATE: August 23, 2019**<br><br>**ORAL ARGUMENT REQUESTED** |
| JOHN DOE, subscriber assigned IP address 73.225.38.130,<br>          Counter-claimant,<br><br>vs.<br><br>STRIKE 3 HOLDINGS, LLC, a Delaware corporation,<br>          Counter-defendant. | |

MOTION FOR SUMMARY JUDGMENT and ATTORNEY FEES

# TABLE OF CONTENTS

**Page No.**

STATEMENT REGARDING COURT'S ORDER ON JULY 8, 2019 REGARDING
   THE CONSENT JUDGMENT...................................................................................................1

INTRODUCTION ...................................................................................................................1

SUMMARY ............................................................................................................................2

FACTUAL BACKGROUND...................................................................................................3

   A.    STRIKE 3'S ALLEGATIONS OF INFRINGEMENT AND
         THEIR MULTIMILLION DOLLAR CLAIM AGAINST JOHN
         DOE ...................................................................................................................3

   B.    THE COURT ISSUES A PROTECTIVE ORDER STATING
         THAT JOHN DOE'S IDENTITY SHOULD NOT BE REVEALED
         BY THE ISP ......................................................................................................5

   C.    JOHN DOE RETAINS COUNSEL AFTER TRYING TO LOCATE
         SEVERAL LAWYERS IN THE SEATTLE AREA .........................................5

   D.    STRIKE 3'S PRODUCES A PAUCITY OF EVIDENCE
         SUPPORTING THEIR INFRINGEMENT CLAIMS ..........................................6

   E.    KEY WITNESSES ARE DEPOSED ................................................................6

   F.    EXPERT REPORTS ARE FILED.....................................................................6

   G.    STRIKE 3'S EXPERT PATRICK PAIGE IS DEPOSED .................................7

   H.    COMCAST TURNS DOCUMENTS TO LINK THE IP ADDRESS
         TO THE SUBSCRIBER FOR A PERIOD OF 12 DAYS ...................................8

   I.    ANALYSIS OF JOHN DOE'S ASUS HARD DRIVE .......................................8

   J.    PROCEDURAL STATUS...................................................................................9

ARGUMENT ..........................................................................................................................9

   A.    SUMMARY JUDGMENT STANDARD ...........................................................9

B.   JOHN DOE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE 87 WORKS BECAUSE THERE ARE NOT TRIABLE ISSUES OF FACT OF INFRINGEMENT AND  UNDER THE DOCTRINE OF JUDICIAL ESTOPPEL AND AS A MATTER OF LAW JOHN DOE IS ENTITLED TO PARTIAL SUMMARY JUDGMENTS ...................... 9

1.   STRIKE 3 DOES NOT HAVE AN ADMISSION FROM JOHN DOE THAT HE  INFRINGED THE WORKS ........................... 10

2.   STRIKE 3 HAS NO DIRECT EVIDENCE THAT DOE INFRINGED THE WORKS FROM THE HARD DRIVE ................... 11

3.   STRIKE3 HAS NO INDIRECT EVIDENCE THAT JOHN DOE INFRINGED AS THE DATA FROM STRIKE 3'S IPP SYSTEM CANNOT BE RELIED UPON TO PROVE INFRINGEMENT .............................................. 11

   3.1   THE IPP SYSTEM IS NOT ACCURATE SOFTWARE THAT AN EXPERT CAN RELY UPON UNDER *DAUBERT*.............................................................. 11

   3.2   STRIKE 3'S IPP SYSTEM ONLY DOWNLOADS A "DE MINIMUS" FILE FRAGMENT WHICH CANNOT SUPPORT INFRINGEMENT .................................. 13

   3.3.   JOHN DOE SHOULD BE GRANTED SUMMARY JUDGMENT AS THE IP ADDRESS  DATA IN THE PCAP'S IS NOT ASSOCIATED WITH IPP COMPUTER AND THERE IS NO EVIDENCE LINKING AN IPP COMPUTER TO THE PCAP DATA ......... 14

   3.4   JOHN DOE SHOULD BE GRANTED SUMMARY JUDGMENT ON 81 OF THE 87 WORKS AS THEY CANNOT SHOW THAT THE IP ADDRESS WAS ALLOCATED TO JOHN DOE FOR THE PERIODS OUTSIDE OF 8/30/2017 TO 9/12/2017 ................... 14

4.   JOHN DOE SHOULD BE GRANTED SUMMARY JUDGMENT UNDER THE DOCTRINES OF JUDICIAL ESTOPPEL AS STRIKE 3 CONTENDS JOHN DOE  IS NOT THE INFRINGER ..................................................................... 15

5.   STRIKE 3'S CLAIM OF INFRINGEMENT FAILS AS A MATTER OF LAW AS THEY FAILED TO MAINTAIN A CLAIM OF INFRINGEMENT............................................. 16

ATTORNEY FEES ..................................................................................................... 17

    A.    DOE REQUESTS AN AWARD OF ATTORNEYS' FEES .............................. 18

    B.    DOE REQUESTS ONLY REASONABLE ATTORNEYS' FEES
        INCURRED IN DEFENDING PLAINTIFF'S CLAIM AND
        PROSECUTING DOE'S COUNTERCLAIM FOR A
        DECLARATION OF NON-INFRINGEMENT ................................................ 19

        1.    The Lodestar Establishes a Presumptively Reasonable Fee ................... 19

        2.    Defendant's Counsel's Hourly Rates Are Reasonable ........................... 19

        3.    The Time Counsel Spent Defending Against Strike 3's Claim
            and Prosecuting the Declaration of Non-Infringement
            Counterclaim was Reasonable ............................................................... 21

    C.    COUNSEL REQUEST REIMBURSEMENT OF TAXABLE COSTS ............. 22

CONCLUSION .......................................................................................................... 24

**TABLE OF AUTHORITIES**

Page No.

**FEDERAL CASES**

*American Title Ins. Co. v. Lacelaw Corp.,*
   861 F.2d 224 (9th Cir., 1988) ................................................................. 15

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986)............................................................................. 9

*Atl. Recording Corp. v. Andersen,*
   No. CV 05-933 AC, 2008 WL 2536834 (D. Or. June 24, 2008)................................... 18

*Blum v. Stenson,*
   465 U.S. 886 (1984)............................................................................. 20

*BWP Media USA, Inc. v. Rich Kids Clothing Co., LLC,*
   No. 103 F. Supp. 3d 1242 (W.D. Wash. 2015)..................................................... 20

*Carpenters Health and Security Trust of W.Wa, et al. v. Paramount Scaffold, Inc., et al.,*
   Case No. 12-1252-RSM (W.D. Wash 2012) .................................................. 16

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)......................................................................... 9,11

*City of Inglewood v. Teixeira,*
   No. CV1501815MWFMRWX, 2015 WL 6146269 (C.D. Cal. Oct. 8, 2015)............... 18

*Camacho v. Bridgeport Fin., Inc.,*
   523 F.3d 973 (9th Cir. 2008) ................................................................. 20

*Cafasso v. Gen. Dynamics C4 Sys. Inc.,*
   637 F.3d 1047, 1061 (9th Cir., 2011) ......................................................... 15

*Chalmers v. City of Los Angeles,*
   796 F.2d 1205 (9th Cir. 1986) ................................................................ 20

*Daubert v. Merrel Dow Pharmaceuticals, Inc.*
   43 F.3d 1311 (9th Cir. 1995) ................................................................. 11

*Dragor Shipping Corp. v. Union Tanks Car Co.,*
   378 F.2d 241 (9th Cir. 1967) ................................................................. 16

*Elf-man, LLC v. Lamberson,*

No. 13-CV-0395-TOR, 2014 WL 11513119 (E.D. Wash. Oct. 31, 2014) .......... 18,19, 21

*Ets-Hokin v. Skyy Spirits, Inc.,*
    323 F.3d 763 (9th Cir. 2003) ................................................................ 19

*Feist Publications v. Rural Tele. Serv. Co.,*
    499 U.S. 340 (1991)................................................................2,9,18

*Fischer v. SJB-P.D. Inc.,*
    214 F.3d 1115 (9th Cir. 2000) ................................................................ 20

*Fogerty v. Fantasy, Inc.,*
    510 U.S. 517 (1994)........................................................................ 17, 19

*Getty Images (US) v. Virtual Clinics,*
    No. C13–0626JLR, 2014 WL 1744522 (W.D. Wash. Apr. 29, 2014) ............ 20

*Glacier Films (USA), Inc. v. Turchin,*
    896 F.3d 1033 (9th Cir., 2018) ................................................................2,3

*Helfand v. Gerson,*
    105 F.3d 530 (9th Cir 1997) ................................................................ 16

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983)................................................................ 20

*In re Napster, Inc. Copyright Litig.,*
    377 F.Supp.2d 796, 800 (N.D. Cal., 2005) ................................................ 9

*In re Pinkstaff,*
    974 F.2d 113 (C.A.9 (OR) 1992). ................................................................ 16

*Indep. Iron Works, Inc. v. United States Steel Corp.,*
    322 F.2d 656 (9th Cir. 1963) ................................................................ 23

*Ingenuity 13, LLC v. Doe*
    (C.D. Cal. Feb. 7, 2013) 12-cv-08333 ................................................ 13

*JCW Invs., Inc. v. Novelty, Inc.*
    482 F.3d 910 (7th Cir. 2007) ................................................................ 11

*Johnson v. Storix, Inc.,*
    No. 3:14-CV-1873-H-BLM, 2016 WL 4399317 (S.D. Cal. Aug. 17, 2016).................. 18

*Kerr v. Screen Extras Guild, Inc.,*

526 F.2d 67 (9th Cir. 1975) ............................................... 20

Kirtsaeng v. John Wiley & Sons, Inc.,
    136 S. Ct. 1979, 195 L.Ed.2d 368, 118 U.S.P.Q.2d 1770 (2016) ........................2,3

Lahiri v. Universal Music & Video Distrib. Corp.,
    606 F.3d 1216 (9th Cir. 2010) ............................................... 21

Lahrichi v. Lumera Corp.,
    No. C04-2124C, 2007 WL 1521222 (W.D. Wash. May 22, 2007) ............................... 23

Lewis v. Activision Blizzard, Inc.,
    No. C 12-1096 CW, 2014 WL 4953770 (N.D. Cal. Sept. 25, 2014) ............................ 18

Malibu Media, LLC. v. Bui,
    1:13-cv-00162  (W.D. Mich. 2014) ............................................... 10

Mlalibu Media LLC. v. Doe,
    2:14-cv-01280 (E.D. Pa. 2015) ............................................... 10,13

Marya v. Warner/Chappell Music, Inc.,
    131 F.Supp.3d 975 (C.D. Cal., 2015) ............................................... 17

McGrath v. County of Nev.,
    67 F.3d 248 (9th Cir. 1995) ............................................... 19

ME2 Prods., Inc. v. Alexander,
    No. C17-1221RSL, 2018 WL 4963247 (W.D. Wash. Oct. 12, 2018) ............................ 20

Medtronic Inc. v. Bos. Scientific Corp.,
    695 F.3d 1266 (Fed. Cir., 2012) ............................................... 9

Medtronic, Inc. v. Mirowski Family Ventures, LLC.,
    134 S.Ct. 843, 187 L.Ed.2d 703, 82 USLW 4067 (2014) ............................ 9

Moreno v. City of Sacramento,
    534 F.3d 1106 (9th Cir. 2008) ............................................... 21

Omega S.A. v. Costco Wholesale Corp.,
    776 F.3d 692 (9th Cir.) ............................................... 18

Perdue v. Kenny A. ex rel. Winn,
    559 U.S. 542 (2010) ............................................... 20

*QOTD Film Inv., Ltd. v. Wilson*
    C16-0371RSL, Order March 3, 2017 (W.D. Wash., 2017) ...................................... 10

*Rentmeester v. Nike, Inc.,*
    883 F.3d 1111 (9th Cir., 2018) ............................................................................... 10

*S.V. Gopalratnam v. Hewlett-Packard Co.,*
    877 F.3d 771 (7th Cir., 2017) ................................................................................. 11

*Schwarz v. Sec'y of Health & Human Servs.,*
    73 F.3d 895 (9th Cir. 1995) .................................................................................... 21

*Skidmore v. Led Zeppelin,*
    905 F.3d 1116 (9th Cir. 2018) ............................................................................... 15

*Sorenson v. Mink,*
    239 F.3d 1140 (9th Cir. 2001) ............................................................................... 21

*Stephenson v. Citco Grp. Ltd.,*
    700 F. Supp. 2d 599 (S.D.N.Y. 2010)..................................................................... 13

*UN4 Prods., Inc. v. Primozich,*
    372 F. Supp. 3d 1129 (W.D. Wash. 2019)............................................................. 20

*United States v. Marine Shale Processors,*
    81 F.3d 1361 (5th Cir. 1996) ................................................................................. 12

*United States v. One Heckler-Koch Rifle,*
    629 F.2d 1250 (7th Cir.1980) ................................................................................ 15

*Van Skike v. Dir., Office of Workers' Comp. Programs,*
    557 F.3d 1041 (2009)............................................................................................. 20

*Ventura Content, Ltd. v. Motherless, Inc.,*
    885 F.3d 597 (9th Cir. 2018) ................................................................................. 15

*Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't,*
    447 F.3d 769 (9th Cir. 2006) ................................................................................. 19

*Williams v. Bridgeport Music, Inc.,*
    No. CV–13–6004–JAK (AGRx), 2014 WL 7877773 (C.D. Cal. Oct. 30, 2014)........... 18

*Wilson v. Discover Bank,*
    Case No. 3:12-ccv-05209-RBL(W.D. Wash. 2012) ................................................. 16

**FEDERAL STATUTES**

17 U.S.C. § 505 ................................................................................................ 2,17

28 U.S.C. § 1920 .............................................................................................. 22,23

**FEDERAL RULES**

Fed. R. Civ. P. 54(d) ........................................................................................ 22

Fed. R. Civ. P. 56(a) ........................................................................................ 9

Fed. R. Civ. P. 56(e) ........................................................................................ 9

LCR 54(d)(3) ..................................................................................................... 22

**OTHER AUTHORITIES**

Melville B. Nimmer and David Nimmer, Nimmer on Copyright
(Matthew Bender, Rev. Ed. 2014) ................................................................. 13

Pursuant to the Court's July 8, 2019 order (ECF 167), Defendant, JOHN DOE, subscriber assigned IP address 73.225.38.130, ("John Doe" or "Defendant"), moves for summary judgment against Plaintiff Strike 3 Holdings, LLC d/b/a Blacked.Com, Tushy.com, and Vixen.com ("Strike 3" or "Plaintiff"), pursuant to FRCP 56 and as a matter of law, and contingent on the Court's determination of summary judgment in Doe's favor, moves for a discretionary award of attorneys' fees and costs in the amount of $ 48,773.13 as the prevailing party under the Copyright Act.

### STATEMENT REGARDING COURT'S ORDER ON JULY 8, 2019 REGARDING THE CONSENT JUDGMENT

Counsel for Strike 3 and John Doe met and conferred on July 15, 2019. Strike 3 was unwilling to agree to enter a stipulated consent judgment of non-infringement, which would have allowed Doe to brief the issue of attorneys' fees only. As a consequence, John Doe addresses both the issues of non-infringement and attorney fees.

### INTRODUCTION

John Doe was—and still is—faced with potential liability of $13,050,000.00, the maximum amount of statutory damages available under the Copyright Act (87 works x 150K in statutory damages) for copyright infringement, because Strike 3 has refused to dismiss its allegations against Doe with prejudice. Strike 3 speculates someone else did it, maybe John Doe Jr.

As a result, John Doe seeks summary judgment on his counterclaim for declaration of non-infringement, for which Strike 3 alone bears the burden of proof. As explained below, Strike 3 cannot meet its burden because Strike 3's evidence supporting infringement, the "IPP System," is unreliable, and contrary to Tobias Fieser's statement that John Doe downloaded the entire movie from IP address 73.225.38.130, Strike 3 has admitted the IPP System cannot prove that anyone using Doe's IP address downloaded complete copies of Strike 3's works. Also, Comcast returned business records that show the IP address connected to the alleged infringement was assigned to John Doe for a period of just 12 days, during which IPP captured hash values related to only six of the 87 works at issue. Also, Strike 3 cannot explain why the IPP system did not record PCAP data for the 10 of the 87 works. In short, John Doe has clearly negated the elements Strike 3 needs to prove infringement.

MOTION FOR SUMMARY JUDGMENT and ATTORNEY FEES: Page 1

Strike 3 had an opportunity to exit from this case early on. They could have accepted declarations of non-infringement in February, 2018 and walked away unscathed by entering a dismissal with prejudice. Strike 3 declined to do so. Presumably, Strike 3 thought it could follow it's standard sue-then-settle model to extract a settlement from John Doe. But John Doe, an ex-cop, is one tough cookie. John Doe is one of principled few who will not "pay off" Strike 3.

## SUMMARY

Copyright infringement requires proof of three elements: (1) Does Strike 3 own the works; (2) did the allege infringer copy the works; and (3) was there damage. *Feist Publications v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991). Strike 3 has the burden of proof on these three elements even on a declaratory relief of non-infringement.

Discovery is closed. Even with pending motions, there are no triable issue of fact of John Doe's infringement. John Doe's expert reports state this: the IPP System is unreliable and Strike 3 should not be depend on the IPP System and that the unreliable data produced was *de minimus*. Strike 3 did not rebut this evidence because their expert Patrick Paige, did not take the time to read John Doe's expert reports.

This case began with Strike 3's reliance on the IPP System, an uncertified and incompletely tested computer system that results in an unacceptably high false positive rate. Emilie Kennedy admitted this in the District of New Jersey. Still, Strike 3 has sued thousands of persons, imposing improper litigation on 2 out of every 3 defendants. John Doe is one of the thousands of persons that have been improperly sued.

