IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CHARLES MUSZYNSKI | § | |
| xxx-xx-1273 | § | Case No. 23-90112 |
| P. O. Box 1423 | § | Chapter 7 |
| Basseterre, St. Kitts & Nevis | § | |
| Debtor | § | |

**DEBTOR'S REPLY TO "MOVIE COMPANY" CREDITORS' OBJECTION [Doc. #65]
TO DEBTOR'S MOTION TO TRANFER VENUE [DOC. #58]**

**TO THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUTCY JUDGE:**

1. Debtor replies to "movie company" Creditors, CulpepperIP, LLLC, and Kerry Culpepper, pro se individually, combined as "Movie Creditors'" and to their objections [Docs. #65, 65-1 and 65-2] to Debtor's Motion to Transfer [Doc. #58], and addresses each objection in sequence below.

2. Except for making an appearance and providing Trustee with "voluminous documents", Movie Creditors otherwise failed any due diligence nor are they able to object to Debtor's qualification as a U.S. Debtor, having admitted Debtor's qualifications, and now argue "most proper" venue is Florida, but fail to provide sufficient legal basis to establish it nor overcome its inconvenience to Debtor.

3. Movie Creditors allege Debtor: "...adamantly stated in three Courts – here, the Southern District of Florida and in Nevis – that he does not have *any assets* (emphasis added) in the U.S., Debtor has suddenly discovered that he indeed does have assets in the U.S. - namely household goods in Puerto Rico."

4. Debtor replies: Movie Creditors' raise a moot point since Debtor, a first-time, pro se bankruptcy applicant, testified in the preliminary hearing of 2 June 2023 that he completed intake forms as best he could, and based on his best recollection, and stated he could have filed in Puerto Rico during the hearing due to Movie Creditors' bank garnishments therein.

5. Besides updating his "*property*" (not assets) listing as items have come to light, he has updated the Creditor Matrix with another significant debt (American Express) which too, was forgotten and subsequently brought to his attention then updated; the same with his household goods and as all the foregoing was in good faith, none should be disregarded by the Court.

6. Debtor understood from subsequent determinations of the bankruptcy code that "assets" and "property" are distinct and, as Movie Creditors' counsel now admits, Debtor relinquished (not renounced, as mistakenly alleged by Movie Creditors) U.S. citizenship and left Puerto Rico, as stated in Movie Creditors' filings in the S.D. FL action that evidence their prior knowledge of Debtor's property (as opposed to assets) existence in an apartment there and therefore it is not "new property"; Movie Creditors' argument is disingenuous.



7. Although Movie Creditors' statement that "…transfer is not in the interest of justice as required by B.R. 1014(a)(2).", they offer no rebuttal to Debtor's thoroughly supported Motion for Transfer [Doc. #59] and Movie Creditors' statement: "…not in the interest of justice as required by B.R. 1014(a)(2).", fails as legal argument against Debtor's request.

8. Movie Creditors state: "Justice does not dictate granting a transfer to Debtor since he is a fugitive from the State of Florida evading a 90 day jail sentence for contempt of an order of the Orange County Circuit Court." and argue: "Indeed, under the fugitive disentitlement doctrine this Court should not grant any judicial relief to the Debtor. See Bagwell v. Dretke, 376 F.3d 408, 410 (5th Cir. 2004); F.D.I.C. v. Pharaon, 178 F.3d 1159, 1161 (11th Cir. 1999)"; and further that: "Although traditionally applied by the courts of appeal to dismiss the appeals of fugitives, the district courts may sanction or enter judgment against parties on the basis of their fugitive status."