This case would have ended in February, 2018 if Strike 3 had accepted declarations of non-infringement by John Doe and his wife. This case could also have ended in August, 2018, if Strike 3 had dismissed their claim with prejudice. Instead Strike 3 persisted. Even in April 2019, Jessica Fernandez, Strike 3's in-house counsel, would not affirm that John Doe was off the hook. Just two weeks ago, Strike 3, threatened to revive the claim against John Doe under alternate theories of infringement. Strike 3's "dismissal with prejudice" was just as illusory as IPP's ability to detect the infringements.

Copyright infringement allows for statutory attorney fees to the prevailing party in the Court's discretion. (ECF 167, pg. 6) ; 17 USC 505; *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033 (9th Cir., 2018); *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 195 L.Ed.2d 368, 118 U.S.P.Q.2d 1770 (2016). Recognizing the Court's discretion in this matter and recent

precedent from *Glacier Films*, John Doe respectfully requests an award $ 48,773.13 in fees and costs. Strike 3 may have an interest in protecting its copyrights, but that interest should be counterweighed against the high false positive rate and the fact the software used to detect the infringements is not "forensic software".   Further, as shown in the deposition of Patrick Paige, Strike 3's expert, Strike 3 has no actual knowledge that the IPP System "works".

This is the first case that has investigated the technical underpinnings of Strike 3's dubious claims of infringement that have been replicated nationwide.   The balance of interests under *Kirtsaeng* and *Glacier* recognize that meritorious defenses are just as important as vindicating infringements.

## FACTUAL BACKGROND

### A. STRIKE 3'S ALLEGATIONS OF INFRINGEMENT AND THEIR MULTIMILLION DOLLAR CLAIM AGAINST JOHN DOE

On November 16, 2017, Strike 3 sued John Doe, subscriber IP Address 73.225.38.130, for copyright infringement, alleging that Doe infringed 80 pornographic movies (ECF 1). Strike 3 claimed they had been monitoring John Doe's IP address, *Id.* at ¶ 23-24, using a system made by "IPP."   Plaintiff also claimed "Plaintiff knows of no way to effectively prevent Defendant from infringing Plaintiff's motion pictures." *Id.* at ¶30.   Strike 3's prayed for statutory damages and attorney fees. *Id.* Strike 3 claimed that John Doe was liable for statutory fees that ranged from a minimum of $60,000.00 to a maximum of $12,000,000.00.

On November 29, 2017, Strike 3 moved for permission to engage in early discovery of John Doe's identity from Comcast.   Strike 3's motion (ECF 4) was based on Strike 3's representation that it hired an investigator, IPP, to monitor and detect the infringement of Strike 3's content. According to Strike 3, the IPP System discovered that Defendant's IP address was illegally distributing several of Strike 3's motion pictures (Works).   Strike 3 stated that   an "independent forensic expert", John S. Pasquale, examined one of the PCAPs sent by IPP. (ECF 4, pg 6).   As it turns out, Mr. Pasquale is no expert.   (See Initial Disclosures, Ex. 20).   Strike 3 never designated John S. Pasquale as one of its experts. Mr. Pasquale never filed an expert report. And during Mr. Pasquale's deposition, he admitted that contrary to Strike 3's representations, that he never communicated with IPP. Specifically:

> 10 A I know of them, but do I know them?
> 11 No. Have I had a conversation with them? No.
> 12 Q Do you use email communications

13 with anybody at IPP?
14 A No.
15 Q Who sends you the PCAP?
16 A Paul does.
17 Q Your nephew?
18 A My son. Philip is my nephew.
19 Write it down.                    *(Ex. 3,*Pasquale Depo 22:3-23:18)

Later, when Mr. Pasquale was in front of a Federal Judge in New Jersey he further confirmed that he receives the data not from IPP, or directly from the IPP System, but after it has been handled and possibly manipulated by Strike 3 personnel.

**THE COURT: The information that you received, did**
**you receive it directly from IPP or from Strike 3?**
**MR. PASQUALE: From Strike 3.**          (ECF 150-7, pg. 90)

Strike 3 also filed declarations to support its motion by: Greg Lansky, Susan Stalzer, John Pasquale, and Tobias Fieser as evidence to support their claim for infringement. (ECF 4-1 to 4-4). These declarations contained either material misstatements of fact or outright false statements.

Tobias Fieser falsely claimed that IPP had accessed John Doe's computer and downloaded an entire copy of the movie from the IP address. (ECF 4-3 ¶ 9 "IPP's software additionally analyzed each Bittorrent "piece" distributed by Defendant's IP Address. It verified that reassembling the pieces using a specialized BitTorrent client results in a fully playable movie.")

Strike 3's in-house attorney, Emilie Kennedy, recently contradicted Tobias Fieser's form declaration in open court that the allegation that John Doe downloaded complete copies of the works was inaccurate. Instead, Strike 3 relies on bit field value evidence of only "between 50 and 70 percent..." for each movie. (ECF 150-7 at 99:25-103:8.) And while Strike 3 has been working with IPP to "figure out if there's a way to get that full copy of the movie from the subscriber," IPP's software currently cannot "download[] a hundred percent of the movie from the subscriber." *Id.*

Mr. Fieser also declared under penalty of perjury that "IPP [] confirmed through its ancilliary BitTorrent surveillance program that IP address 73.225.38.130 is associated with significant long term BitTorrent use." (ECF 4-3, ¶12.) Mr. Fieser also gave the misimpression that the IPP system used at the Bellwhether trial in 2013 is somehow the same used in this case (ECF 4-3,¶6.) Yet, in his deposition, Mr. Fieser testified that the software used now is different than in 2013 (Ex. 7, 147:12-148:16) and that he did not know the IP addresses of the IPP Servers

1    (Ex 7, 154: 22-155:5)  despite working there for 10 years (Ex. 7, 24:8-14).  Mr. Fieser's

2    declaration is pro-forma and nearly identical to thousands of other declarations filed in thousands

3    of actions across the country. In reality, the IPP System downloaded, at the most, 0.015% from

4    an unidentified computer at that IP address. (See Garcia-Paeth Expert Report, Ex. 8.)  Nowhere

5    in Mr. Fieser's declaration does he explain why the IPP System could not record PCAPS for 10

     out of the 87 works. (*Id.*).

6        Susan Stalzer, the real estate agent/copyright "comparer", relied on a "verification

7    system" which was undisclosed in her declaration. Ms .Stalzer also communicated with "Sud"

8    (aka "Sid") an individual who was not identified on Strike 3's initial disclosures. (Ex. 2, Stalzer

9    Depo 37:10-38:5; 128:16-21; 149:24-150:30) Stalzer's connection to Strike 3 is not based on her

     experience as a "comparer", a titled given to her by Fox Rothschild (*Id.* 61:12-16),  in her prior

10   job, she worked for Malibu Media proofreading emails for Emilie Kennedy. (*Id.,* 11:15-14:5).

11

12   **B. THE COURT ISSUES A PROTECTIVE ORDER STATING THAT JOHN DOE'S IDENTITY

13   SHOULD NOT BE REVEALED BY THE ISP.**

14       On January 25, 2018 this Court issued a protective order that the Does' name should not

15   be revealed by the ISP to the Plaintiffs.  (ECF 8.)  On March  5, 2018, this Court issued broader

16   protective order requiring Plaintiff's to keep Doe's identity confidential.  (ECF 20.)

17

18   **C. JOHN DOE RETAINS COUNSEL AFTER TRYING TO LOCATE SEVERAL LAWYERS IN THE

     SEATTLE AREA.**

19   On February 10, 2018, John Doe's counsel responded to Strike 3's lawyer stating:

20   **....My client and his wife are willing to provide declarations that they did not
     download the films as alleged in your complaint. If that is acceptable, then I would
21   like to provide your client with the opportunity to dismiss this action with
     prejudice and my client will waive costs.... (Ex. 1).**

22

23       On February 14, 2018, John Doe's counsel informed Bryan Case of Fox Rothschild that

24   the IPP software had false positives. (Ex. 4.)   Fox Rothschild and Bryan Case later withdrew

25   from representation.

26

On March 8, 2018, John Doe filed a declaration with this Court stating he did not infringe. (ECF. 25-21.). John Doe brought a counterclaim for declaratory relief of non-infringement. (ECF 22.)

Strike 3 filed an amended complaint alleging infringement of 87 works. (ECF 43).

John Doe answered and counterclaimed. (ECF 32.)    Strike 3 dismissed their claim of infringement without prejudice. (ECF 53.)

Strike 3 challenged this counterclaim by a motion to dismiss which was partially granted and denied by this Court as to the counter-claim of copyright misuse. ECF  58.)

### D. STRIKE 3'S PRODUCES A PAUCITY OF EVIDENCE SUPPORTING THEIR INFRINGEMENT CLAIMS

On August 9, 2018, John Doe requested documents from Strike 3 in support of their infringement claims. (ECF 53).  Rather than turn over those documents, Strike 3 opposed the motion. (ECF 54).

Five months later, in January, 2019, Strike 3 produced the following documents supporting their claims for infringement:

- Control Copies of the Movie;
- Alleged Infringed Works'
- PCAP's (Packet Captures) of the IPP monitoring system
- Torrent Files
- Copyright Certificates  (Edmondson Decl., ¶39 )

Doe hired an expert to analyze this data. (Ex. 11, Garcia-Paeth Expert Report.). Far from proving Strike 3's claim that Doe had downloaded complete copies of Strike 3's works, Expert Garcia-Paeth reported that the sum of the raw data of the PCAP's equaled approximately % 0.0015 of the raw data. *Id.*

### E. KEY WITNESSES ARE DEPOSED

As John Doe was still faced with the possibility of further claims for infringement, John Doe deposed Stalzer, Pasquale, Lansky, and Fieser.  Strike 3 also deposed John Doe, who in no uncertain terms, denied having downloaded Strike 3's works. (Deposition of John Doe, Ex. 29, 210:1-10). Strike 3 also deposed John Doe's son who stated he had no knowledge of Strike 3's works. (Deposition of John Doe, Jr, Ex. 30, 30:10-22, 46:2-47:23.)

### F. EXPERT REPORTS ARE FILED

On March 15, 2019, John Doe filed four expert reports. (Ex. 8-11) Strike 3 filed two expert reports on March 15, 2019. (Ex. 12-13) John Doe filed a rebuttal export report and an amended expert report on April 15, 2019. (Exhibits 14-15).

Dr. Toth, explained in the summary of his expert report regarding the validity, reliability, and correctness of the IPP software with regard to it being "forensic software":

> **In my experience, creating a software system without technical specifications or testing may be suitable to implement a web site for one's book club, but is not nearly good enough to build forensics software that can harm the heal and safety of innocent bystanders** (Ex. 8, page 1).

> **In other words, the IPP software is unproven and should not be trusted for the forensic purposes as contemplated.** (*Id.*)

Brandon Garcia-Paeth explained in the summary of his expert report about his analysis of the PCAP data, for which Strike 3 started this copyright infringement lawsuit:

> **My analysis of the data shows that in each pcap only a very small percentage of the file was downloaded. One or two torrent pieces (16kb each) was downloaded in most cases. In a few of the pcaps no piece download was shown.** (Ex. 11, page 3).

Michael Yasumoto explained in the summary of his expert report of his analysis of the ASUS hard drive used by the retiree, John Doe:

> **None of the video files reviewed from the Defendant's hard drive are the Plaintiff's movies based on the video subject matter or the SHA1 hash.** (Ex. 10, page 4).

### G. STRIKE 3'S EXPERT PATRICK PAIGE IS DEPOSED

Patrick Paige, who Strike 3's designated as an expert on verification of the IPP System was deposed on June 27, 2019. (Ex. 16.) The deadline for expert reports was March 15, 2019 and two documents were submitted on behalf of Patrick Paige by Strike 3. (Ex 13.)

At the deposition Mr. Paige testified he was never asked to prepare an expert report for this case:

> **22 Q. I'm talking about an expert report for this**
> **23 specific case. Were you ever asked to prepare an**
> **24 expert report specifically for this case?**
> **25 A. No.** (Paige Depo, 5:22-25)

Patrick Paige also testified that he did not reference any known methodology to construct a test. (*Id.* 78:14-79:8.)

Patrick Paige's report extensively references using computer systems for child pornography investigations to draw an analog to his investigations in this case. (Ex. 16). When asked why Patrick Paige was no longer working at the Palm Beach Police department, he states he left for a "work comp" claim

> **...I left the sheriff's office for -- in reference
> 20 to PTSD, child pornography related; a workers' comp
> 21 complaint was involve in it also. (Ex 16,Paige Depo, 67:12-21.)**

This was not completely accurate. Mr. Paige left due to circumstances of his felony arrest for drug possession using police property. (Ex 17.)

Strike 3's designated another expert, Stephen Bunting.  Buntings' qualifications are similar to Patrick Paige's. Patrick Paige testified that he has known Mr. Bunting for many years and has used Bunting on his expert reports but never mentioned that in his expert report.  (Paige Depo, 47:23-49:5.)


### H. Comcast turns documents to link the IP address to the Subscriber for a period of 12 days.

Strike 3 then issued a Rule 45 Subpoena to Comcast. In response, Comcast produced documents that could only correlate John Doe's IP address for a period of 14 days from August 30, 2019 to September 12, 2019. (Ex. 18.) These dates, which correlate with six works described in the attachment to Strike 3's amended complaint (See entries #1, 13, 32, 60, 64, 87; ECF 43-1), are far less than the 87 works Strike 3 alleges were infringed.


### I. Analysis of John Doe's ASUS Hard Drive

Most importantly, Doe's expert, Yasumoto, analyzed his computer on March 6, 2018. Yasumoto's methodology was not objected to by either Paige or Bunting by way of a rebuttal expert report.    Strike 3 did not notice Yasumoto's deposition.

Yasumoto used string search and file reconstruction techniques on the hard drive in the ASUS computer which included looking for deleted and undeleted files. Yasumoto concluded that the Strike 3 files did not exist on the ASUS hard drive. (Yasumoto Expert Report, Ex. 10).

**J. PROCEDURAL STATUS**

On July 8, 2019, this Court issued partial judgment on the pleadings on abuse of process. (ECF 168). The Court ordered the parties to meet and confer as to a stipulated entry of judgment of non infringement and attorney fees. *Id.*

On July 15, 2019 the parties met and conferred and could reach a resolution. On July 16, 2019, Strike 3's counsel sent an email contending that Strike 3 could still bring John Doe back into the case under a theory of contributory infringement. (Ex. 4.)

## ARGUMENT

**A. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where the pleadings and discovery demonstrate that there is "no genuine dispute as to any material fact[,] . . . the movant is entitled to judgment as a matter of law." FRCP 56(a); *see Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). The judgment sought shall be rendered if the pleadings, discovery and affidavits demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Strike 3 bears the burden of proof in a declaratory relief action for non-infringement. *Medtronic Inc. v. Bos. Scientific Corp.,* 695 F.3d 1266,1272 (Fed. Cir., 2012); *Medtronic, Inc. v. Mirowski Family Ventures, LLC.,* 134 S.Ct. 843, 187 L.Ed.2d 703, 82 USLW 4067 (2014). On an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. FRCP 56(e). *In re Napster, Inc. Copyright Litigation* 377 F.Supp.2d 796, 800 (N.D. Cal., 2005).

**B. JOHN DOE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE 87 WORKS BECAUSE THERE ARE NO TRIABLE ISSUES OF FACT OF INFRINGEMENT AND UNDER THE DOCTRINE OF JUDICIAL ESTOPPEL AND AS A MATTER OF LAW**

Proof of copyright infringement requires two general elements: one, ownership of a valid copyright; and two, copying of constituent elements of the work that are original. *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.* 499 US 340, 361 (1991).

Strike 3 must also prove that Doe volitionally created a copy of its works, *Malibu Media, LLC. v. Bui*, 1:13-cv-00162 (W.D. Mich. 2014) ("As long as Defendant engaged in a volitional act that led to creation of the unauthorized copy, he is responsible for it despite a lack of detailed understanding"), and that the copy created is substantially similar to the original copyrighted work. *Mlalibu Media LLC. v. Doe*, 2:14-cv-01280 (E.D. Pa. 2015) ("Here we determine as a matter of law that there was no improper appropriation because no reasonable jury, properly instructed, could find that the data snippet bears a "substantial similarity" to Strike 3's copyrighted work.").

Strike 3 still needs to show that John Doe infringed. This evidence can be demonstrated by either finding the actual files on John Doe's computer or indirectly by showing that the IPP System was accurate, stable, and reliable enough to determine that John Doe downloaded the 87 works at issue.

### 1. STRIKE 3 DOES NOT HAVE AN ADMISSION FROM JOHN DOE THAT HE INFRINGED THE WORKS

One way to prove that infringement is to have the Defendant admit that he or she downloaded the works. See *QOTD Film Inv., Ltd. v. Wilson* C16-0371RSL, Order March 3, 2017 (W.D. Wash., 2017). Discovery is closed and John Doe's deposition was taken. John Doe expressly denied downloading the works at issue. (Deposition of John Doe, Ex. 28, 210:1-10)). So has John Doe's son. (Deposition of John Doe, Ex. 29, 46:2-47:23; 30:10-22).

While Strike 3 and Greg Lansky may think their films are widely known, they are, in fact, not well known or widely visit by the general public  A recent article entitled "Characterizering Web Pornography consumption from passive measurements" quantified the top ten porn websites and none of Strike 3's brands are identified. (Ex. 26, page 11).

### 2. STRIKE 3 HAS NO DIRECT EVIDENCE THAT DOE INFRINGED THE WORKS FROM THE HARD DRIVE

Evidence of infringement can be proven either directly or indirectly. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir., 2018). In this case there is no direct evidence of infringement.