9. Debtor replies: Movie Creditors intentional misrepresentation or legally ignorant comments suggest Debtor's contempt in a state family court action qualifies for application of the doctrine (not law) of fugitive disentitlement in the E.D. Texas Court since the "doctrine" may be applied only in a case so long as a party's fugitive status is *sufficiently connected to the litigation in which the doctrine is sought to be invoked* (emphasis added) and so long as nothing less than dismissal will suffice, furthermore, the case law is well developed in this area:

> a) "Kuppersetin's third argument, that the district court could not dismiss his case to help enforce the state court's orders, cuts more ice. A federal court's discretion to dismiss a fugitive's case flows from its "inherent power" to protect its own "proceedings and judgments" - not another courts. Degen, 517 U.S. at 823-24, 116 S.Ct. 1777; see Ortega-Rodriguez v. United States, 507 U.S. 234, 250, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993) (rejecting "the faulty premise that any act of judicial defiance, whether or not it affects" the appellate court's "process, is punishable by appellate dismissal"). Pursuant to the fugitive disentitlement doctrine, we possess the discretion to dismiss the appeal of a defendant who is a fugitive during the pendency of the appeal. Ortega-Rodriguez v. United States, 507 U.S. 234, 239 (1993). The doctrine applies to appeals in both civil and criminal proceedings. Jaffe v. Accredited Sur. & Cas., 294 F.3d 584, 597 (4th Cir. 2002). Generally, in order to dismiss an appeal in a civil case based on the fugitive disentitlement doctrine, there must be "a substantial nexus between a litigant's fugitive status and the issue before the court." Id.

    b) Other federal courts of appeals have concluded that the fugitive disentitlement doctrine may be used to dismiss an appeal from a party in a civil case who is a fugitive and whose fugitive status stems from an arrest warrant issued after a civil contempt finding *in the same proceedings*. See Pesin v. Rodriguez, 244 F.3d 1250, 1253 (11th Cir. 2001); Empire Blue Cross & Blue Shield v. Finkelstein, 111 F.3d 278, 280-82 (2d Cir. 1997).

    c) In re Kupperstein: "The Supreme Court has twice rebuffed courts for dismissing one case to punish flight from another, noting that the escape wouldn't frustrate the dismissing court's judgment or impact its process" In re Kupperstein, 943 F.3d 12 (1st Cir. 2019).

10. Movie creditors cite Bagwell v. Dretke, 376 F.3d 408, 410 (5th Cir. 2004), and it is highly distinguishable from the instant bankruptcy case as Bagwell was convicted of capital murder and conspiracy to commit capital murder and sentenced to life in prison and his conviction was affirmed on direct appeal, then the state courts denied his petition for habeas relief and Bagwell subsequently filed his habeas petition in federal district court, raising claims of ineffective assistance of counsel and insufficiency of evidence, then, while his petition was pending, Bagwell escaped from custody with three other inmates and eluded authorities for ten days before surrendering to police following a six-hour hostage standoff at a convenience store.

11. Case law (there is no Statute) is well developed and Bagwell is an astoundingly inappropriate application to a state family court's civil contempt for failure to appear or, more to the point, a federal bankruptcy court's attempt to enforce same (and whose orders Debtor never violated). See Bagwell v. Dretke, 376 F.3d 408, 410 (5th Cir. 2004).

12. Movie Creditors state: "Justice does not dictate granting a transfer to a Debtor that has failed to follow even the most basic Bankruptcy rules such as putting his correct address on his petition or timely paying the petition fees."

13. Debtor responds: Movie Creditors' hypocrisy is manifest since not only is Debtor current on all payment obligations, but Movie Creditors themselves are the parties that have failed to follow

even the most basic Bankruptcy due diligence: 1) refusing to attend the 341(a) Meeting of Creditors (allegedly due to "international travel"), 2) failing to request delay of the 341(a) meeting, 3) failing to have an associate to attend the 341(a) meeting, 4) failing to ask any questions of Debtor outside the meeting, 5) failing to request any documents from Debtor outside the meeting, 6) failing to file any proof of claims, 7) failing to timely request a 2004 Hearing, in addition to, 8) being unsecured creditors without proof of claim, 9) failing to present three years of investigatory files related to Debtor to substantiate their requests for extension, dismissal, or denial of a transfer, and 10) fraudulent representation of non-existent "movie companies" as "creditors" before the Court.

14. Movie Creditors state: "Justice does not dictate granting a transfer to a Debtor that even now refuses to fully disclose all the companies for which he has been an officer over the past 4 years as required by the rules."