John Doe identified a single computer, ASUS, that he used on a daily basis for internet surfing. Immediately after notice of this suit, the drive was preserved by Doe's hard drive expert, Michael Yasumoto. (Ex. 10, Yasumoto Report).

Michael Yasumoto is a forensics expert who examined the ASUS hard drive. His search methodology is documented in his timely filed report. His conclusion was that there were no Strike 3 movies on the hard drive.

Strike 3 employed two hard drive experts, Paige and Bunting, who are presumptively competent at the methodology used by Mr. Yasumoto for Hard Drive inspections. Neither Paige nor Bunting objected to the methodology used by Yasumoto in generating his report. (Edmondson Decl, ¶33.)

### 3. STRIKE3 HAS NO INDIRECT EVIDENCE THAT JOHN DOE INFRINGED AS THE DATA FROM STRIKE 3'S IPP SYSTEM CANNOT BE RELIED UPON TO PROVE INFRINGEMENT

The law requires proof of copying – namely, a copy. *JCW Invs., Inc. v. Novelty, Inc.* 482 F.3d 910, 914 (7th Cir. 2007). Strike 3 has zero evidence of copying, and can point to no full copy that was made. Circumstantial evidence that IP address 73.225.38.130 may have been involved in copying is not the same as the copy itself.

Strike 3's complete failure is that it has no admissible, relevant evidence to prove an essential element of its case. As a result, John Doe is entitled to summary judgment of non-infringement. *Celotex Corp*, 477 U.S. at 322.

To demonstrate infringement by inference, Strike 3 must show: 1) the IPP System is accurate, 2) IPP System gathered sufficient data from the IP address to reconstruct the work, and 3) evidence that John Doe was the one operating the computer system from which the data was collected. Because Strike 3 cannot carry its burden as to any of these elements, Doe is entitled to summary judgment on his counterclaim for declaration of non-infringement.

### 3.1 THE IPP SYSTEM IS NOT ACCURATE SOFTWARE THAT AN EXPERT CAN RELY UPON UNDER *DAUBERT.*

To determine if the data from the IPP System can be relied by the trier of fact to infer that infringement occurred at this IP address, one must analyze each step linking the data from the collection of swarm data on the internet to the potential infringer.

The IPP Software used to monitor the internet must operate reliably and generate data that an expert witness can rely upon. Under principles of *Daubert*:

- Has the IPP software that is generally accepted in the scientific community?
- Is IPP software been subjected to peer review and publication?
- Can and was the IPP Software tested?

- Does IPP Software's know the potential rate of error and is it acceptable?
- Was the testing of the IPP software conducted independent of the particular litigation or dependent on an intention to provide the proposed testimony?
  *See Daubert v. Merrel Dow Pharmaceuticals, Inc.* 43 F.3d 1311 (9th Cir. 1995); *S.V. Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 789 (7th Cir., 2017) .

Evidence gathered by a computer system is subject to the same *Daubert* limitations as testimony provided by a live expert. (*Ex. 21*; *Software on the Witness Stand: What should it Take for Us to Trust It* (2010) TRUST 10 Proceedings of the 3rd International Conference on Trust and Trustworthy Computing, pgs. 396-416.) This article describes the technology and the resulting forensic investigation surrounding the music filesharing case of *UMG Recordings, et. al vs. Roy* (D.N.H. 2008) 08-cv-00090, hereinafter "*Roy*".

In *Roy*, the defendant was accused of downloading songs based on an IP address with the "behind the scenes" investigation of the forensic system that led to the complaint of the infringement. What defendant *Roy's* investigator found when they looked at the computer data was:

> …Yet, at least in the case of the document that apparently purported to contain the traced route to the IP in the subpoena, the software obviously failed to operate correctly, as can be seen in Figure 7. The reason for this could have been either internal code faults or network configuration faults. *Software* at 4.

Central to Strike 3's copyright enforcement model is the use of the IPP software. In fact, IPP has been used to initiate all of Strike 3's 3000+ lawsuits. The problem with IPP's position is that is impossible to build a complex system using one designer to direct programmers to write "bug free" code. (See Ex. 15, Expert Report of Dr. Kalman Toth.) This conclusion was based on the fact that IPP has never had formal specifications, walkthroughs, formal testing, inspections, third-party validations, or documentation of failure modes. *Id.* There has never been a third-party paper written about the IPP technology.

Ultimately, the problem is that Mr. Fieser's livelihood is inextricably bound up in the operation of the IPP software. (Ex. 7, Fieser Depo, 24:8-14). Likewise, Patrick Paige's testimony was even more bizarre in that his declarations are filed in hundreds of Malibu cases without compensation or knowledge. (Ex. 16 Paige Depo) Neither Fieser nor Paige's testimony can be given any credibility as their livelihood is bound up on the operation of the IPP software. *United Sates v. Marine Shale Processors* (5th Cir. 1996) 81 F.3d 1361, 1370.

Neither Strike 3 nor IPP did not respond to the expert critique of IPP by Dr. Toth by way of rebuttal report.

This Court does not have to accept fantastic claims that are not grounded in scientific principles. In 2010, it was discovered that a respected investor, Bernie Madoff, delivered consistent results year after year only via a Ponzi Scheme. See *Stephenson v. Citco Grp. Ltd.,* (S.D.N.Y., 2010) 700 F.Supp.2d 599, 607. In 2015, it was discovered that Volkswagen used software to cheat on emissions tests. See generally *In re Volkswagen "Clean Diesel" Marketing, Sales, Practices, and Products Liability Litigation* (N.D. Cal. 2015) 16-cv-295. It is clear that software that is claimed to be "perfect" should raise greater questions than when it is shown to have a certain number of false positives with supporting test data.

### 3.2 STRIKE 3'S IPP SYSTEM ONLY DOWNLOADS A "DE MINIMUS" FILE FRAGMENT WHICH CANNOT SUPPORT INFRINGEMENT.

To infringe, an infringer must create a copy that is "substantially similar" to the original. *Malibu Media. v. Doe,* 2:14-cv-01280 (E.D. Pa. 2015); *see also* Melville B. Nimmer and David Nimmer, Nimmer on Copyright (Matthew Bender, Rev. Ed. 2014) §13.03 [A], 38.1. A small fraction is not enough. *Ingenuity 13, LLC v. Doe,* 12-cv-08333 (C.D. Cal. Feb. 7, 2013). As Hon. Otis Wright stated in his order:

> "This snapshot allegedly shows that the Defendants were downloading the copyrighted work—at least at that moment in time. But downloading a large file like a video takes time . . . To allege copyright infringement based on an IP snapshot is akin to alleging theft based on a single surveillance camera shot: a photo of a child reaching for candy from a display does not automatically mean he stole it." *Id.*

The tiny portion of a file that could be downloaded in one second is too small to be substantially similar to the original. Even if the hash value captured in the PCAP corresponds to a portion of a digital file that is "identical, strikingly similar or substantially similar to" [Plaintiff's] copyrighted work, there is nothing before the court that describes the audio/visual material that is represented by that hash value. Is it the entire movie or is it some portion so small that it would not be identifiable as part of the movie?"); *see also Malibu Media LLC. v. Doe,* 2:14-cv-01280 (E.D. Pa. 2015).

The only evidence Plaintiff has presented to support its claim that a copy was created at all at the instant IP address are PCAP files. These files purport to show one second of connection

between John Doe's IP address and Plaintiff's investigation service. (Expert Report or Garcia-Paeth, Ex. 11).

### 3.3 JOHN DOE SHOULD BE GRANTED SUMMARY JUDGMENT AS THE IP ADDRESS DATA IN THE PCAP'S IS NOT ASSOCIATED WITH IPP COMPUTER AND THERE IS NO EVIDENCE LINKING AN IPP COMPUTER TO THE PCAP DATA

Central to Strike 3's assertions of infringement is that the PCAP data is monitored by the IPP system and it can be affirmatively linked to an IP address.

When the Strike 3 PCAP's are inspected, the evidence is that this assertion is demonstrably false.  A dump from Wireshark shows this data:

```
1 0.000000 192.168.0.13 73.225.38.130 TCP 66 64430→17966 [SYN] Seq=0 Win=8192 Len=0
MSS=1460 WS=4 SACK_PERM=1
Frame 1: 66 bytes on wire (528 bits), 66 bytes captured (528 bits)
Ethernet II, Src: fa:f7:05:6b:3e:b9 (fa:f7:05:6b:3e:b9), Dst: de:4e:0a:1a:08:11
(de:4e:0a:1a:08:11)
Internet Protocol Version 4, Src: 192.168.0.13, Dst: 73.225.38.130
        Transmission Control Protocol, Src Port: 64430, Dst Port: 17966, Seq: 0, Len: 0
```

(PCAP Printout from Wireshark, Ex. 13).

The two IP addresses are 192.168.0.13 and 73.225.30.130.    The first IP address, 192.168.0.13,  is supposedly the IP address allocated to an IPP Computer.

The problem is IP address 192.168.0.13 is a non-routable IP address used for local communications within a <u>private network</u>.  There is no data showing the IP address of the IPP computer.    Therefore,  PCAP data provided by IPP has no forensic value as there are no contemporaneous PCAP's or other chain of title documents linking IP address in the PCAP data to an IP address for the IPP computer.

John Doe requests entry of summary judgment of non-infringement because Strike 3 cannot use the IPP PCAP data because it does not link the IP address to a computer used by IPP.

### 3.4 JOHN DOE SHOULD BE GRANTED SUMMARY JUDGMENT ON 81 OF THE 87 WORKS AS THEY CANNOT SHOW THAT THE IP ADDRESS WAS ALLOCATED TO JOHN DOE FOR THE PERIODS OUTSIDE OF 8/30/2017 TO 9/12/2017

Comcast only returned evidence that John Doe was allocated the IP address from 8/30.2017 to 9/12/2017.   During this time period only six works were reported infringed out of the eighty-seven.

Despite the fact that there is little to no evidence recorded by the IPP system for each individual work, Strike 3 may argue that this *de minimus* evidence alone is a enough to "finger" John Doe.

Strike 3's argument fails because Strike 3 cannot cite to any admissible evidence, via business records or otherwise, demonstrating that the IP Address was allocated to John Doe for the entire period of alleged infringement.

Without admissible evidence linking infringement to Doe's IP address, the trier of fact is left to speculate what the IP address is during those periods of infringement. *Cafasso v. Gen. Dynamics C4 Sys. Inc.,* 637 F.3d 1047, 1061 (9th Cir., 2011) "To find liability on this evidence would require undue speculation. To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations..") As such, the Court should grant summary judgment to Doe as to 81 of the 87 works. *Ventura Content, Ltd. v. Motherless, Inc.,* 885 F.3d 597, 607 (9th Cir. 2018) (...no factual dispute in the record cannot lead to reversal of MSJ due to speculation of appellants...); *see also Skidmore v. Led Zeppelin,* 905 F.3d 1116, 1130 (9th Cir. 2018) (...court will not apply speculation when evidence at issue is dispositive...)..

Therefore, John Doe respectfully requests summary judgment on all works except the six works found with the window from 8/30/2017 to 9/12/2017.

**4.0   JOHN DOE SHOULD BE GRANTED SUMMARY JUDGMENT UNDER THE DOCTRINES OF JUDICIAL ESTOPPEL AS STRIKE 3 CONTENDS JOHN DOE IS NOT THE INFRINGER.**

Factual assertions made in pleadings and briefs can be taken as judicial admissions. See *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224,226 (9th Cir., 1988) stating " For purposes of summary judgment, the courts have treated representations of counsel in a brief as admissions even though not contained in a pleading or affidavit. *United States v. One Heckler-Koch Rifle,* 629 F.2d 1250, 1253 (7th Cir.1980); 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2723, pp. 64-66 (1983) (admissions in opponent's brief can be used to determine there is no genuine issue of fact, since they are functionally equivalent to "admissions on file").

Strike 3's focus on this case, since as early as August, 2018, has been on John Doe's son as the alleged infringer. (ECF 73, page 5 "..highly likely that Doe Jr. is the culprit."

On February 2, 2019, Strike 3 made this following admission in its motion for partial summary judgment:

Strike 3 conducted a further investigation and then immediately dismissed its claims without prejudice once Strike 3 discovered that Defendant's adult son—who has the same name as Defendant—is most likely the infringer, not Defendant. (ECF 71, page 2)

But on April 12, 2019, Strike 3's counsel, Jessica Fernandez equivocated on the John Doe Jr's liability. (Ex. 6:245:1-247:25). This Court also noted in its order that Strike 3 indicated that it wanted to pursue John Doe's son (ECF 167, fn 3).

Absent evidence that John Doe and John Doe Jr. were working in concert (there is none), Strike 3 cannot simultaneously claim that John Doe and John Doe Jr. are the alleged infringers.

### 5.0   STRIKE 3'S CLAIM OF INFRINGEMENT FAILS AS A MATTER OF LAW AS THEY FAILED TO MAINTAIN A CLAIM OF INFRINGEMENT

The Western District of Washington has stated that "a counterclaim 'arises out of the same transaction or occurrence' as the underlying claim if the counterclaim meets the Ninth Circuit's 'logical relationship test'." *Wilson v. Discover Bank*, Case No. 3:12-ccv-05209-RBL (W.D. Wash. 2012) quoting *In re Lazar*, 237 F.3d 967 (9th Cir. 2001). Under the logical relationship test, "A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." *In re Pinkstaff*, 974 F.2d 113 (C.A.9 (OR) 1992). DOE has sought a declaratory judgment that it has not violated S3H's copyrighted material under the Federal Copyright Act. Strike 3 has dismissed their claims and has not filed a reply to the counterclaims. Strike 3's claims, now dismissed, arise from the same aggregate set of operative facts as DOE's request for declaratory relief that DOE did not infringe the 87 copyrights at issue in this case. (Dkt 43).

The Western District of Washington has held that a compulsory counterclaim arising under Fed. R. Civ. P. 13(a) must be asserted. *Carpenters Health and Security Trust of W.Wa, et al. v. Paramount Scaffold, Inc., et al.*, Case No. 12-1252-RSM (WDWA). Moreover, the Ninth Circuit has held that a party failing to plead its compulsory counterclaim is considered to have "waived such claim" and is estopped under the doctrine of *res judicata* from bringing such claim again. *Dragor Shipping Corp. v. Union Tanks Car Company*, 378 F.2d 241 (9th Cir. 1967). Further, the doctrine of judicial estoppel prevents a party from taking one position and then later

taking a second position.  The objective of judicial estoppel is to preserve the integrity of the judicial process.  In short, it is to avoid parties "playing fast and loose" with the judicial system.  See *Helfand v. Gerson*, 105 F.3d 530, 534 (9th Cir 1997).

As held in *Carpenters Health supra*, a party is required to assert its compulsory counterclaim. Otherwise, a party waives such a claim under *Dragor*.  Alternately, Strike 3 could have maintained their action for copyright infringement, filed a reply to the SACC even after dismissing their complaint.

Here Strike 3 has done neither.  Strike 3 has waived its right to bring such a claim and is estopped under the doctrine of res judicata.

John Doe seeks declaratory relief that it has not violated any of Strike 3's alleged copyrights. In response, Thus, even if all the allegations in the complaint are taken as true, Strike 3 has failed to assert a Federal Copyright Claim in response to John Doe's request for declaratory relief. Moreover, as a result of failing to even allege a claim for Copyright infringement in the FACC, Strike 3 has not meet the minimum standards under *Twombly* or *Iqbal*. Put simply, Strike 3 has not asserted a claim that it is entitled to relief, let alone any facts in support thereof, that DOE violated its infringed it copyright(s). Therefore, John Doe's motion for declaratory relief should be granted as a matter of law.

John Doe respectfully requests that his Court entered judgment of non-infringement of the 87 works as a matter of law for Strike 3's failure to maintain a compulsory claim of infringement.

## ATTORNEY FEES

The Copyright Act contemplates an award of attorney fees and costs:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. Prevailing defendants as well as prevailing plaintiffs may be awarded attorney fees at the court's discretion. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). "[A] successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Id.* at 527.

Whether it is a direct action for copyright infringement, or declaratory relief action of non-infringement by a defendant, the owner of the copyright always has the burden of proof in an action for a declaratory judgment involving infringement of the copyright. *Marya v. Warner/Chappell Music, Inc.*, 131 F.Supp.3d 975, 983-984 (C.D. Cal., 2015) (citing *Medtronic, Inc. v. Mirowski Family Ventures, LLC,* 571 U.S. 191, 198-201 (2014) ("[t]he burden of persuasion is with the patentee, just as it would be had the patentee brought an infringement suit")); *see also Williams v. Bridgeport Music, Inc.*, No. CV–13–6004–JAK (AGRx), 2014 WL 7877773, at *10 (C.D. Cal. Oct. 30, 2014) (applying *Medtronic* to a declaratory judgment copyright case and concluding the defendants have the burden of proof).

Here, Strike 3 had the burden of proof regarding Doe's claim for declaratory judgment of non-infringement. To meet its burden, Strike 3 was required to establish that Doe copied Strike 3's works, *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991), which Strike 3 readily admits it cannot do. *See* ECF 43 ¶ 42 (Strike 3 is "unable to capture the full, or a playable portion of its motion picture"). Strike 3's failure to establish that Doe copied its works is consistent with Dr. Kal Toth's opinion that the software Strike 3 used in its investigation of alleged infringement is unreliable. As a result, Doe is the prevailing party.