15. Debtor replies: Movie Creditors' hypocrisy surfaces again as Debtor's full and timely, complete responses were accepted by Trustee, Debtor documented his status relating therein with all entities, and Debtor already addressed Movie Creditors' false allegations in Doc. #63, page 6, paragraph 8; further, Movie Creditors requested zero documentation from Debtor, did not appear at the 341(a) Meeting, did not request a 2004 Hearing, did not make any inquiry of Debtor but now ask the Court to disregard their failed due diligence, entertain their false allegations, and believe their falsehoods to be "fact".

16. Justice does not dictate granting a transfer to a Debtor that even now refuses to fully disclose basic information such as the trust agreements for trusts from which he lives a luxurious life in the Caribbean Island of Nevis after renouncing his citizenship of the United States7.

17. Debtor's response: Movie Creditors' neither provide no basis to claim Debtor "…lives a luxurious life in the Caribbean Island of Nevis…" other than their opinion and their false allegations regarding Debtor's responses to production requests have already been addressed.

18. Movie Creditors state: "Justice does not dictate granting a transfer for a foreign Debtor who boasts in filings in this case that the courts of his home country of Nevis will not even recognize a valid judgment of a U.S. court. One of the factors the Fifth Circuit emphasizes should be considered in deciding venue transfer motions is "enforceability of judgment". See In re Volkswagen of Am., Inc., 545 F.3d 304 (5th Cir. 2008)."

19. Debtor has not made any "boast" and merely informs this Court Nevis' law regarding foreign judgments based in statutory damages are not permitted due to its public policy to inform the Court's consideration of Movie Creditor's motives in pursuing such pointless collection.

20. Debtor also replies that considering Movie Creditors' reference of "…enforceability of judgement…" referencing *In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008), a case establishing requirements for transfer of venue, Movie Creditors latch on to one requirement while purposely omitting all the other determinative factors as already listed in Debtor's motion for transfer, Doc. #58, page 4, number 6; although Movie Creditors do not go so far as to deny that all the pillars required for transfer are present in Debtor's behalf, thus overwhelmingly supporting transfer to Puerto Rico.

21. Movie Creditors state: "Justice does not dictate granting a transfer for a foreign Debtor that seeks legal relief here but attempts to use the laws of his home country of Nevis as a shield from preventing (sic) his creditors from obtaining information about the companies for which he is an officer or the trusts for which he is a beneficiary."

22. Debtor replies that he is unaware a foreign Debtor was subject to different U.S. laws in Bankruptcy proceedings in light of Movie Creditors' having already acknowledged Debtor's qualification to file, jurisdiction, and venue and since Debtor has complied with all questions and responded to all requests by Trustee who has stated in writing and at the 2 June 2023 preliminary hearing, that he is satisfied with Debtor's responses; and Movie Creditors performed zero due diligence - failing to: ask for documents, ask questions, schedule a 2004 examination, attend the 341(a) meeting or make other accommodation, and offer no proof Debtor ever failed to comply with any aspect of this or any other Court other, aside from Movie Creditors' baseless opinion.

23. Movie Creditors state: "Justice does not dictate granting a transfer for a foreign Debtor that seeks the benefit of an automatic stay against creditors here yet files and obtains leave to further deplete his estate in a Nevis court."

24. Debtor replies that Movie Creditors initiated litigation in St. Kitts and Nevis yet accuse Debtor of employing foreign proceedings for unfair gain whereas Debtor has scrupulously complied with Judge Searcy's requirement to maintain "status quo" while Movie Creditors offer no evidence of any violation by Debtor nor common sense explanation of how Debtor's $461.25 weekly stipend will "…further deplete his estate…" relative to their $15,000,000.00+ U.S. default judgment.

25. Contrary to the Court's statement at the 2 June 2023 preliminary hearing, the S.D. FL case was not "hard fought"; Debtor was never served (alleged service occurred at a private mail facility in Livingston where Movie Creditors acknowledge Debtor, a non-resident, non-citizen, had no "presence" in Texas) and did not respond; Movie Creditors' judgment is an unsecured, default judgment and Movie Creditors' actual existence now comes into question.