## A.   DOE REQUESTS AN AWARD OF ATTORNEYS' FEES

Courts routinely award prevailing defendants costs and fees under the Copyright Act. *See generally Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 696 (9th Cir.), *cert. dismissed,* 136 S. Ct. 445 (2015) (affirming district court's award of $396,844.17 to defendant in a first sale copyright dispute); *Elf-man, LLC v. Lamberson*, No. 13-CV-0395-TOR, 2014 WL 11513119, at *3 (E.D. Wash. Oct. 31, 2014) (awarding attorneys' fees where defendant was forced to incur attorneys' fees to defend against plaintiff's claim); *Johnson v. Storix, Inc.*, No. 3:14-CV-1873-H-BLM, 2016 WL 4399317, at *7 (S.D. Cal. Aug. 17, 2016) (awarding defendant fees even when plaintiff's copyright case was non-frivolous); *City of Inglewood v. Teixeira*, No. CV1501815MWFMRWX, 2015 WL 6146269, at *1 (C.D. Cal. Oct. 8, 2015) (awarding prevailing defendant's pro bono counsel $117,741 for defending an objectively unreasonable claim); *Lewis v. Activision Blizzard, Inc.*, No. C 12-1096 CW, 2014 WL 4953770, at *4 (N.D. Cal. Sept. 25, 2014) (finding $152,104.50 reasonably expended by defendant on an objectively unreasonable copyright claim, but reducing the award in view of plaintiff's relative poverty); *Atl.*

*Recording Corp. v. Andersen*, No. CV 05-933 AC, 2008 WL 2536834, at *3 (D. Or. June 24, 2008) (awarding $103,175 to a prevailing defendant in an Internet file sharing copyright case).

In determining whether fees should be awarded, courts may consider a nonexclusive list of factors, including degree of success obtained, frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), the need in particular circumstances to advance considerations of compensation and deterrence, and whether the chilling effect of attorney fees may be too great or impose an inequitable burden on an impecunious party. *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003) (citing *Fogerty*, 510 U.S. at 534, n. 19); *see also Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006). On balance, these factors support an award of fees to Doe.

First, Strike 3 dismissed its copyright claim against Doe, and failed to meet its burden on Doe's counterclaim for declaration for non-infringement. It was not successful under the Copyright Act. Second, Strike 3's claim was frivolous. Using unmistakable language, Strike 3 accused Doe, and Doe alone, of having infringed its works, all the while knowing that its investigator could never gather evidence to prove that Doe copied Strike 3's complete works. Third, Strike 3's motivation in bringing the lawsuit is part of its sue-and-settle model, which courts have increasingly criticized. Strike 3 has admitted that its lawsuits don't deter infringement. As a result, the ultimate purpose of the lawsuit was to extract money from Doe. Fourth, Strike 3 has acknowledged that after it obtains a subscriber's identity through early discovery, Strike 3 decides "not to move forward" "roughly about 35 to 40 percent of the time...." (ECF 150-7 at 58:25-59:8.) It is unreasonable for Strike 3 to force innocent people like Doe to incur the unjustified expense of having to hire attorneys to defend unfounded allegations based on these odds.

Plaintiff requested statutory damages available under the Copyright Act for Doe's alleged infringement, but in the end, Plaintiff received nothing from Doe. "Because Plaintiff elected to cease its action short of proving its entitlement to relief, this factor weighs heavily in favor of awarding Defendant fees as the prevailing party." *Elf-man, LLC*, 2014 WL 11513119, at *3. Finally, awarding fees to Defendant will not have a chilling effect on Plaintiff's other copyright claims. Plaintiff can pursue valid and well-founded copyright claims where warranted. "But Plaintiff cannot exact a pound of flesh simply by making defendants caught in its wide net expend

attorney fees to defend themselves, perhaps unjustifiably. This factor weighs in favor of an award of attorney fees." *Elf-man, LLC*, 2014 WL 11513119, at \*3.

**B.** **Doe requests only reasonable attorneys' fees incurred in defending Plaintiff's claim and prosecuting Doe's counterclaim for a declaration of non-infringement.**
   **1.   The Lodestar Establishes a Presumptively Reasonable Fee**

"In determining a reasonable attorney's fee, the district court's first step is to calculate a 'lodestar' by multiplying the number of hours it finds the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *McGrath v. County of Nev.*, 67 F.3d 248, 252 (9th Cir. 1995); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). There is a "strong presumption" that the lodestar amount constitutes a "reasonable" fee. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010). Thus, "it should only be enhanced or reduced in 'rare and exceptional cases.'" *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)); *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (factors).

   **2.   Defendants' Counsel's Hourly Rates Are Reasonable**
For purposes of the lodestar determination, reasonable fees are "calculated according to the prevailing market rates in the relevant community, regardless of whether the plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "The relevant community is generally defined as the forum in which the district court sits." *Van Skike v. Dir., Office of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (2009) (quotation marks and citation omitted). Thus, in assessing the rates requested by John Doe's attorneys, the Court should look to market rates in the Western District of Washington.

"[A]ffidavits of the plaintiffs' attorneys and other attorneys regarding prevailing fees in the community and rate determinations in other cases are satisfactory evidence of the prevailing market rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (internal marks omitted; quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). The $350 per hour rate upon which Mr. Edmondson seeks a fee award is consistent with rates charged by other lawyers in this community of similar skill and experience in similar cases. *See UN4 Prods., Inc. v. Primozich*, 372 F. Supp. 3d 1129, 1137 (W.D. Wash. 2019) (finding $350 per hour "is generally within the norm for BitTorrent cases in this district"); *ME2 Prods., Inc. v. Alexander*, No. C17-1221RSL, 2018 WL 4963247, at \*5 (W.D. Wash. Oct. 12, 2018) (same);

*BWP Media USA, Inc. v. Rich Kids Clothing Co., LLC*, No. 103 F. Supp. 3d 1242, 1250 (W.D. Wash. 2015) (finding $350 hourly rate reasonable). *Getty Images (US) v. Virtual Clinics,* No. C13–0626JLR, 2014 WL 1744522, at *3 (W.D. Wash. Apr. 29, 2014) (approving rates between $275–$385 per hour for attorneys in Seattle and $180 per hour for paralegals).

Doe anticipates that Strike 3 will ask the Court to base any fee award on the reduced rate of $50 an hour counsel charged Doe, rather than counsel's typical hourly rate in copyright matters of $350 an hour. However, the determination of a reasonable hourly rate "is not made by reference to rates actually charged the prevailing party." *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986). The Ninth Circuit has admonished district courts who determine the reasonableness of an hourly rate with reference to the rate actually charged. *See e.g., Schwarz v. Sec'y of Health & Human Servs.,* 73 F.3d 895, 908 (9th Cir. 1995) ("This determination is not made by reference to rates actually charged the prevailing party. Rather, the Court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.") (internal quotation marks and citation omitted); *see also Elf-Man, LLC v. Lamberson,* No. 13-CV-0395-TOR, 2015 WL 11112498, at *7 (E.D. Wash. Jan. 9, 2015) (awarding fees based on standard billing rates which reflect counsel's respective experience and skill even though defendant's counsel charged a reduced rate).

3.    **The Time Counsel Spent Defending Against Strike 3's Claim and Prosecuting the Declaration of Non-Infringement Counterclaim was Reasonable**

Counsel has filed detailed documentation of the time he spent on the copyright issues. Declaration of J. Curtis Edmondson re: Attorney Fees. With respect to work performed on the case up until August 2018, when Strike 3 dismissed its copyright infringement claim against Doe, depositions that took place between February and June 2019, and work performed since July 8, 2019 in preparing Doe's motion for summary judgment, counsel respectfully seek payment of $ 40,501.63 in fees.

Counsel's fee request does not include duplicative time incurred by other attorneys. A court may reduce the overall number of hours only when it makes specific findings that the work performed was "unnecessarily duplicative." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1113 (9th Cir. 2008) (emphasis in original). "One certainly expects some degree of duplication as an inherent part of the process. There is no reason why the lawyer should perform this necessary work for free." *Id.* at 1112 (emphasis in original). Nonetheless, counsel have exercised billing

judgment and reduced their fees appropriately to exclude time by more than one attorney for the same task. For example, while two of Doe's attorneys attended most depositions, Doe only seeks an award of fees relating to the hours incurred by one of Doe's attorneys.

Likewise, counsel has excluded time spent on unsuccessful claims. *Sorenson v. Mink,* 239 F.3d 1140, 1147 (9th Cir. 2001) ("The first step is to consider whether the [party] failed to prevail on claims that were unrelated to the claims on which he succeeded ... Hours expended on unrelated, unsuccessful claims should not be included in an award of fees.") (internal quotation marks and citation omitted); *Lahiri v. Universal Music & Video Distrib. Corp.,* 606 F.3d 1216, 1222 (9th Cir. 2010) (noting that the fee award is limited to fees incurred in defending against a copyright infringement claim and excludes expenses for dismissed Lanham Act and unfair competition claims). For example, the fee requested excludes all time spent on summary judgment briefing related to Doe's counterclaim for abuse of process. Doe does not seek fees related to drafting or responding to written discovery. As to the depositions Doe took or defended, in addition to requesting fees for just one attorney, Doe seeks just 50% of the time expended by his attorney because the depositions were relevant to both of Doe's counterclaims.

In all, counsel's fee request is a very conservative lodestar based on work that was reasonably and necessarily expended to defend against Strike 3's copyright claim and prosecution Doe's counterclaim for declaration of noninfringement.

**D.    Counsel Request Reimbursement of Taxable Costs**

Rule 54 provides that costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The corresponding local rule provides that the following applicable procedures are to be observed in taxing costs:

- The attendance, travel, and subsistence fees of witnesses, for actual and proper attendance, shall be allowed in accordance with 28 U.S.C. § 1821, whether such attendance was procured by subpoena or was voluntary; and

- All other costs shall be taxed in accordance with 28 U.S.C. §§ 1920, 1921, 1923, 1927, and 2412. LCR 54(d)(3).

For purposes of this case, the relevant authority in the last bullet point is 28 U.S.C. § 1920. Under that statute, a judge or clerk of any court of the United States may tax as costs the following:

Fees of the clerk and marshall;

    (1) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

    (2) Fees and disbursements for printing and witnesses;

    (3) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

    (4) Docket fees under section 1923 of this title;

    Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

"[T]he Ninth Circuit has specifically held that explicit enumeration in § 1920 is not a prerequisite to allowance of a cost, reasoning that 'courts are free to interpret what constitutes taxable costs' under the statute." *Lahrichi v. Lumera Corp.*, No. C04-2124C, 2007 WL 1521222, *8 (W.D. Wash. May 22, 2007) (quoting *Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 177 (9th Cir. 1990)). Plaintiffs move for an award of taxable costs incurred in litigating this case in the amount of $ 68,236.

### 1.    Filing Fees

Pursuant to Section 1920(1), Doe seeks $ 0.00 for filing fees.

### 2.    Deposition Costs

The costs associated with depositions, including depositions taken by the opposing party, are encompassed by section 1920(2). *See Alflex*, 914 F.2d at 177-78; *Indep. Iron Works, Inc. v. United States Steel Corp.*, 322 F.2d 656, 678-79 (9th Cir. 1963).

Doe seeks a total of $ 8,271.50 in deposition costs. *See* Summary of Fees and Costs. This amount includes 50% of costs paid for original transcripts or copies, court reporter fees, and handling and delivery charges.

The deposition transcripts of the following individuals were necessarily obtained by Doe in order to prepare their case and prepare for examination or cross-examination of these witnesses at trial: Jessica Fernandez (as Rule 30(b)(6) witness for Strike 3), Greg Lansky, Susan Stalzer, Tobias Fieser, John Pasquale, and Patrick Paige.

### 3.    Copy Costs

The costs associated with making copies of the ASUS hard drives were necessary for the subsequent analysis.

## CONCLUSION

An attractive dropout from Stanford sells an incredible blood testing machine to Silicon Valley investors. For 12 years she is lauded as the next Steve Jobs. No one asks to double check whether Elizabeth Holme's machines work. There are no published scientific articles or validation studies on the Theranos machines. When investigators or insiders ask questions about the machine's accuracy, they are threatened by David Boies and his legal team.   Everyone knows about the Theranos scandal and the scientific fraud the Edison machines were.

This is the first case where a "John Doe" has had to exposed the *Potemkin village* known as the "IPP Software.".  Like Theranos, there has been no independent validation studies and no evidence that the IPP Software is "forensic software".   Quite the opposite, the PCAP data generated by the IPP Software is insufficient and missing, which calls into question why any Bittorrent litigant would use this flawed product.

To get to the point of determining if the IPP software was generating accurate data to refute Strike 3's claim of copyright infringement and foreclose future lawsuits took time and money. John Doe's counsel have pro-rated their time and costs, and have picked an appropriate lodestar and have cut the time allocated to the infringement actions significantly.

Doe respectfully requests that this Court grant this motion for summary judgment of non-infringement of copyrights and award attorney fees and costs in the amount of $ 48,773.13.

Respectfully submitted,

Dated: July 29, 2019
                    /s/ J. Curtis Edmondson
                    J. Curtis Edmondson (WA# 43795)
                    Attorney for Defendant John Doe

6/9/23, 7:33 AM

Fox Rothschild Partner Faces Sanctions Hearing Over Porn Copyright Cases

# yahoo!

EXHIBIT 5

Sign in

M

✉ Mail    News    Finance    Sports    Entertainment    Life    Shopping    Yahoo Plus    More...

## LAW.COM

# Fox Rothschild Partner Faces Sanctions Hearing Over Porn Copyright Cases

**ALM Media**

February 18, 2019



*Strike 3 Holdings co-owner Greg Lansky with adult film performers at the 2017 AVN Adult Entertainment Expo in Las Vegas. (Photo: Shutterstock.com)*

A Fox Rothschild partner is taking heat again over his work for a porn maker that's been dubbed a "copyright troll."

Lincoln Bandlow is scheduled on Wednesday to argue in a Sacramento federal court that he should not pay sanctions for missing deadlines in roughly 25 cases in which he represents pornography producer Strike 3 Holdings Inc.

Los Angeles-based Bandlow has represented Strike 3 Holdings in roughly 2,500 copyright infringement lawsuits the company has filed since late 2017. The lawsuits accuse unnamed internet users of stealing Strike 3's videos through the online platform BitTorrent. The vast majority of cases settle.

## TRENDING

**Trump: I have been indicted in classified documents case**

**Pence drops from Fox News Sean Hannity lineup after breaking news of Trump's indictment overtakes the airwaves**

**Plane carrying Joran van der Sloot, who is accused of extorting and defrauding Natalee Holloway's mom, lands in US from Peru**

**Scientists are trying to find a mystery person in Ohio who has a new kind of COVID, and is shedding it into the sewage**

**Bullied 10-year-old apparently takes own life as family blasts school officials who 'didn't have time': report**



Sign in

M

✉ Mail    News    Finance    Sports    Entertainment    Life    Shopping    Yahoo Plus    More...

copyright lawsuits filed nationally last year, Lex Machina data show. The second most copyright complaints were filed in 2015, when 5,219 were brought.

The litigation campaign has come under judicial scrutiny before. A Washington, D.C.-based federal judge in November tossed a Strike 3 lawsuit and said Fox Rothschild was overseeing a "high-tech shakedown" that "treats this court not as a citadel of justice, but as an ATM." Fox Rothschild has filed an appeal in that case.

In another case in Washington state, Bandlow and Strike 3 are fighting a counterclaim that alleges they file lawsuits "with no intention to litigate" and are engaged in "extortion through sham litigation." That case is set for trial in September.

The most recent sanctions hearing in Sacramento came as a result of Bandlow and Strike 3 failing to provide a status report related to at least 15 cases within a 45-day period. On Jan. 2, Magistrate Judge Carolyn Delaney ordered Strike 3 to explain why it shouldn't be sanctioned $250 for missing those deadlines. At least 25 Strike 3 cases are at issue on Wednesday, according to a search of Strike 3's court dockets.

Bandlow said in court filings that Strike 3 failed to file the status reports because it had "encountered issues with its calendaring procedure" for cases in U.S. District Court for the Eastern District of California. He also said the filing mistakes were in part due to a lack of staff during the holidays and an inability to receive emails from the court.

In an interview with The American Lawyer, Bandlow said those status reports would not have had much information to share, since the first 45 days of these cases are often uneventful. After the cases are filed naming IP addresses as defendants, Strike 3 asks judges to issue subpoenas to internet service providers such as Comcast demanding they



Sign in                    M

Mail    News    Finance    Sports    Entertainment    Life    Shopping    Yahoo Plus    More...

He also said a number of the court's docketing emails were caught in his assistant's spam filter, and he had technical issues with the federal court docketing software DocketBird. He said those issues were confined to the Eastern District of California and also confined within Fox Rothschild to his practice.

Bandlow voluntarily dismissed the cases in which he missed a deadline and told the court he would not file new cases in the Eastern District of California until he was able to fix the technical problems he was experiencing with the court.

"In essence, we've sort of sanctioned ourselves in a weird way because that is $400 per filing, and all of that is down the drain," Bandlow said.

While Strike 3 has stayed away from Sacramento's federal court recently, it is still filing copyright infringement claims at a furious pace. In February alone, it has filed 60 cases, including four on Monday in the Southern District of New York. In total, the producer of pornographic brands that include Vixen," "Blacked" and "Tushy" is a plaintiff in 2,617 federal cases, according to a search of federal court records.

**More Reading:**

**Fox Rothschild and the 'Dark Art' of Copyright Trolling**

**Fox Rothschild's Porn Client Drops Case Against Retired Police Officer**

**Fox Rothschild Overseeing 'High-Tech Shakedown' for Porn Client, Judge Says**

6/9/23, 7:33 AM

Fox Rothschild Partner Faces Sanctions Hearing Over Porn Copyright Cases



Sign in                M

✉ Mail    News    Finance    Sports    Entertainment    Life    Shopping    Yahoo Plus    More...



No one seems to have shared their thoughts on this topic yet

Leave a comment so your voice will be heard first.