**26. Movie Creditors have no standing to object to venue and jurisdiction as they accepted both as proper in the E.D. of Texas in Doc. #17, page 4, Section II., paragraphs one and two.**

27. Movie Creditors state: "Movie Creditors did not file an involuntary petition forcing this foreign Debtor to come to a United States Court. Rather, Debtor willfully chose to file bankruptcy here in the United States stating under penalty of perjury that he lives in Texas. Debtor cannot seek the benefit of a discharge provided by United States law while attempting to use the laws of his adopted home country of Nevis as a shield."

28. Debtor's reply: Movie Creditors voluntarily filed litigation for collection in Debtor's country and already recognized Debtor as qualified under U.S. law, having stated in Doc. #17, page 4, Section II, that venue and jurisdiction is valid and have recognized Debtor qualifies since he has

"property" in the U.S.; Debtor's good-faith filing in Texas was the result of his understanding of equally available choices at the time of his filing and now understands "most proper venue" is Puerto Rico.

29. Debtor has made no secret of his residential address and when examined by Judge Searcy in the preliminary hearing of 2 June 2023, Debtor explained the reasons for local address was due his understanding of the court's intake forms, that mail would not arrive in Nevis, he was denied equal access to electronic filing and local mailing is required, referred Judge Searcy to Debtor's shipping document to prove no chicanery was attempted but using an address required by the intake forms.

30. Debtor's thorough dissection, establishing a non-U.S. persons' ability to file bankruptcy in U.S. courts was the basis of his filing in Doc. #63, wherein he provided ample case law showing that even if the total property used to establish a claim was a "peppercorn", enough property exists to file in the U.S.

31. Movie Creditors state: "Debtor has the burden of proof of showing by preponderance of the evidence good cause that transfer is in the interest of justice. See id. at 314. However, Debtor has failed to provide proof that he has household goods in Puerto Rico. Moreover, Debtor's assertion that he has such goods in Puerto Rico is inconsistent with his original petition and statements in S.D. Flo. and Nevis Courts that he has no assets or money in the U.S. See supra at FN1. In view of the multiple inconsistencies asserted by Debtor in here and in other Courts, the Court should not just take for true Debtor's updated household goods statement [Doc. #46], particularly since it is not even sworn under penalty of perjury."

32. Debtor replies: If Movie Creditors require further evidence of Debtor's household property in Puerto Rico, they're welcome to submit a draft affidavit for his sworn signature and Debtor will complete it; further, Creditors' own statements and filings in the S.D. FL identify Debtor's apartment in Puerto Rico where his property (not "assets", not "money") resides.

33. Movie Creditors state they: "...object to transfer to Puerto Rico because this forum would be burdensome for movie creditors. Most of the movie creditors are Hollywood movie producers based on the west coast and Movie creditors' counsel is in Hawaii."

34. Debtor replies: Movie Creditors' objection defines hypocrisy given they chose to file litigation in Nevis, a foreign country six thousand miles from Hawaii, their counsel never appears in person, and they picked Florida as their "new" forum both because of its liberal bill of discovery (to bypass federal rules of discovery) and because they're troll model is being run out of other federal venues like Illinois, Hawaii, Washington, and California, tired of their actions demeaning their courts; thus, having been effectively barred from bringing further copyright troll litigation by courts that had had enough and made their shotgun pleading and fake documents unprofitable, Judge Wright in the N.D. CA and Judge Zilly in WA (among many others) have issued scathing rebukes of troll litigation, making forum shopping an important predicate to determining their next scheme.

35. "Movie Creditors further object to Debtor's motion to transfer venue for failure to serve the master mailing matrix and/or include a certificate of service indicating service of the master mailing matrix."

36. Debtor's responds that he is unaware of any failure, intentional or otherwise, to comply with process requirements but if one exists, will immediately remedy it and has throughout the case, verified with Ms. Britten in the Clerk's office to ensure his required timely compliance for all requirements.