Powered by ○ OpenWeb

## LATEST STORIES



**Colts Wire**

**What we learned from Week 3 of Colts OTAs**
Here's what we learned from Week 3 of Colts OTAs.

1m ago



**Yahoo Finance**

**Target stock slapped with another Wall Street
downgrade as shopper slump worries rise**
Target's stock gets hit with another downgrade.

2m ago



**Yahoo Life Shopping**

**This off-the-shoulder summer top 'hides chub and
muffin tops' — and it's just $19 (60% off)**
'I'm 60 years old and I am amazed when I look sexy': 6,000
shoppers give this top a perfect five-star rating.

2m ago



**Barrons.com**

**Apple, AI, Metaverse. Why Meta's Identity Crisis Is
Getting Worse Not Better.**
Meta CEO Mark Zuckerberg and other executives unveiled a
new app to compete with Twitter, a number of AI tools, and
addressed the launch of Apple's new mixed reality headset,...

3m ago

**Reuters**

**Tesla shares jump on EV charging tie-up with GM**
Tesla was also the third-most traded U.S. stock across exchanges. Already the world's most valuable
automaker, Tesla was set to increase its market value by more than $30 billion to about $780 billion.
Shares of General Motors, whose valuation is much lower at $49.8 billion but sells millions more vehicl...

6/9/23, 7:33 AM                          Fox Rothschild Partner Faces Sanctions Hearing Over Porn Copyright Cases

 **yahoo!**                                                     Sign in                    M

✉ Mail    News    Finance    Sports    Entertainment    Life    Shopping    Yahoo Plus    More...



Shares of
Cloudflare (NYSE:
NET) are losing...
3m ago

**The New York Times**

**Inside Trump's Club When the Call Came: You're Indicted**
Former President Donald Trump was gathered with his core political advisers in the office near his
poolside cottage at his club in Bedminster, New Jersey, when his phone rang around 7 p.m. on Thursday.
On the line, according to two people with knowledge of the call, was one of his lawyers, informing him...

3m ago



**Sixers Wire**

**NBA draft rewind: Sixers take Andre Iguodala with
9th pick in 2004**
Back in 2004, the Philadelphia 76ers selected Andre Iguodala
out of Arizona with the 9th overall pick.

3m ago



**Women's Health**

**Selling Sunset's Heather Rae El Moussa And Chelsea
Lazkani Are Fighting On IG**
Selling Sunset stars Heather Rae El Moussa and Chelsea
Lazkani are calling each other out on Instagram amid drama
with Bre Tiesi.

4m ago

**Associated Press**

**Climate activist Greta Thunberg won't be school striking after graduation but vows to
still protest**
Swedish environmental activist Greta Thunberg said Friday she will no longer be able to skip classes as a
way to draw attention to climate change because she is graduating from high school. Thunberg, 20,
started staging Friday protests outside the Swedish parliament building during school hours in 2018....

4m ago



**Reuters Videos**

**China denies Cuba spy station report, blames US**
STORY: Citing U.S. officials familiar with classified
intelligence, the Wall Street Journal said such a spy
installation would allow Beijing to gather electronic...

5m ago



**BBC**

**Janelle Monáe's sensuous new album fights back at
anti-LGBTQ laws**
The non-binary singer's hedonistic new album is a
celebration of black, queer pleasure.

5m ago

**WRTV - Indianapolis Scripps**

**Indy Pride Festival is this weekend, WRTV has all the info you need to stay safe and have
fun at the celebration**

# yahoo!

Sign in                    M

✉ Mail    News    Finance    Sports    Entertainment    Life    Shopping    Yahoo Plus    More...



### Energy Drinks Are Surging. So
It has been more than 25 years since Red Bull hi...
6m ago

**The New York Times**



**The Wall Street Journal**

### Russia Wrestles With How to Send More Troops to Ukraine Without Another Call-Up
The Kremlin is looking to buttress its defenses in Ukraine without resorting to a mass mobilization that could cause political and social friction at home.
6m ago

**USA TODAY Sports**

### LeBron James, Drake doc on Black hockey players continues James' off-court greatness
LeBron James will be a Hall of Famer, but what he's doing off the court is also remarkable, including a documentary about Black hockey players.

6m ago



**Reuters**

### Julian Assange loses US extradition challenge, will renew appeal next week
WikiLeaks' founder Julian Assange has lost his latest attempt to fight extradition from Britain to the United States where he is wanted on criminal charges, though he will renew his...
7m ago



**Associated Press**

### Some in Georgia GOP seek purity test as Trump appears at convention in aftermath of indictment
Georgia's state Republican convention gets underway Friday with Donald Trump still expected on Saturday, even as a right-wing party faction seeks to punish GOP officials it...
7m ago



**Motley Fool**

### 3 Meme Stocks That Are Actually Solid Long-Term Picks
To this end, stocks such as Palantir Technologies (NYSE: PLTR), MongoDB (NASDAQ: MDB), and SoFi Technologies (NASDAQ: SOFI) could not only benefit from meme-driven...
8m ago



**Simply Wall St.**

### Morgan Sindall Group (LON:MGNS) Might Become A Compounding Machine
To find a multi-bagger stock, what are the underlying trends we should look for in a business? Firstly, we'll want to...

8m ago



Sign in    M

Mail    News    Finance    Sports    Entertainment    Life    Shopping    Yahoo Plus    More...

6/4/23, 2:17 PM                    Maverickeye | Detect and Retrace Copyright Infringements



EXHIBIT 6

HOME · SERVICES · FILMS · IMPRINT · DISCLAIMED · ORDERS · NEWS · CONTACT

Maverickeye UG makes it possible to detect and retrace copyright infringements with highly sophisticated software technology.

Privacy & Cookies Policy

https://www.maverickeye.de                                                         1/8

6/4/23, 2:17 PM
Maverickeye | Detect and Retrace Copyright Infringements

 

# SERVICES

 Maverickeye UG provides world-class surveillance of your intellectual property within the most prominent peer-to-peer networks ( e.g. Bittorrent, Emule )

 Our highly trained staff is able to identify, analyze, archive and document the illegal distribution of our clients copyrighted material.

 Highly sophisticated software along, with Maverickeye UG's robust hardware infrastructure ensures quality, consistency and relevance of our data for the legal system.

 Maverickeye UG can generate analytical, statistical and graphical reports for the users Peer-to-Peer networks download.

 Maverickeye UG works very closely with several law firms focused on the protection of intellectual property and specialized in filing legal claims against people who infringe on your intellectual property.

 We can also remove pirated content from search engines and torrent sites through our takedown services. Maverickeye offers piracy analysis as well as trademark and picture infringement detection.

## TAKEDOWN SERVICES

Maverickeye offers a cost-effective anti-piracy takedown service for law firms, private entities, and creative individuals. We target today's top search engines and some of the widely used torrent and fire-sharing sites on the web. Our takedown notices will remove pirates from search results and put your online marketing efforts on the top.

Call us now to get a free piracy analysis, recommendation, and strategy.

Why hire us?

Privacy & Cookies Policy

- Free analysis – We can give you an obligation-free piracy quotation.
- Expert team – Contact us to talk with a legal expert who has a long and impressive background in the copyright industry.
- No hidden fees – You can expect absolutely no set-up fees, annual contracts, and other hidden charges.
- High-caliber technology – Maverickeye makes use of highly sophisticated software to detect and monitor piracy in the web.
- Broad services – Detection of trademark infringement as well as picture infringement are just 2 of the anti-piracy services we can offer. We also send takedown notices for search engines, torrent sites, ISPs, video-sharing sites, file-sharing sites, forums, advertisements, auction sites, and e-commerce sites.

Our takedown process:

- We identify the sites that contain your content.
- We conduct human verification for the sending of takedown notices.
- We send takedown notices to suspected sites.
- We monitor the sites ' compliance and manage documentation reports.

*Put your website on top! Remove pirates from search engine results!*

## PIRACY ANALYSIS

Maverickeye offers a free and customized piracy analysis! Call us now or request a quote through the form below.

# FILMS

Privacy & Cookies Policy









| 1 | 2ND | 3RD | 4TH | 5 | 6 | 7 | 8TH | 9 | » |

Privacy & Cookies Policy



HOME · SERVICES · FILMS **IMPRINT** · DISCLAIMER · ORDERS · NEWS · CONTACT

separate announcement or to temporarily or permanently cease publication.

2nd. References and links
In the case of direct or indirect references to external websites ( hyperlinks ) that are outside the area of responsibility of the author, a liability obligation would only come into force in the event that, in which the author is aware of the content and it would be technically possible and reasonable for him to prevent use in the event of illegal content.
The author hereby expressly declares that at the time the links were created, no illegal content was recognizable on the linked pages. The author has no influence whatsoever on the current and future design, content or authorship of the linked pages. He therefore hereby expressly distances himself from all content on all linked / connected pages that were changed after the link was created. This statement applies to all links and references set within our own website as well as to external entries in guest books, discussion forums, link directories, mailing lists and in all other forms of databases set up by the author, external write access to the content is possible. For illegal, incorrect or incomplete content and especially for damage,the information provided from the use or non-use of such information is solely liable to the provider of the page to which reference is made, not the one who merely refers to the respective publication via links.

3rd. Copyright and trademark law
The author endeavors to observe the copyrights of the graphics, sound documents, video sequences and texts used in all publications, graphics, sound documents created by himself, Use video sequences and texts or use license-free graphics, sound documents, video sequences and texts.
All brands and trademarks mentioned on the website and possibly protected by third parties are subject without restriction to the provisions of the applicable trademark law and the ownership rights of the respective registered owner. The mere mention does not mean that trademarks are not protected by the rights of third parties!
The copyright for published objects created by the author remains solely with the author of the pages. Duplication or use of such graphics, sound documents, video

Privacy & Cookies Policy

6/4/23, 2:17 PM                    Maverickeye | Detect and Retrace Copyright Infringements



HOME · SERVICES · FIL**DISCLAIMER** DISCLAIMER · ORDERS · NEWS · CONTACT

## Online content

The author reserves the right not to be responsible for the topicality, correctness, completeness or quality of the information provided. Liability claims regarding damage caused by the use of any information provided, including any kind of information which is incomplete or incorrect, will therefore be rejected. All offers are not-binding and without obligation. Parts of the pages or the complete publication including all offers and information might be extended, changed or partly or completely deleted by the author without separate announcement.

## Referrals and Links

The Author is not responsible for any contents linked or referred to from his pages – unless he has full knowledge of illegal contents and would be able to prevent the visitors of his site from viewing those pages. If any damage occurs by the use of information presented there, only the author of the respective pages might be liable, not the one who has linked to these pages. Furthermore the author is not liable for any postings or messages published by users of discussion boards, guestbooks or mailinglists provided on his page.

## Copyright

The author intended not to use any copyrighted material for the publication or, if not possible, to indicate the copyright of the respective object. The copyright for any material created by the author is reserved. Any duplication or use of such diagrams, sounds or texts in other electronic or printed publications is not permitted without the author's agreement.

## Legal Force of This Disclaimer

This disclaimer is to be regarded as part of the internet publication which you were referred from. If sections or individual formulations of this text are not legal or correct, the content or validity of the other parts remain uninfluenced by this fact.

Privacy & Cookies Policy



 **ORDERS**

HOME · SERVICES · FILMS · IMPRINT · DISCLAIMER · ORDERS · NEWS · CONTACT

**UK – TCYK Sealed Order**

**Finland – DBC Court Ruling**

**Singapore – Order of Court – OS 1168 of 2014**

**Judgment – Dallas Buyers Club LLC v iiNet Limited [ 2015 ] FCA 317_1230230_1 ( 2 )**

**Voltage Pictures vs Teksavy Reasons**

**Voltage Pictures vs Teksavy Order**

**Norwich Order Fax-Jul-28-2016-12-55-44-0399**

# CONTACT

Request a free piracy analysis by filling up this form:

Name '

Email '

Privacy & Cookies Policy

6/4/23, 2:17 PM
Maverickeye | Detect and Retrace Copyright Infringements

 | maverickeye

Other contact info

Link of your website *    HOME  ·  SERVICES  ·  FILMS  ·  IMPRINT  ·  DISCLAIMER  ·  ORDERS  ·  NEWS  ·  CONTACT

Link of the infringing website *

Details of your piracy issue *

SEND

You may also contact us through:

info@maverickeye.de



 | maverickeye

Maverickeye UG detects and retraces copyright infringements with highly sophisticated software technology.

Copyright © Maverickeye 2015. All Rights Reserved.

Privacy & Cookies Policy

# EXHIBIT 7

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-cv-20862-BLOOM/Otazo-Reyes

MILLENNIUM FUNDING, INC.,
a Nevada corporation, *et al.*,
        Plaintiffs,

v.

1701 MANAGEMENT LLC d/b/a
LIQUIDVPN, a Puerto Rico limited
liability company, *et. al.*,

        Defendants.

_____/

### ORDER

THIS CAUSE came before the Court upon Plaintiffs MILLENNIUM FUNDING, INC.,

VOLTAGE HOLDINGS, LLC, AMBI DISTRIBUTION CORP., AFTER PRODUCTIONS,

LLC, AFTER II MOVIE, LLC, MORGAN CREEK PRODUCTIONS, INC., MILLENNIUM

FUNDING, INC., BEDEVILED LLC, MILLENNIUM MEDIA, INC., COLOSSAL MOVIE

PRODUCTIONS, LLC, YAR PRODUCTIONS, INC., FSMQ FILM, LLC, FW PRODUCTIONS,

LLC, MILLENNIUM IP, INC., I AM WRATH PRODUCTION, INC., KILLING LINK

DISTRIBUTION, LLC, 2 BADHOUSE STUDIOS, LLC, LF2 PRODUCTIONS, INC., LHF

PRODUCTIONS, INC., VENICE PI, LLC, RAMBO V PRODUCTIONS, INC., RUPTURE CAL,

INC., MON, LLC, SF FILM, LLC, SPEED KILLS PRODUCTIONS, INC., MILLENNIUM IP,

INC., NIKOLA PRODUCTIONS, INC., WONDER ONE, LLC, BODYGUARD

PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., GLACIER FILMS 1, LLC,

DEFINITION DELAWARE LLC, HANNIBAL CLASSICS INC., JUSTICE EVERYWHERE

PRODUCTIONS LLC, STATE OF THE UNION DISTRIBUTION AND COLLECTIONS, LLC,

PARADOX STUDIOS, LLC, DALLAS BUYERS CLUB, LLC, HITMAN TWO

PRODUCTIONS, INC., SCREEN MEDIA VENTURES, LLC and 42 VENTURES, LLC's

(collectively, "Plaintiffs") Notice of Hearing [D.E. 466]. This matter was referred to the

undersigned pursuant to 28 U.S.C. § 636 by the Honorable Beth Bloom, United States District

Judge [D.E. 89]. The undersigned held a hearing on this matter on May 12, 2023. In accordance

with the undersigned's rulings at the hearing, it is

ORDERED AND ADJUDGED that, by **May 26, 2023**, Judgment Debtor Charles

Muszynski ("Mr. Muszynski") SHALL serve his answers and/or objections to Plaintiffs' First Set

of Interrogatories, which are attached as Exbibit "A" to Plaintiffs' Notice of Hearing. See Ex. A

[D.E. 466-1]. It is further

ORDERED AND ADJUGED that Mr. Muszynski's responses to Plaintiffs' Second

Requests for Production Nos. 6 and 13 that he has no documents responsive to those requests are

accepted as sufficient.

DONE AND ORDERED in Chambers at Miami, Florida, this <u>12th</u> day of May, 2023.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:    United States District Judge Beth Bloom
       Counsel of Record

# EXHIBIT 8

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

Case No.: 21-cv-20862-BLOOM/Otazo-Reyes

MILLENNIUM FUNDING, INC., et al.,

      Plaintiffs,

      vs.

1701 MANAGEMENT LLC, et al.,

      Defendants.

_____

**PLAINTIFFS' SUPPLEMENTAL REPLY IN SUPPORT OF THEIR SECOND RENEWED MOTION [DOC. #467] FOR ORDER TO SHOW CAUSE HEARING WHY JUDGMENT DEBTORS SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR VIOLATING THE JAN. 24, 2023 ORDER AND THE APRIL 11, 2023 ORDER AND FOR STANDING ORDER**

On April 26, 2023, Plaintiffs filed their Second Rewed Motion [Doc. #467] for Order to Show Cause why Judgment Debtors should not be held in civil contempt. On May 1, 2023, Judgment Debtor Muszynski filed documents entitled "MUSZYNSKI'S RESPONSE TO CULPEPPER'S DECLARATION EF #467 – ATTACHMENT 1" [Doc. #471] and "DEFENDANTS' THIRD REPLY TO PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE HEARING WHY JUDGMENT DEBTORS SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR VIOLATING THE APRIL 11, 2023 ORDER; OBJECTION TO MOTION FOR STANDING ORDER;" [Doc. #472]. On May 2, 2023, Plaintiffs filed "PLAINTIFFS' REPLY IN SUPPORT OF THEIR SECOND RENEWED MOTION [DOC. #467] FOR ORDER TO SHOW CAUSE HEARING WHY JUDGMENT DEBTORS SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR VIOLATING THE JAN. 24, 2023 ORDER AND THE APRIL 11, 2023 ORDER AND FOR STANDING ORDER" [Doc. #473]. Accordingly, per L.R. 7.1(c), briefing on the motion [Doc. #467] was closed on May 2, 2023.