37. Movie Creditors: "...object to Debtor's untimely motion to transfer venue filed more than 45 days from the date of his petition. Because of the multiple problems in Debtor's petition (such as a false principal address), Movie creditors chose to file a motion for 60 day extension of time [Doc. #41] to await resolution of their motion to dismiss and the Court's order to show cause hearing before further burdening this court with an adversary proceeding and the inevitable contempt proceedings. The Trustee filed a similar motion. See Doc. #50. Rather than accepting the reasonableness of this proposition, Debtor objected to the motions for extensions and

demanded an order discharging all debts. See Doc. #57. Essentially, Debtor seeks to benefit from repeatedly failing to timely complete the petition form."

38. Debtor replies that Movie Creditors' hypocrisy is in fine form, they themselves have sought to benefit despite repeatedly failing to timely perform any due diligence and now seek extension without basis "simply because they asked it"; Debtor's Doc. #57 has abundant case cites substantiating Movie Creditors' lack of standing to request any extension and, further, Movie Creditors' language alleging "…untimely motion to transfer venue filed more than 45 days from the date of his petition." is a farcical contrivance as no time limits bar venue change requests by a Debtor and, Debtor filed for his motion of transfer in good faith as soon as he could after the preliminary hearing and learning of "property" and "proper venue" requirements; granting an extension to Movie Creditors or Trustee would inequitably punish Debtor for timely performing all he was required to do and for responding to new facts promptly as he learned them.

39. Movie Creditors state: "Nonetheless, should the Court be inclined to transfer venue rather than dismissing Debtor's bad faith petition, Movie Creditors respectfully assert that the interest of justice dictates that the Southern District of Florida is the most appropriate venue. Movie Creditors' $15,000,0000 plus judgment at issue which amounts for the bulk of Debtor's liabilities was granted by the Southern District of Florida. The Southern District of Florida is already familiar with the facts and the parties from the extensive underlying post-judgement litigation and has issued a contempt order against Debtor. Debtor's ex-wife's claim is based upon a judgment issued by the Orange County State Court in Florida. Counsel for two of the trusts for which Debtor is a beneficiary have engaged counsel that has appeared in the case in the Southern District of Florida

40. Debtor replies that Movie Creditors' response inherently accepts Debtor as qualified to file in the U.S. then suggests "proper venue" exists in Florida but without any prior basis as a venue to Debtor (Southern District of Florida) other than Movie Creditors' own forum shopping choice, their default judgment in which Debtor never appeared during pendency of the case (as he could not afford an attorney to fight vexatious litigants), and Movie Creditors admit they know the attorneys representing entities but have refused to contact them.

41. Movie Creditors state: "According to Debtor, his counsel in the Southern District of Florida committed malpractice in the underlying case. Accordingly, the estate will have a claim against Debtor's former counsel that will have to be pursued in Florida. And most importantly, transfer to the Southern District of Florida is most consistent with the fugitive disentitlement doctrine because the Southern District of Florida can more easily compel Debtor to comply with the Florida Orange County Circuit Court 90 day jail sentence before considering granting him any relief.

42. Debtor replies that if Movie Creditors are so certain of Debtor's alleged claim against prior representation, why have they failed to take action on it, and; Debtor already addressed Movie Creditors' folly regarding the so-called "fugitive disentitlement doctrine" as entirely inapplicable because Debtor has timely and fully complied with every order of this court, the "doctrine" (not even a law) applies to insults to a court in an instant matter before it, does not permits unrelated courts to enforced other courts' matters where they're uninvolved, and federal courts are altogether barred from state "family" court proceedings.

## CONCLUSION

43. WHEREFORE, Debtor prays for an Order dismissing Movie Creditors' motions, asks the Court to sanction Movie Creditors' counsel for false representations to the Court (claiming Debtor is in "contempt" in the S.D. FL action), asks the court to transfer venue to Puerto Rico, and asks for any further relief for which Debtor may be justly entitled to receive.

## CERTIFICATE OF SERVICE

I hereby certify that on 14 August 2023, I provided copies via FedEx to the Clerk of Court for publication to appropriate entities on the Court's docket and Creditor Matrix.

Charles Muszynski, pro se
P. O. Box 1423
Basseterre
St. Kitts & Nevis, W.I.
usfilefolder@protonmail.com