Despite briefing on the motion [Doc. #467] being closed, on May 8, 2023, Judgment Debtor Muszynski filed "DEFENDANTS' FOURTH REPLY AND OBJECTION TO PLAINTIFFS' REQUEST FOR STANDING ORDER AND OBJECTION TO PLAINTIFFS'

20-023DBa

SECOND RENEWED MOTION [DOC. #467] FOR ORDER TO SHOW CAUSE HEARING
WHY JUDGMENT DEBTORS SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR
VIOLATING THE JAN. 24, 2023 ORDER AND THE APRIL 11, 2023 ORDER" [Doc. #477].
Not only does Judgment Debtor Muszynski's Doc. #477 violate L.R. 7.1(c) because it is a sur-
reply filed without leave of the court, Doc. #477 also violates Fed. R. Civ. P. 11(a) because Mr.
Muszynski did not sign it (see pgs. 19 and 20). Nonetheless, the ECF entry for Doc. #477 states
"Replies due by 5/17/2023. (ebz)". Accordingly, out of an abundance of caution, Plaintiffs file
this Supplemental Reply pointing out the deficiencies in Doc. #477. Of course, Plaintiffs and
Plaintiffs counsels do not agree with Judgment Debtor Muszynski's irrelevant and inflammatory
allegations.

DATED:      May 13, 2023                     Respectfully submitted,


                                             /s/ Joel B. Rothman
                                             JOEL B. ROTHMAN
                                             Florida Bar No. 98220
                                             joel.rothman@sriplaw.com

                                             **SRIPLAW**
                                             21301 Powerline Road, Suite 100
                                             Boca Raton, FL 33433
                                             561.404.4350 – Telephone
                                             561.404.4353 – Facsimile

                                             And

                                             Kerry S. Culpepper
                                             *Admitted pro hac vice*
                                             **CULPEPPER IP, LLLC**
                                             75-170 Hualalai Road
                                             Suite B204
                                             Kailua-Kona, HI 96740
                                             808.464.4047 – Telephone
                                             kculpepper@culpepperip.com


                                             *Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on <u>May 13, 2023</u> and by the methods of service noted

below, a true and correct copy of the foregoing was served on Defendants 1701 MANAGEMENT

LLC d/b/a LIQUIDVPN, AUH2O LLC, and CHARLES MUSZYNSKI a/k/a FREDERICK

DOUGLAS.

<u>Via First Class Mail</u>
Stolberg Law LLC
Agent for 1701
MANAGEMENT LLC
151 Calle de San Francisco
Suite 201
San Juan, PR 00901

<u>Via Airmail</u>
Barret Venture Holdings,
LLC
Agent for AUH2O LLC
The Providence House,
Central Government Road
Charlestown, Nevis

<u>Via Airmail</u>
CHARLES MUSZYNSKI
Post Office Box 1423,
Basseterre, St. Kitts & Nevis

<u>Via E-mail</u>
usfilefolder@protonmail.com

DATED: May 13, 2023

*/s/ Joel B. Rothman*
JOEL B. ROTHMAN
**SRIPLAW**

And

CULPEPPER IP, LLLC

Kerry S. Culpepper
Virginia Bar No. 45292
Hawaii Bar No. 9837
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740

# EXHIBIT 8-A

## UNITED STATES DISTRICT COURT SOUTHERN

## DISTRICT OF FLORIDA

Case No. 21-cv-20862-BLOOM/Otazo-Reyes

MILLENNIUM FUNDING, INC., et al.,

Plaintiff

vs.

1701 MANAGEMENT LLC, et al.,

Defendants.

_____/

### 1.DEFENDANT'S THIRD DOCKET NOTICE OF BANKRUPTCY STAY
### 2.RESPONSE AND OBJECTION TO INTERROGATORIES
### 3.OBJECTION TO HEARING

## 1.  THIRD NOTICE OF BANKRUPTCY STAY

ALL PARTIES ARE HEREBY AGAIN NOTIFIED that the United States
Bankruptcy Court for the Eastern District of Texas, Beaumont Division, entered an Order of
relief on behalf of defendant(s)/debtor(s), CHARLES MUSZYNSKI.

The debtor(s)/Defendant(s) filed petition under Title 11, Chapter 7 of the United States
Code in the United States Bankruptcy Court for the Eastern District of Texas, Beaumont
Division, at 9:03 a.m. Central Time, on the 11th day of May, 2023. The Debtor(s) Case
Number is: 23-90112.

Pursuant to Title 11, U.S.C. §362(a), all creditors of said Debtors are hereby stayed
from the following as of the filing:

1. the commencement or continuation, including the issuance or employment of
process, of a judicial, administrative, or other action or proceeding against the Debtors that
was or could have been commenced before the commencement of the case under this title,
or to recover a claim against the Debtors that arose before the commencement of the case
under this title;

2. the enforcement, against the Debtors or against property of the estate, of a judgment obtained before the commencement of the case under this title;

3. any act to obtain possession of property of the estate or of property from the estate or to exercise control over the property of the estate;

4. any act to create, perfect, or enforce any lien against property of the estate;

5. any act to create, perfect, or enforce against property of the Debtors any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

6. any act to collect, assess, or recover a claim that arose before the commencement of the case under this title against any claim against the Debtors;

7. the setoff of any debt owing to the Debtors that arose before the commencement of the case under this title against any claim against the Debtors; and

8. the commencement or continuation of a proceeding before the United States Tax Court concerning the Debtors.

Relief from the automatic stay may be sought by filing a Motion in the United States Bankruptcy Court, pursuant to 11 U.S.C. §362(d).

<u>VIOLATIONS OF THE AUTOMATIC STAY REFERENCED HEREIN MAY RESULT IN SANCTIONS.</u>

## 2.  RESPONSE AND OBJECTIONS TO INTERROGATORIES

AN AUTOMATIC STAY HAS BEEN IN PLACE and Defendants object to the requirement to respond to interrogatories, object to Plaintiffs' failure to withdraw the hearing, and Plaintiffs' continued, willful violations of the automatic stay.

**INTERROGATORY NO. 1:** Identify each person or company who has prepared Muszynski's tax returns, provided tax service to a company controlled by Muszynski or provided Schedule K's to Muszynski from 1/1/2021 to present for any country in the world.

OBJECT. Violates the bankruptcy stay in place since 11 May 2023, presumes facts not

in evidence, nor lawfully before this Court, is contrary to facts already established, is overly

broad, lacks specificity, and presumes Muszynski controls any company.

**INTERROGATORY NO. 2:** Identify each and every email address you have used from

1/1/2021 to the present and provide the login credentials (username and password).

OBJECT. Violates the bankruptcy stay in place since 11 May 2023, presumes facts not

in evidence, nor lawfully before this Court, is overly broad, violates attorney/client privilege,

lacks specificity, and reaches beyond the scope of the proceedings, and is another willful

violation of the stay.

**INTERROGATORY NO. 3:** Identify every source of income/gross of over $25,0000

from 1/1/2021 to the present.

OBJECT. Violative of the bankruptcy stay in place since 11 May 2023,

presumes facts not in evidence nor lawfully before this Court, is overly broad, lacks specificity,

lacks timeframe, reference an indeterminate qualifying sum, and is another willful violation of

the stay.

**INTERROGATORY NO. 4:** Identify each trust for which you are a beneficiary and the

trustee name, address and contact information.

OBJECT. Presumes facts not in evidence, requires Debtor to violate laws in his

Jurisdiction, is another willful violation of the stay.

3. **OBJECTION TO SHOW CAUSE HEARING**

Defendants object to Plaintiffs' willful continuation of collection proceedings and activities, as lately evidenced by Plaintiffs' refusal to withdraw their unilaterally set Show Cause hearing on 1 June 2023 in Docket #486, (made without a meet and confer). Besides again willfully violating the stay, the Hearing is a redundant waste of the Court's time, needlessly repeats the same arguments as previously ruled upon by the Court on 12 May 2023, and exhibits Plaintiffs' continuation of vexatious lawfare since it serves no purpose other than assuagement of procedural concerns unrelated to the facts of the case.

WHEREFORE, Defendants request the Court honor the Federal Bankruptcy Stay in place since 11 May 2023 at 9:03 Central time by cancelling Plaintiffs' needless hearing.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have forwarded a true and correct copy of the foregoing to Plaintiffs' attorney by email to CulpepperIP, LLC, 75-5915 Walua Rd., Kailua Kona, Hawaii, 96740 via: kculpepper@culpepperip.com; and mailed to the Clerk of Court, U. S. District Court, 400 North Miami Avenue, Miami, Florida, 33128; on this 22nd day of May 2023.

BY: _____
Charles Muszynski, pro se

Usfilefolder@protonmail.com

P. O. Box 1423
Basseterre, St. Kitts & Nevis

6/8/23, 5:15 PM                    (1) Inbox | usfilefolder@protonmail.com | Proton Mail

# EXHIBIT 9

## Re: Response to interrogatories

From    usfilefolder <usfilefolder@protonmail.com>

To      Kerry Culpepper<kculpepper@culpepperip.com>

Date    Thursday, May 25th, 2023 at 12:14 PM

You made the motion and can withdraw it, are you going to?

Sent with Proton Mail secure email.

------- Original Message -------
On Thursday, May 25th, 2023 at 11:58 AM, kculpepper culpepperip.com <kculpepper@culpepperip.com> wrote:

> I did not set the hearing for June 1. The court set the hearing.
>
> Get Outlook for iOS
>
> From: usfilefolder <usfilefolder@protonmail.com>
> Sent: Thursday, May 25, 2023 5:55:30 AM
> To: kculpepper culpepperip.com <kculpepper@culpepperip.com>
> Subject: Response to interrogatories
>
> Culpepper - see attached.
>
> Is your intent, given the bankruptcy stay, to continue with the hearing you set for 1 June at 10:30 Eastern?
>
> Cm
>
> Sent with Proton Mail secure email.

# EXHIBIT 10

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF FLORIDA

Case No.: 21-cv-20862-BLOOM/Otazo-Reyes

MILLENNIUM FUNDING, INC., et al.,

    Plaintiffs,

    vs.

1701 MANAGEMENT LLC, et al.,

    Defendants.

---

### PLAINTIFFS' SUPPLEMENTAL REPLY IN SUPPORT OF THEIR SECOND RENEWED MOTION [DOC. #467] FOR ORDER TO SHOW CAUSE HEARING WHY JUDGMENT DEBTORS SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR VIOLATING THE JAN. 24, 2023 ORDER AND THE APRIL 11, 2023 ORDER AND FOR STANDING ORDER

On April 26, 2023, Plaintiffs filed their Second Rewed Motion [Doc. #467] for Order to Show Cause why Judgment Debtors should not be held in civil contempt. On May 1, 2023, Judgment Debtor Muszynski filed documents entitled "MUSZYNSKI'S RESPONSE TO CULPEPPER'S DECLARATION EF #467 – ATTACHMENT 1" [Doc. #471] and "DEFENDANTS' THIRD REPLY TO PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE HEARING WHY JUDGMENT DEBTORS SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR VIOLATING THE APRIL 11, 2023 ORDER; OBJECTION TO MOTION FOR STANDING ORDER;" [Doc. #472]. On May 2, 2023, Plaintiffs filed "PLAINTIFFS' REPLY IN SUPPORT OF THEIR SECOND RENEWED MOTION [DOC. #467] FOR ORDER TO SHOW CAUSE HEARING WHY JUDGMENT DEBTORS SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR VIOLATING THE JAN. 24, 2023 ORDER AND THE APRIL 11, 2023 ORDER AND FOR STANDING ORDER" [Doc. #473]. Accordingly, per L.R. 7.1(c), briefing on the motion [Doc. #467] was closed on May 2, 2023.

Despite briefing on the motion [Doc. #467] being closed, on May 8, 2023, Judgment Debtor Muszynski filed "DEFENDANTS' FOURTH REPLY AND OBJECTION TO PLAINTIFFS' REQUEST FOR STANDING ORDER AND OBJECTION TO PLAINTIFFS'

SECOND RENEWED MOTION [DOC. #467] FOR ORDER TO SHOW CAUSE HEARING
WHY JUDGMENT DEBTORS SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR
VIOLATING THE JAN. 24, 2023 ORDER AND THE APRIL 11, 2023 ORDER" [Doc. #477].
Not only does Judgment Debtor Muszynski's Doc. #477 violate L.R. 7.1(c) because it is a sur-
reply filed without leave of the court, Doc. #477 also violates Fed. R. Civ. P. 11(a) because Mr.
Muszynski did not sign it (see pgs. 19 and 20). Nonetheless, the ECF entry for Doc. #477 states
"Replies due by 5/17/2023. (ebz)". Accordingly, out of an abundance of caution, Plaintiffs file
this Supplemental Reply pointing out the deficiencies in Doc. #477. Of course, Plaintiffs and
Plaintiffs counsels do not agree with Judgment Debtor Muszynski's irrelevant and inflammatory
allegations.

DATED:     May 13, 2023                    Respectfully submitted,


                                    /s/ Joel B. Rothman
                                    JOEL B. ROTHMAN
                                    Florida Bar No. 98220
                                    joel.rothman@sriplaw.com

                                    **SRIPLAW**
                                    21301 Powerline Road, Suite 100
                                    Boca Raton, FL 33433
                                    561.404.4350 – Telephone
                                    561.404.4353 – Facsimile

                                    And

                                    Kerry S. Culpepper
                                    *Admitted pro hac vice*
                                    **CULPEPPER IP, LLLC**
                                    75-170 Hualalai Road
                                    Suite B204
                                    Kailua-Kona, HI  96740
                                    808.464.4047 – Telephone
                                    kculpepper@culpepperip.com

                                    *Attorney for Plaintiffs*


                                    2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on <u>May 13, 2023</u> and by the methods of service noted below, a true and correct copy of the foregoing was served on Defendants 1701 MANAGEMENT LLC d/b/a LIQUIDVPN, AUH2O LLC, and CHARLES MUSZYNSKI a/k/a FREDERICK DOUGLAS.

| | | |
|---|---|---|
| <u>Via First Class Mail</u><br>Stolberg Law LLC<br>Agent for 1701<br>MANAGEMENT LLC<br>151 Calle de San Francisco<br>Suite 201<br>San Juan, PR 00901 | <u>Via Airmail</u><br>Barret Venture Holdings,<br>LLC<br>Agent for AUH2O LLC<br>The Providence House,<br>Central Government Road<br>Charlestown, Nevis | <u>Via Airmail</u><br>CHARLES MUSZYNSKI<br>Post Office Box 1423,<br>Basseterre, St. Kitts & Nevis<br><br><u>Via E-mail</u><br>usfilefolder@protonmail.com |

DATED: May 13, 2023

*/s/ Joel B. Rothman*
JOEL B. ROTHMAN
**SRIPLAW**

And

CULPEPPER IP, LLLC

Kerry S. Culpepper
Virginia Bar No. 45292
Hawaii Bar No. 9837
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740

3

# EXHIBIT 11

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-cv-20862-BLOOM/Otazo-Reyes

MILLENNIUM FUNDING, INC.,
a Nevada corporation, *et al.*,
     Plaintiffs,

v.

1701 MANAGEMENT LLC d/b/a
LIQUIDVPN, a Puerto Rico limited
liability company, *et. al.*,

     Defendants.

_____/

### ORDER SETTING SHOW CAUSE HEARING

THIS CAUSE came before the Court upon Plaintiffs MILLENNIUM FUNDING, INC.,

VOLTAGE HOLDINGS, LLC, AMBI DISTRIBUTION CORP., AFTER PRODUCTIONS,

LLC, AFTER II MOVIE, LLC, MORGAN CREEK PRODUCTIONS, INC., MILLENNIUM

FUNDING, INC., BEDEVILED LLC, MILLENNIUM MEDIA, INC., COLOSSAL MOVIE

PRODUCTIONS, LLC, YAR PRODUCTIONS, INC., FSMQ FILM, LLC, FW PRODUCTIONS,

LLC, MILLENNIUM IP, INC., I AM WRATH PRODUCTION, INC., KILLING LINK

DISTRIBUTION, LLC, 2 BADHOUSE STUDIOS, LLC, LF2 PRODUCTIONS, INC., LHF

PRODUCTIONS, INC., VENICE PI, LLC, RAMBO V PRODUCTIONS, INC., RUPTURE CAL,

INC., MON, LLC, SF FILM, LLC, SPEED KILLS PRODUCTIONS, INC., MILLENNIUM IP,

INC., NIKOLA PRODUCTIONS, INC., WONDER ONE, LLC, BODYGUARD

PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., GLACIER FILMS 1, LLC,

DEFINITION DELAWARE LLC, HANNIBAL CLASSICS INC., JUSTICE EVERYWHERE

PRODUCTIONS LLC, STATE OF THE UNION DISTRIBUTION AND COLLECTIONS, LLC,

PARADOX STUDIOS, LLC, DALLAS BUYERS CLUB, LLC, HITMAN TWO PRODUCTIONS, INC., SCREEN MEDIA VENTURES, LLC and 42 VENTURES, LLC (collectively, "Plaintiffs") Second Renewed Motion for Order to Show Cause Why Default Judgment Debtors 1701 Management, LLC ("1701"), Charles Muszynski ("Muszynski"), and AUH20 LLC ("AUH20") (collectively, "Judgment Debtors") Should Not Be Held In Civil Contempt (hereafter, "Motion") [D.E. 467]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Beth Bloom, United States District Judge [D.E. 432].

On March 28, 2022, the Court granted Final Default Judgment in favor of Plaintiffs and awarded a money judgment of $15,172,403.00 in favor of Plaintiffs and against Defendants 1701 Management, LLC ("1701"), Charles Muszynski ("Muszynski"), and AUH2O LLC ("AUH2O"). See Final Default Judgment [D.E. 213].

On January 24, 2023, the Court ordered that Judgement Debtors be held in civil contempt and that a fine of $500/day be imposed upon each judgment debtor until they purge themselves of the contempt by completing Forms 1.977. See Order [D.E. 368]. On January 25, 2023, the Court further ordered Judgment Debtors to respond without objections to Plaintiffs' Request for Production and serve responsive documents on Plaintiffs' counsel by February 4, 2023, and to provide a location and time for the in-person deposition of Muszynski. See Order [D.E. 371].

On April 11, 2023, the Court ordered Muszynski to serve on Plaintiffs: a fully completed Form 1.977 for himself and for AUH20 in his capacity as its manager; and full responses without objection to Plaintiffs' pending Requests for Production. See Order [D.E. 457]. In their Motion, Plaintiffs maintain that Muszynski filed a Response [D.E. 464] with Forms 1.977 on behalf of himself, AUH20, and 1701 with numerous deficiencies. See Motion [D.E. 467 at 5]. Judgment Debtors oppose the Motion. See Response to Declaration [D.E. 471]; Third Reply to Plaintiffs'

Motion for Order to Show Cause [D.E. 472]; Fourth Reply and Objection to Plaintiffs' Request

for Standing Order and Plaintiffs' Second Renewed Motion [D.E. 477].

Upon due consideration of the foregoing, it is

ORDERED AND ADJUDGED as follows:

1.      Judgment Debtors SHALL APPEAR via Zoom video conference before the

undersigned on **Thursday, June 1, 2023 at 10:30 A.M.** to show cause why they should not be held

in contempt for their failure to comply with the foregoing Orders [D.E. 371, 457].

2.      Corporate Judgment Debtors shall be represented by counsel at the show cause

hearing. See Nyesa Costa Rica v. Wilson Cap. Grp. Holdings, LLC, No. 11-CV-22036, 2012 WL

1492344, at *3 (S.D. Fla. 2012) ("It is a well-established principle that 'a corporation cannot

represent itself and must be represented by counsel.'") (internal citation omitted).

3.      Instructions for the Zoom video conference will be emailed to counsel for Plaintiffs

prior to the show cause hearing.

4.      Plaintiffs shall serve a copy of this Order and the Court's instructions for the Zoom

video conference on Judgment Debtors Muszynski, 1701, and AUH20 and shall file proof of such

service before the hearing date.

DONE AND ORDERED in Chambers at Miami, Florida this 15th day of May, 2023.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

Copies via CM/ECF to:

United States District Judge Beth Bloom
Counsel of Record
Garnishees served by Plaintiffs as instructed herein

# EXHIBIT 12

## CHRONOLOGY OF AUTOMATIC STAY VIOLATIONS
## AS OF 4 JUNE 2023

Automatic Stay effective 9:03 a.m., 11 May 2023

1. 12 May, 10:30 a.m., hearing commences before Magistrate Judge Alicia M. Otazo-Reyes.

2. 12 May, 10:32 a.m., Document #479 entered; Culpepper/Rothman: CLERK'S NOTICE re [469] Notice re Hearing by Attorney. The Discovery Hearing set for 5/15/2023 at 2:30 PM before Magistrate Judge Alicia M. Otazo-Reyes shall be conducted by Zoom video conference.

3. 12 May, 10:43 a.m., Attorneys present at hearing: Kerry S. Culpepper and Angela Nieves on behalf of Plaintiffs. Charles Muszynski, pro se. Muszynski stated, as soon as he was permitted to speak at 9:43 a.m., that an Automatic Stay was in place from the Texas Bankruptcy Court.

4. 12 May, 10:50 a.m., hearing before Judge Otazo-Reyes, Muszynski notified Court and attorneys present that he emailed copies of the Bankruptcy Court's Automatic Stay notice to Culpepper and Presiding Judge Bloom.

5. 12 May, 11:26 a.m., Document #480, a PAPERLESS Minute Entry is made on record by court for Zoom proceedings held before Magistrate Judge Alicia M. Otazo-Reyes: Show Cause Hearing held on 5/12/2023. Exhibits at D.E. 475 admitted. Total time in court: 15 minutes. Attorney Appearance(s): Kerry S. Culpepper and Angela Nieves appeared on behalf of Plaintiffs. Charles Muszinski appeared pro se. Report and Recommendation to follow.

6. 12 May, 1:04 p.m., Stephanie Lee of Magistrate's court emails Zoom conference instructions for hearing set for 5/15/23 at 2:30 P.M. before Magistrate Judge Otazo-Reyes in Millennium Funding, Inc. et al.

7. 12 May, 2:06 p.m., Document 481 entered; PAPERLESS Minute Entry for Zoom proceedings held before Magistrate Judge Alicia M. Otazo-Reyes: Motion Hearing held on 5/12/2023 re [438] MOTION for Attorney Fees filed by GLO-JET INTERNATIONAL HOLDINGS (PUERTO RICO) LLC, GLO-JET INTERNATIONAL CORP. Total time in court: 47 minutes. Attorney Appearance(s): Kerry S. Culpepper and Angela Nieves appeared on behalf of Plaintiffs. Allan Amir Rivera Fernandez appeared on behalf of Garnishees GLO-JET INTERNATIONAL HOLDINGS (PUERTO RICO) LLC, GLO-JET INTERNATIONAL CORP. Glo-Jet Corporate Representative, Andy Keesee was present. Defendant Charles Muszinski was present. Order to follow.

8.  12 May, 2:18 p.m., Document 483 entered; ORDER re [466] Notice re Hearing by Attorney.
    Signed by Magistrate Judge Alicia M. Otazo-Reyes on 5/12/2023. Court Order to Muszynski to
    respond to Plaintiffs' Interrogatories.

9.  12 May, 3:01 p.m., Document 484 entered; REPORT AND RECOMMENDATION re [459] MOTION
    for Final Default Judgment of Garnishment (Order to Show Cause Hearing why Default Judgment
    Should Not Be Granted Against Garnishees Jan Dash, Grant Thornton, F.A. Hayek Irrev.
    Settlement Trust, Southpac Trust Limited and Southpac Trust Nevis Limited). Objections to R&R
    due by 5/26/2023. Signed by Magistrate Judge Alicia M. Otazo-Reyes on 5/12/2023.

10. 12 May, 11:27 a.m., Muszynski's email to Judge Bloom, Culpepper, and Rothman:

    *Good morning Judge Bloom:*

    *I attended the 10:30 a.m. hearing in Magistrate Judge Otazo-Reyes' court this morning.*

    *After proceedings' opening formalities were complete and given an opportunity to speak, I notified the
    Court that as of 10:43 a.m. Eastern, an immediate stay of all collection proceedings was in place. Judge
    Otazo-Reyes and Mr. Culpepper ignored the notice and proceeded with the hearing, claiming "no notice in
    the court record of any stay".*

    *At 10:50 a.m., Kerry Culpepper, representing himself and the plaintiffs (an officer of the Court), was
    emailed a copy of the filing's notice email from the Eastern District Texas Bankruptcy Court.*

    *As you likely know, a bankruptcy stay is automatic and pervasive the moment it is entered. Attached is
    documentation from the Texas Court verifying my statements at 10:45 this morning to the Court.*

    *As such, both Mr. Culpepper and Judge Otazo-Reyes proceeded to violate the stay on the record.*

    *I will be making discrete record of each violation of the stay in order to seek appropriate sanctions in the
    Texas court.*

    *As I am denied a level playing field and cannot electronically file documents as can the Court and Mr.
    Culpepper, these documents will be mailed along with the attached "Suggestion of Bankruptcy" to the
    Court and Mr. Culpepper.*

    *Sincerely,*

    *Charles Muszynski*
    *Pro se litigant in a US Court*

11. 12 May, 3:10 p.m., Muszynski email to Culpepper:

    *Mr. Culpepper:*

*This email is the FIFTH demand that you cease you and your clients' willful violations of the automatic stay issued by the U.S. Bankruptcy Court, East Texas Division for Case: 23-90112.*

*FIRST, you were verbally informed during the 10:30 a.m. Zoom hearing in front of Magistrate Judge Otzao-Reyes that an automatic stay had been issued; at 10:43 a.m. during the hearing.*

*SECOND, you were provided notice via a 10:50 a.m. Eastern email that included documentation from the Bankruptcy Court evidencing the case number and filing information. You ignored the verbal notice at the onset of the 10:30 hearing and ignored the emailed documentation of the Court's automatic stay and continued to make multiple violations of the stay throughout the conclusion of the hearing (a transcript has been requested to document each violation).*

*THIRD, you received notice (and a second email) sent to you and Judge Bloom at 11:27 a.m. notifying you that conducting the 11:30 a.m. Eastern hearing would further violate the automatic stay.*

*FOURTH, another verbal notice was made at the onset of the 11:30 hearing, notifying you and the Court that an automatic stay had been made at 10:43 a.m., that I was participating under duress and despite my objections so as not to disrespect the Court's requirement for attendance. You conducted the hearing willfully and with knowledge of the Automatic Stay and made multiple, willful violations of the stay again through the hearing (a transcript has been requested to document each violation).*

*I will present the email and transcript evidence to the Bankruptcy Court to perfect and request sanctions, fines, and your incarceration for contemptuousness before the Bankruptcy Court's explicit order. Defendants Suggestion of Bankruptcy was provided to you before the 11:30 hearing (yet you proceeded anyway) and copies are attached again.*

*Cease your continuing collection activities per the Court's Order; each and every violation will be cataloged, presented, and a request for sanctions made.*

*Sincerely,*

*Charles Muszynski*
*Pro se litigant in a US Court"*

12. 12 May, 8:14 p.m., email from Culpepper to Muszynski with attachment of filing Document 487 in new court filing.

13. 15 May, 1:08 p.m., Document 486 entered; Supplemental REPLY to Response to Motion re [467] Second MOTION for Order to Show Cause Hearing Why Judgment Debtors Should Not Be Held in Civil Contempt for Violating the Jan. 24. 2023 Order and the April 11, 2023 Order; and Motion for Standing Order filed by Rothman

14. 15 May, 4:18 p.m.; Document 487 entered; ORDER Setting Hearing on [467] Second MOTION for Order to Show Cause Hearing Why Judgment Debtors Should Not Be Held in Civil Contempt for Violating the Jan. 24. 2023 Order and the April 11, 2023 Order; and Motion for Standing Order. The Show Cause Hearing is hereby set for 6/1/2023 at 10:30 AM in Miami Division before Magistrate Judge Alicia M. Otazo-Reyes.

15. 15 May, 5:16 p.m.; PAPERLESS Minute Entry for proceedings held before Magistrate Judge Alicia M. Otazo-Reyes: Discovery Hearing held on 5/15/2023 (2:30 - 2:34). Plaintiffs' request was withdrawn. Total time in court: 4 minutes. Attorney Appearance(s): Kerry S. Culpepper for Plaintiffs.

16. 15 May, 8:11 p.m.; Document 489 entered; Notice of Electronic Filing entered by Joel Rothman, Certificate of Service.

17. 24 May, 7:17 p.m.; Document 492 entered; Joint Motion to Set Aside Writ of Garnishment, Joel Rothman.

18. 24 May, 7:24 p.m.; email to Judge Bloom with proposed Order; Joel Rothman, Kerry Culpepper.

19. 26 May; Document 493 entered; Set aside of Southpac default judgment for $15M after Southpac violated Cook Island and Nevis laws and turned over documents violative of attorney-client privilege to Culpepper, upon which Culpepper continues to fashion statements and filings.

20. 31 May; Document 497 entered; Plaintiffs' Motion to stay; Joel Rothman, Kerry Culpepper; requesting the District Court not honor the Bankruptcy Court's Stay. Footnote 1 in filing states:

"1. Plaintiffs' counsel Kerry Culpepper filed the motion on behalf of himself as a creditor (*emphasis added*) on May 31, 2023. Plaintiffs have been hindered in promptly filing a motion by Mr. Muszynski's baseless filing of an opposition to Kerry Culpepper's motion for *pro hac vice* admission to the E.D. Tx Bankruptcy Court."

Muszynski has never owed Culpepper. Culpepper's pro se filing is without standing and further evidences his abuses.

21. 5 June 2023; Document 501; Culpepper and Rothman filed: "PLAINTIFFS' MOTION REQUESTING JUDICIAL NOTICE OF FILING AND/OR CONSIDERATION OF SUPPLEMENTAL EVIDENCE IN OPPOSITION TO GARNISHEES' MOTION FOR ATTORNEY'S FEES [DOC. #453] AND INCORPORATED MEMORANDUM OF LAW".

22. 5 June 2023; Document 501-3; Culpepper and Rothman filed: "ORDER GRANTING PLAINTIFFS' MOTION REQUESTING JUDICIAL NOTICE OF FILING AND/OR CONSIDERATION OF SUPPLEMENTAL EVIDENCE IN OPPOSITION TO GARNISHEES' MOTION FOR ATTORNEY'S FEES [DOC. #453].

23. 11 May 2023 – present; Continuing emails from Culpepper to Muszynski regarding collection claims in the District Court case; so far 5 emails.

24. 31 May 2023; Culpepper

# EXHIBIT 13

### CHRONOLOGY OF AUTOMATIC STAY VIOLATIONS
### AS OF 4 JUNE 2023

Automatic Stay effective 9:03 a.m., 11 May 2023

1.  12 May, 10:30 a.m., hearing commences before Magistrate Judge Alicia M. Otazo-Reyes.

2.  12 May, 10:32 a.m., Document #479 entered; Culpepper/Rothman: CLERK'S NOTICE re [469]
    Notice re Hearing by Attorney. The Discovery Hearing set for 5/15/2023 at 2:30 PM before
    Magistrate Judge Alicia M. Otazo-Reyes shall be conducted by Zoom video conference.

3.  12 May, 10:43 a.m., Attorneys present at hearing: Kerry S. Culpepper and Angela Nieves on
    behalf of Plaintiffs. Charles Muszynski, pro se. Muszynski stated, as soon as he was permitted to
    speak at 9:43 a.m., that an Automatic Stay was in place from the Texas Bankruptcy Court.

4.  12 May, 10:50 a.m., hearing before Judge Otazo-Reyes, Muszynski notified Court and attorneys
    present that he emailed copies of the Bankruptcy Court's Automatic Stay notice to Culpepper
    and Presiding Judge Bloom.

5.  12 May, 11:26 a.m., Document #480, a PAPERLESS Minute Entry is made on record by court for
    Zoom proceedings held before Magistrate Judge Alicia M. Otazo-Reyes: Show Cause Hearing held
    on 5/12/2023. Exhibits at D.E. 475 admitted. Total time in court: 15 minutes. Attorney
    Appearance(s): Kerry S. Culpepper and Angela Nieves appeared on behalf of Plaintiffs. Charles
    Muszinski appeared pro se. Report and Recommendation to follow.

6.  12 May, 1:04 p.m., Stephanie Lee of Magistrate's court emails Zoom conference instructions for
    hearing set for 5/15/23 at 2:30 P.M. before Magistrate Judge Otazo-Reyes in Millennium
    Funding, Inc. et al.

7.  12 May, 2:06 p.m., Document 481 entered; PAPERLESS Minute Entry for Zoom proceedings held
    before Magistrate Judge Alicia M. Otazo-Reyes: Motion Hearing held on 5/12/2023 re [438]
    MOTION for Attorney Fees filed by GLO-JET INTERNATIONAL HOLDINGS (PUERTO RICO) LLC, GLO-
    JET INTERNATIONAL CORP. Total time in court: 47 minutes. Attorney Appearance(s): Kerry S.
    Culpepper and Angela Nieves appeared on behalf of Plaintiffs. Allan Amir Rivera Fernandez
    appeared on behalf of Garnishees GLO-JET INTERNATIONAL HOLDINGS (PUERTO RICO) LLC, GLO-
    JET INTERNATIONAL CORP. Glo-Jet Corporate Representative, Andy Keesee was present.
    Defendant Charles Muszinski was present. Order to follow.

8. 12 May, 2:18 p.m., Document 483 entered; ORDER re [466] Notice re Hearing by Attorney. Signed by Magistrate Judge Alicia M. Otazo-Reyes on 5/12/2023. Court Order to Muszynski to respond to Plaintiffs' Interrogatories.

9. 12 May, 3:01 p.m., Document 484 entered; REPORT AND RECOMMENDATION re [459] MOTION for Final Default Judgment of Garnishment (Order to Show Cause Hearing why Default Judgment Should Not Be Granted Against Garnishees Jan Dash, Grant Thornton, F.A. Hayek Irrev. Settlement Trust, Southpac Trust Limited and Southpac Trust Nevis Limited). Objections to R&R due by 5/26/2023. Signed by Magistrate Judge Alicia M. Otazo-Reyes on 5/12/2023.

10. 12 May, 11:27 a.m., Muszynski's email to Judge Bloom, Culpepper, and Rothman:

    *Good morning Judge Bloom:*

    *I attended the 10:30 a.m. hearing in Magistrate Judge Otazo-Reyes' court this morning.*

    *After proceedings' opening formalities were complete and given an opportunity to speak, I notified the Court that as of 10:43 a.m. Eastern, an immediate stay of all collection proceedings was in place. Judge Otazo-Reyes and Mr. Culpepper ignored the notice and proceeded with the hearing, claiming "no notice in the court record of any stay".*

    *At 10:50 a.m., Kerry Culpepper, representing himself and the plaintiffs (an officer of the Court), was emailed a copy of the filing's notice email from the Eastern District Texas Bankruptcy Court.*

    *As you likely know, a bankruptcy stay is automatic and pervasive the moment it is entered. Attached is documentation from the Texas Court verifying my statements at 10:45 this morning to the Court.*

    *As such, both Mr. Culpepper and Judge Otazo-Reyes proceeded to violate the stay on the record.*

    *I will be making discrete record of each violation of the stay in order to seek appropriate sanctions in the Texas court.*

    *As I am denied a level playing field and cannot electronically file documents as can the Court and Mr. Culpepper, these documents will be mailed along with the attached "Suggestion of Bankruptcy" to the Court and Mr. Culpepper.*

    *Sincerely,*

    *Charles Muszynski*
    *Pro se litigant in a US Court*

11. 12 May, 3:10 p.m., Muszynski email to Culpepper:

    *Mr. Culpepper:*

*This email is the FIFTH demand that you cease you and your clients' willful violations of the automatic stay issued by the U.S. Bankruptcy Court, East Texas Division for Case: 23-90112.*

*FIRST, you were verbally informed during the 10:30 a.m. Zoom hearing in front of Magistrate Judge Otzao-Reyes that an automatic stay had been issued; at 10:43 a.m. during the hearing.*

*SECOND, you were provided notice via a 10:50 a.m. Eastern email that included documentation from the Bankruptcy Court evidencing the case number and filing information. You ignored the verbal notice at the onset of the 10:30 hearing and ignored the emailed documentation of the Court's automatic stay and continued to make multiple violations of the stay throughout the conclusion of the hearing (a transcript has been requested to document each violation).*

*THIRD, you received notice (and a second email) sent to you and Judge Bloom at 11:27 a.m. notifying you that conducting the 11:30 a.m. Eastern hearing would further violate the automatic stay.*

*FOURTH, another verbal notice was made at the onset of the 11:30 hearing, notifying you and the Court that an automatic stay had been made at 10:43 a.m., that I was participating under duress and despite my objections so as not to disrespect the Court's requirement for attendance. You conducted the hearing willfully and with knowledge of the Automatic Stay and made multiple, willful violations of the stay again through the hearing (a transcript has been requested to document each violation).*

*I will present the email and transcript evidence to the Bankruptcy Court to perfect and request sanctions, fines, and your incarceration for contemptuousness before the Bankruptcy Court's explicit order. Defendants Suggestion of Bankruptcy was provided to you before the 11:30 hearing (yet you proceeded anyway) and copies are attached again.*

*Cease your continuing collection activities per the Court's Order; each and every violation will be cataloged, presented, and a request for sanctions made.*

*Sincerely,*

*Charles Muszynski*
*Pro se litigant in a US Court"*

12. 12 May, 8:14 p.m., email from Culpepper to Muszynski with attachment of filing Document 487 in new court filing.

13. 15 May, 1:08 p.m., Document 486 entered; Supplemental REPLY to Response to Motion re [467] Second MOTION for Order to Show Cause Hearing Why Judgment Debtors Should Not Be Held in Civil Contempt for Violating the Jan. 24. 2023 Order and the April 11, 2023 Order; and Motion for Standing Order filed by Rothman

14. 15 May, 4:18 p.m.; Document 487 entered; ORDER Setting Hearing on [467] Second MOTION for Order to Show Cause Hearing Why Judgment Debtors Should Not Be Held in Civil Contempt for Violating the Jan. 24. 2023 Order and the April 11, 2023 Order; and Motion for Standing Order. The Show Cause Hearing is hereby set for 6/1/2023 at 10:30 AM in Miami Division before Magistrate Judge Alicia M. Otazo-Reyes.

15. 15 May, 5:16 p.m.; PAPERLESS Minute Entry for proceedings held before Magistrate Judge Alicia M. Otazo-Reyes: Discovery Hearing held on 5/15/2023 (2:30 - 2:34). Plaintiffs' request was withdrawn. Total time in court: 4 minutes. Attorney Appearance(s): Kerry S. Culpepper for Plaintiffs.

16. 15 May, 8:11 p.m.; Document 489 entered; Notice of Electronic Filing entered by Joel Rothman, Certificate of Service.

17. 24 May, 7:17 p.m.; Document 492 entered; Joint Motion to Set Aside Writ of Garnishment, Joel Rothman.

18. 24 May, 7:24 p.m.; email to Judge Bloom with proposed Order; Joel Rothman, Kerry Culpepper.

19. 26 May; Document 493 entered; Set aside of Southpac default judgment for $15M after Southpac violated Cook Island and Nevis laws and turned over documents violative of attorney-client privilege to Culpepper, upon which Culpepper continues to fashion statements and filings.

20. 31 May; Document 497 entered; Plaintiffs' Motion to stay; Joel Rothman, Kerry Culpepper; requesting the District Court not honor the Bankruptcy Court's Stay. Footnote 1 in filing states:

"1. Plaintiffs' counsel Kerry Culpepper filed the motion on behalf of himself as a creditor (*emphasis added*) on May 31, 2023. Plaintiffs have been hindered in promptly filing a motion by Mr. Muszynski's baseless filing of an opposition to Kerry Culpepper's motion for *pro hac vice* admission to the E.D. Tx Bankruptcy Court."

Muszynski has never owed Culpepper. Culpepper's pro se filing is without standing and further evidences his abuses.

21. 5 June 2023; Document 501; Culpepper and Rothman filed: "PLAINTIFFS' MOTION REQUESTING JUDICIAL NOTICE OF FILING AND/OR CONSIDERATION OF SUPPLEMENTAL EVIDENCE IN OPPOSITION TO GARNISHEES' MOTION FOR ATTORNEY'S FEES [DOC. #453] AND INCORPORATED MEMORANDUM OF LAW".

22. 5 June 2023; Document 501-3; Culpepper and Rothman filed: "ORDER GRANTING PLAINTIFFS' MOTION REQUESTING JUDICIAL NOTICE OF FILING AND/OR CONSIDERATION OF SUPPLEMENTAL EVIDENCE IN OPPOSITION TO GARNISHEES' MOTION FOR ATTORNEY'S FEES [DOC. #453].

23. 11 May 2023 – present; Continuing emails from Culpepper to Muszynski regarding collection claims in the District Court case; so far 5 emails.

24. 31 May 2023; Culpepper

# EXHIBIT 14

Certificate Number: 03621-TXE-CC-037426385



03621-TXE-CC-037426385

# CERTIFICATE OF COUNSELING

I CERTIFY that on <u>May 13, 2023</u>, at <u>11:26</u> o'clock <u>AM EDT</u>, <u>Charles Muszynski</u> received from <u>Credit Card Management Services, Inc. d/b/a Debthelper.com</u>, an agency approved pursuant to 11 U.S.C. 111 to provide credit counseling in the <u>Eastern District of Texas</u>, an individual [or group] briefing that complied with the provisions of 11 U.S.C. 109(h) and 111.

A debt repayment plan <u>was not prepared</u>. If a debt repayment plan was prepared, a copy of the debt repayment plan is attached to this certificate.

This counseling session was conducted <u>by internet</u>.

Date:   <u>May 13, 2023</u>          By:      <u>/s/Nicola ButtsWimpel</u>

                                  Name:   <u>Nicola ButtsWimpel</u>

                                  Title:    <u>Credit Counselor</u>

* Individuals who wish to file a bankruptcy case under title 11 of the United States Bankruptcy Code are required to file with the United States Bankruptcy Court a completed certificate of counseling from the nonprofit budget and credit counseling agency that provided the individual the counseling services and a copy of the debt repayment plan, if any, developed through the credit counseling agency. *See* 11 U.S.C. 109(h) and 521(b).

# EXHIBIT 14-A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-cv-20862-BLOOM/Otazo-Reyes

MILLENNIUM FUNDING, INC.,
a Nevada corporation, *et al.*,

      Plaintiffs,

v.

1701 MANAGEMENT LLC d/b/a
LIQUIDVPN, a Puerto Rico limited
liability company, *et al.*,

      Defendants.

_____/

### FINAL DEFAULT JUDGMENT AND PERMANENT INJUNCTION

**THIS CAUSE** is before the Court upon the Plaintiffs' Motion for Final Default Judgment

against Defendants 1701 Management LLC d/b/a/ LiquidVPN, AUH2O LLC and Charles

Muszynski a/k/a Frederick Douglas, ECF No. [210] ("Motion"), filed on March 24, 2022. The

Motion was granted in part and denied in part by a prior Order. Pursuant to Federal Rule of Civil

Procedure 58(a), the Court enters this separate Final Default Judgment.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Final Default Judgment is entered in favor of Plaintiffs MILLENNIUM FUNDING, INC.,

    VOLTAGE HOLDINGS, LLC, AMBI DISTRIBUTION CORP., AFTER

    PRODUCTIONS, LLC, AFTER II MOVIE, LLC, MORGAN CREEK PRODUCTIONS,

    INC., MILLENNIUM FUNDING, INC., BEDEVILED LLC, MILLENNIUM MEDIA,

    INC., COLOSSAL MOVIE PRODUCTIONS, LLC, YAR PRODUCTIONS, INC., FSMQ

    FILM, LLC, FW PRODUCTIONS, LLC, MILLENNIUM IP, INC., I AM WRATH

    PRODUCTION, INC., KILLING LINK DISTRIBUTION, LLC, BADHOUSE STUDIOS,

Case No. 21-cv-20862-BLOOM/Otazo-Reyes

LLC, LF2 PRODUCTIONS, INC., LHF PRODUCTIONS, INC., VENICE PI, LLC, RAMBO V PRODUCTIONS, INC., RUPTURE CAL, INC., MON, LLC, SF FILM, LLC, SPEED KILLS PRODUCTIONS, INC., MILLENNIUM IP, INC., NIKOLA PRODUCTIONS, INC., WONDER ONE, LLC, BODYGUARD PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., GLACIER FILMS 1, LLC, DEFINITION DELAWARE LLC, HANNIBAL CLASSICS INC., JUSTICE EVERYWHERE PRODUCTIONS LLC, STATE OF THE UNION DISTRIBUTION AND COLLECTIONS, LLC, PARADOX STUDIOS, LLC, DALLAS BUYERS CLUB, LLC, HITMAN TWO PRODUCTIONS, INC., SCREEN MEDIA VENTURES, LLC, and 42 VENTURES, LLC (collectively, "Plaintiffs") and against Defendants 1701 MANAGEMENT LLC d/b/a LIQUIDVPN, AUH2O LLC, and CHARLES MUSZYNSKI a/k/a FREDERICK DOUGLAS (collectively, "Defendants") on Counts II-III (contributory infringement by inducement and material contribution), Count IV (vicarious infringement), Count V (secondary liability for DMCA violations), Count IX (trademark infringement), Count X (unfair competition), Count XI (breach of contract), and Count XIII (breach of publicity) pled against Defendants in the Second Amended Complaint, ECF No. [96], as follows:

    a. Permanent Injunction ordering conduct: Defendants 1701 MANAGEMENT LLC, AUH2O LLC, and CHARLES MUSZYNSKI, their officers, directors, employees, agents, subsidiaries, distributors, and all persons acting in concert and participation with Defendants are ordered to:

        i. block their end users from accessing the following notorious piracy websites of foreign origin that are listed in the annual trade report of Notorious Foreign

2

Case No. 21-cv-20862-BLOOM/Otazo-Reyes

Markets published by the United States Government: (i) YTS.MX; (ii) piratebay.org; (iii) rarbg.to; (iv) 1337x.tw; and (v) popcorn-time.ga on networks under their control and any known proxy websites thereof; and

   ii.  to adopt a policy that provides for the prompt termination of end user accounts for which they receive more than three (3) notices of infringements of Plaintiffs' copyright protected Works, attached hereto as Exhibit 1, and said end users fail to provide a counter-notification;

b.  Permanent Injunction restraining conduct: Defendants 1701 MANAGEMENT LLC, AUH2O LLC, and CHARLES MUSZYNSKI, their officers, directors, employees, agents, subsidiaries, distributors, and all persons acting in concert and participation with Defendants are permanently restrained and enjoined from:

   i.  infringing to and/or contributing to infringements of Plaintiffs' Works;

   ii.  promoting and encouraging their end users to use the LiquidVPN service as a means to conceal use of Popcorn Time and movie piracy websites such as the Pirate Bay for pirating Plaintiffs' Works and promoting their service as "Popcorn Time VPN" in violation of Plaintiff 42 Ventures LLC's trademark;

   iii.  displaying the title art of Plaintiff MILLENNIUM FUNDING, INC.'s work *Survivor* on their website; and

   iv.  referring to DAVID COX or his dissolved corporation LiquidVPN in any manner that falsely portrays him and his dissolved corporation as playing a role in the operations of LiquidVPN on their website;

c.  Statutory Damages for trademark infringement pursuant to 15 U.S.C. § 1117(c): Plaintiff 42 VENTURES, LLC is entitled to an award of statutory damages of

3

Case No. 21-cv-20862-BLOOM/Otazo-Reyes

**$250,000.00** against Defendants 1701 MANAGEMENT LLC, AUH2O LLC, and CHARLES MUSZYNSKI jointly and severally;

d.  Statutory Damages for copyright infringements pursuant to 17 U.S.C. § 504(c): Plaintiffs MILLENNIUM FUNDING, INC., VOLTAGE HOLDINGS, LLC, AMBI DISTRIBUTION CORP., AFTER PRODUCTIONS, LLC, AFTER II MOVIE, LLC, MORGAN CREEK PRODUCTIONS, INC., MILLENNIUM FUNDING, INC., BEDEVILED LLC, MILLENNIUM MEDIA, INC., COLOSSAL MOVIE PRODUCTIONS, LLC, YAR PRODUCTIONS, INC., FSMQ FILM, LLC, FW PRODUCTIONS, LLC, MILLENNIUM IP, INC., I AM WRATH PRODUCTION, INC., KILLING LINK DISTRIBUTION, LLC, BADHOUSE STUDIOS, LLC, LF2 PRODUCTIONS, INC., LHF PRODUCTIONS, INC., VENICE PI, LLC, RAMBO V PRODUCTIONS, INC., RUPTURE CAL, INC., MON, LLC, SF FILM, LLC, SPEED KILLS PRODUCTIONS, INC., MILLENNIUM IP, INC., NIKOLA PRODUCTIONS, INC., WONDER ONE, LLC, BODYGUARD PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., GLACIER FILMS 1, LLC, DEFINITION DELAWARE LLC, HANNIBAL CLASSICS INC., JUSTICE EVERYWHERE PRODUCTIONS LLC, STATE OF THE UNION DISTRIBUTION AND COLLECTIONS, LLC, PARADOX STUDIOS, LLC, DALLAS BUYERS CLUB, LLC, HITMAN TWO PRODUCTIONS, INC., and SCREEN MEDIA VENTURES, LLC are awarded maximum statutory damages of **$9,900,000.00** ($150,000.00 for the infringement of each of the sixty-six (66) Works) against Defendants 1701 MANAGEMENT LLC, AUH2O LLC, and CHARLES

Case No. 21-cv-20862-BLOOM/Otazo-Reyes

MUSZYNSKI jointly and severally for direct copyright infringement, contributory copyright infringement and vicarious infringement;

e.  Statutory Damages for DMCA violations pursuant to 17 U.S.C. § 1203(c)(3)(B): Plaintiffs MILLENNIUM FUNDING, INC., VOLTAGE HOLDINGS, LLC, AMBI DISTRIBUTION CORP., AFTER PRODUCTIONS, LLC, AFTER II MOVIE, LLC, MORGAN CREEK PRODUCTIONS, INC., MILLENNIUM FUNDING, INC., BEDEVILED LLC, MILLENNIUM MEDIA, INC., COLOSSAL MOVIE PRODUCTIONS, LLC, YAR PRODUCTIONS, INC., FSMQ FILM, LLC, FW PRODUCTIONS, LLC, MILLENNIUM IP, INC., I AM WRATH PRODUCTION, INC., KILLING LINK DISTRIBUTION, LLC, BADHOUSE STUDIOS, LLC, LF2 PRODUCTIONS, INC., LHF PRODUCTIONS, INC., VENICE PI, LLC, RAMBO V PRODUCTIONS, INC., RUPTURE CAL, INC., MON, LLC, SF FILM, LLC, SPEED KILLS PRODUCTIONS, INC., MILLENNIUM IP, INC., NIKOLA PRODUCTIONS, INC., WONDER ONE, LLC, BODYGUARD PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., GLACIER FILMS 1, LLC, DEFINITION DELAWARE LLC, HANNIBAL CLASSICS INC., JUSTICE EVERYWHERE PRODUCTIONS LLC, STATE OF THE UNION DISTRIBUTION AND COLLECTIONS, LLC, PARADOX STUDIOS, LLC, DALLAS BUYERS CLUB, LLC, HITMAN TWO PRODUCTIONS, INC., and SCREEN MEDIA VENTURES, LLC are awarded maximum statutory damages of **$4,950,000.00** ($25,000.00 for the three (3) violations of the copyright management integrity of file copies of each of the sixty-six (66) Works) against Defendants 1701

Case No. 21-cv-20862-BLOOM/Otazo-Reyes

MANAGEMENT LLC, AUH2O LLC, and CHARLES MUSZYNSKI jointly and

severally for contributing to DMCA violations;

f.  Damages for breach of contract: Plaintiffs MILLENNIUM FUNDING, INC. and

VOLTAGE HOLDINGS, LLC are awarded damages of **$46,540.00** against

Defendants 1701 MANAGEMENT LLC, AUH2O LLC, and CHARLES

MUSZYNSKI jointly and severally for breach of contract;

g.  Damages for breach of statutory and common law right of publicity: Plaintiffs

MILLENNIUM FUNDING, INC. and VOLTAGE HOLDINGS, LLC are awarded

**$25,863.00** against Defendants 1701 MANAGEMENT LLC, AUH2O LLC, and

CHARLES MUSZYNSKI jointly and severally for breach of the publicity rights

of DAVID COX; and

h.  Interest from the date this action was filed shall accrue at the legal rate pursuant to

28 U.S.C. § 1961.

2.  The Court orders execution to issue for this Final Default Judgment.

3.  The Court denies all relief not granted in this Final Default Judgment.

4.  The Court retains jurisdiction to enforce this Final Default Judgment.

5.  To the extent not otherwise disposed of, any pending motions are **DENIED AS MOOT**

and all pending deadlines are **TERMINATED.**

6.  The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 25, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record